Mark E. Lowary, Esq. - SBN: 168994
Kelly M. Henry, Esq. – SBN: 216478
BERMAN BERMAN BERMAN
SCHNEIDER & LOWARY, LLP
3890 Tenth Street
Riverside, California 92501
Telephone: (951) 682-8300
Facsimile: (951) 682-8331
Email: melowary@b3law.com; kmhenry@b3law.com

Attorneys for Plaintiffs PHILADELPHIA INDEMNITY INSURANCE
COMPANY and SILVER LAKES ASSOCIATION

THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY and SILVER LAKES ASSOCIATION<br><br>Plaintiffs<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY<br><br>Defendant | Case No.<br><br>COMPLAINT BY PHILADELPHIA INDEMNITY INSURANCE COMPANY AND SILVER LAKES ASSOCIATION |

## COMPLAINT

Plaintiffs, Philadelphia Indemnity Insurance Company and Silver Lakes Association, by and through counsel, hereby allege and demand as follows.

## THE PARTIES

1.     Plaintiff, Philadelphia Indemnity Insurance Company ("PIIC"), is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and with its principal place of business in Pennsylvania at the address

set forth in the caption. PIIC is in the business of insurance.

2.    Plaintiff, Silver Lakes Association, is a homeowners association organized and existing under the laws of the State of California and with its principal place of business in California at the address set forth in the caption above.

3.    Defendant, Lexington Insurance Company ("Lexington"), is a corporation organized and existing under the laws of the State of Delaware and with its principle place of business in Massachusetts at the address set forth in the caption. Lexington is in the business of insurance.

## JURISDICTION AND VENUE

4.    Jurisdiction is proper under 28 U.S.C. §1332, as this concerns citizens of different states and the amount in controversy exceeds $75,000.00.

5.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS

6.    On October 16, 2015, a complaint was filed in the Superior Court of California, County of San Bernardino captioned *Banks v. Wilhite, et al.* Case No. CIVDS 1515213 against, *inter alia*, Silver Lakes Association ("*Banks*").

7.    The complaint sought damages for personal injuries sustained when a minor fell off a boat driven recklessly on a lake owned by Silver Lakes Association in October 2014. *See* **Exhibit A**, *Banks* Complaint.

8.    The *Banks* Complaint alleged, *inter alia*, that Silver Lakes Association

"acted negligent by failing to properly police and monitor the lake to insure that the five (5) mile per hour speed limit was observed and complied with" and that said failure proximately caused the claimants' injuries.

9.     Prior to the incident described in the *Banks* Complaint, Silver Lakes Association contracted with AlliedBarton Security Services, LLC ("AlliedBarton") to provide security, monitoring, and rule enforcement services at the Silver Lakes Association's property. *See* **Exhibit B**, Community Patrol Agreement; **Exhibit C**, Addendum to Community Patrol Agreement.

10.     At all times relevant hereto, AlliedBarton was authorized by Silver Lakes Association to, *inter alia*, respond to complaints of dangerous or unsafe use of boats on the lake and enforce Silver Lakes Association rules and policies.

11.     Prior to the boating accident that formed the basis of the *Banks* Complaint, evidence supports that AlliedBarton was notified that the subject boat was being driven recklessly with children on the boat.

12.     Despite such notification, AlliedBarton failed to act within its authority to respond to such complaints and enforce Silver Lakes Association rules and policies and, in turn, failed to adequately monitor and police the lake on Silver Lakes Association's behalf.

13.     Plaintiff, PIIC, expended over $2,000,000 providing defense and indemnity to Silver Lakes Association in the *Banks* matter pursuant a policy of insurance that was in full force and effect and all relevant times ("PIIC Policy"). *See*

**Exhibit D,** PIIC Policy.

14.    At all times relevant hereto, Defendant provided liability insurance coverage to AlliedBarton under insurance policy number 023058098 ("Lexington Policy"). *See* **Exhibit E**, Lexington Policy.

15.    Pursuant to the contractual agreement it had with AlliedBarton and the terms of the Lexington policy, Silver Lakes Association is an "additional insured" under the Lexington Policy.

16.    Silver Lakes Association and AlliedBarton entered into an initial May 2008 Community Patrol Agreement which provides in relevant part as follows:

III.    <u>**INSURANCE**</u>

The Company shall, at all times during the term of the Agreement, or any extension thereof, and at its own cost and expense, procure and maintain from insurance company (ies) acceptable to the Association, insurance policies of the amount and types set forth below (but, in no event, with levels below those required by any applicable law, ordinance or regulation) and, with the exception of worker's compensation coverage, furnish the Association with certificates of insurance naming the Association, its directors, officers, agents and employees as additional insured under said policies, and additional insured under said policies. The "additional insured" designation shall be expressly limited to liability arising out of Company's operations pursuant to this Agreement. The Association shall not receive indemnification for any negligence (joint, concurrent, independent or individual), acts errors or omissions of the Association or its directors, officers, agents or employees. The indemnity provided shall be limited to the extent of the Company's liabilities arising out of Company's operations, the Indemnification provision contained in Section 7 hereof, and any vicarious liability that is imposed upon the Association as a result of the negligence, acts, errors or omissions of Company or its employees in the performance of the services provided for herein. Notwithstanding any other provision herein, the Association, its directors, officers, agents and employees shall be entitled to a defense by Company's insurer against any and all claims or lawsuits which include allegations that Company and/or its employee(s) were negligent in performance of its/their services at or for the Association. Irrespective of the policy limits of the Company's insurance policy, the coverage afforded the Association, as an additional insured is limited to the contractually required policy limits under this Agreement. Each certificate of insurance must state: "This policy will not be modified, canceled or terminated until at least thirty (30) days following delivery of written notice of the same to Association." Each insurance company must also issue the Association an ACORD 27 explicitly stating that the certificate of insurance conveys all rights and privileges afforded under the policy (ies) to the Association.

4

**Exhibit B**, Community Patrol Agreement.

17.    The provision of the Community Patrol Agreement noted above was subsequently amended in a July 2011 Addendum to Community Patrol Agreement in the following manner:

1.    <u>Article III. INSURANCE</u> is amended as follows:

    a.    On line 9, delete the sentence starting commencing with "The additional insured designation" to the end of that sentence and insert the following:

    "The additional insured designation shall be expressly limited to, and to the extent of, liability arising out of the Company's negligence in providing services required under this Agreement."

    b.    On line 10, after the word "Agreement", add the following:

    "and to the types and limits of the insurance required under the Agreement."

    c.    On line 18, delete the sentence commencing with "Notwithstanding" to the end of that sentence and insert the following:

    "Notwithstanding any other provision herein, the Association, its directors, officers, agents and employees shall be entitled to a defense by Company's insurer against any and all claims or lawsuits which include, and only to the extent of, allegations that Company and/or its employee(s) were negligent in the performance of its/their services at or for the Association."

**Exhibit C**, Addendum to Community Patrol Agreement.

18.    Defendant's policy included the following Endorsement concerning Additional Insured coverage:

///

///

///

///

///

1

**ENDORSEMENT # 001**

2 **This endorsement, effective 12:01 A.M.,** 11/01/2013

3 **Forms a part of Policy No.:** 023058098

4 **Issued to:** AB CAPITAL HOLDINGS LLC

5 **By:** LEXINGTON INSURANCE COMPANY

6

**ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS**

7 This endorsement modifies insurance provided under the following:

8 GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

9 **A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or agreement which does not

10 require that a specific form number be used.

11 **B.** The insurance provided to additional insureds applies only to "bodily injury", "property damage", "professional liability" or "personal and advertising injury" covered under Section I, Coverage A,

12 Bodily Injury and Property Damage and Professional Liability and Coverage B, Personal and Advertising Injury Liability, but only if:

13 **1.** The "bodily injury", "property damage", or "professional liability" results from your negligence;

14 and

15 **2.** The "bodily injury", "property damage", "personal and advertising injury" or "professional liability" results directly from:

16 **a.** Your ongoing operations; or

17 **b.** "Your work" completed as included in the "products-completed operations hazard",

18 performed for the additional insured, which is the subject of the written contract or written agreement.

19 **C.** However, regardless of the provisions of paragraphs A. and B. above:

20 **1.** We will not extend any insurance coverage to any additional insured person or organization:

21 **a.** That is not provided to you in this policy; or

22 **b.** That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or written agreement; and

23 **2.** We will not provide Limits of Insurance to any additional insured person or organization that

24 exceed the lower of:

25 **a.** The Limits of Insurance provided to you in this policy; or

26

27

28

6

    b.  The Limits of Insurance you are required to provide in the written contract or written agreement.

D.  The insurance provided to the additional insured person or organization does not apply to:

    1.  "Bodily injury", "property damage", "personal and advertising injury" or "professional liability" that results solely from negligence of the addition insured; or

    2.  "Bodily injury", "property damage", Professional Liability" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

        a.  The preparing, approving, or failing to prepare or approve maps, ship drawings, opinion, reports, surveys, filed orders, change orders or drawing and specifications; and

        b.  Supervisory, inspection, architectural or engineering activities.

E.  The additional insured must see to it that:

    1.  We are notified as soon as practicable of an "occurrence" or offense that may result in a claim:

    2.  We receive written notice of a claim or "suit" as soon as practicable; and

    3.  A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured also has rights as an insured or additional insured.

F.  When required by written contract this endorsement is primary insurance and we will not seek contribution from any other insurance available to any additional insured person or organization unless the other insurance is provided by a contractor other than you for the same operations and job location. Then we will share with that other insurance by the method described in paragraph 4.C. of Section IV –Conditions.

**Exhibit E**, Lexington Policy.

    19.    Read together, the Community Patrol Agreement and the Additional Insured Endorsement required Defendant to defend and indemnify Silver Lakes Association against the claims made in the *Banks* matter, as the *Banks* Complaint alleged liability on behalf of Silver Lakes Association that arose from the negligence of AlliedBarton in the performance of its policing and monitoring services.

    20.    The sum of the payments made by AlliedBarton, individually, and PIIC, on Silver Lakes Association's behalf, to defend and settle the *Banks* matter has eroded the self-insured retention of the Lexington Policy.

21.     Despite adequate notice of its obligation to provide defense and indemnity of Silver Lakes Association, Defendant declined to provide defense or indemnity to Silver Lakes Association.

22.     Defendant is therefore obligated to reimburse Plaintiffs for their expenses related to the defense and indemnity of Silver Lakes Association in the *Banks* matter.

## COUNT I – BREACH OF INSURANCE CONTRACT
### Silver Lakes Association v. Defendant

23.     Silver Lakes Association was sued for injuries caused in whole or in part by the negligence of AlliedBarton in the performance of its services for Silver Lakes Association, including the failure to properly monitor and police the lake.

24.     Under such circumstances, according to the terms of the contract with AlliedBarton and the Lexington Policy, Silver Lakes Association is an additional insured under the Lexington Policy.

25.     Because Silver Lakes Association is an additional insured under the Lexington Policy, Defendant was obligated to provide defense and indemnity to Silver Lakes Association against the claims made by the *Banks* claimants.

26.     Defendant was provided due notice of the *Banks* matter and the claims made against its insureds.

27.     Despite such notice and requests for defense and indemnity, Defendant refused to provide them any such mandatory defense and/or indemnity.

28.     Silver Lakes Association performed all conditions precedent under the policy.

**WHEREFORE**, Plaintiffs respectfully request judgements against Defendants in the amount in excess of $2,000,000, plus interest, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT II – BAD FAITH FAILURE TO DEFEND AND INDEMNIFY
### Silver Lakes Association v. Defendant

29.    Under the Lexington Policy, to which Silver Lakes Association was an additional insured, there is an implied promise of good faith and fair dealing that Defendant would not do anything to unfairly interfere with the right of its insureds to receive the benefits of the policy.

30.     Such implied covenant obligated good faith and honesty of purpose without any intention to mislead or to take unfair advantage of one or more of Defendant's insureds.

31.    Because Silver Lakes Association is an additional insured under the Lexington Policy, Defendant was specifically obligated to provide defense and indemnity to Silver Lakes Association against the claims made by the *Banks* matter claimants.

32.    Defendant was provided due notice of the *Banks* matter and the claims made against its insureds.

33.    Despite such notice, Defendant unreasonably and without proper cause refused to provide Silver Lakes Association defense and/or indemnity in the *Banks* matter.

34.    Silver Lakes Association performed all conditions precedent under the

policies.

35.    Silver Lakes Association was harmed financially and otherwise, and Defendant's unreasonable refusal to provide policy benefits and otherwise comply with the terms and conditions of its policies was a substantial factor in causing such harm.

**WHEREFORE**, Plaintiffs respectfully request judgements against Defendants in an amount in excess of $2,000,000, plus interest, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT III – EQUITABLE SUBROGATION
## PIIC v. Defendant

36.    Pursuant to Silver Lakes Association's contract with AlliedBarton and the PIIC and Lexington Policies, Defendant was required to defend and indemnify Silver Lakes Association against the claims made in the *Banks* matter and Defendant's coverage was to be primary and PIIC's coverage was to only be excess, if needed at all.

37.    Despite these circumstances, Defendant intentionally decided not to defend and indemnify Silver Lakes Association against such claims.

38.    Because of Defendant's improper refusal, PIIC was required to shoulder the entire defense and indemnity costs to resolve the claims of the *Banks* matter claimants against Silver Lakes Association.

39.    Accordingly, PIIC is entitled to equitable subrogation, or to otherwise be reimbursed by Defendant for the monies it expended defending and indemnifying

Silver Lakes Association, despite PIIC's inferior equitable position to that of Defendant.

**WHEREFORE**, PIIC respectfully requests judgement against Defendant in the amount in excess of $2,000,000, plus interest, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT IV – EQUITABLE CONTRIBUTION
### PIIC v. Defendant

40.    Alternatively, and despite Plaintiffs' beliefs and assertions to the contrary, to the extent the Lexington and PIIC Policies could ever be read to share the same level of liability as to Silver Lakes Association,  Defendant would still have been required to defend and indemnify them against the claims of the *Banks* matter claimants.

41.    Despite these circumstances, Defendant intentionally decided not to defend and/or indemnify Silver Lakes Association against such claims.

42.    Because of Defendant's improper refusal to provide such policy benefits, PIIC was required to shoulder the entire defense and indemnity costs to resolve the claims of the *Banks* matter claimants against Silver Lakes Association.

43.    Accordingly, even under such an alternative view of the insurance policies and factual circumstances, PIIC would be entitled to equitable contribution, or to otherwise be reimbursed by Defendant for monies it expended defending and indemnifying the PIIC insureds.

**WHEREFORE**, PIIC respectfully requests judgement against Defendant in an

1  amount in excess of $2,000,000, plus interest, delay damages, and for such other relief

2  as this Honorable Court shall deem appropriate under the circumstances.

3                                          Respectfully Submitted,

4

5  DATED: March 2, , 2022                   BERMAN BERMAN BERMAN
                                            SCHNEIDER & LOWARY, LLP

6

7

8

9

10                              By:_____

                                            MARK E. LOWARY, ESQ.
11                                          KELLY M. HENRY, ESQ.
                                            Attorneys for Plaintiffs

12

13

14                                          de LUCA LEVINE LLC

15

16

17
   **Dated:**   March 1, 2022         **BY:**  _____
18                                          Kenneth T. Levine, Esquire
19                                          (not admitted in CA)
                                            Three Valley Square, Suite 220
20                                          Blue Bell, PA 19422
21                                          Ph:   (215) 383-0081
                                            Fax:  (215) 383-0082
22                                          klevine@delucalevine.com

23

24

25

26

27

28

                                          12
                                                                    Complaint

**EXHIBIT A**

**THE LAW OFFICE OF RICHARD I. GONZALEZ**
Richard I. Gonzalez - STATE BAR # 157203
1425 W. LUGONIA AVENUE, SUITE 203
REDLANDS, CALIFORNIA 92374
TEL: (909) 792-8899
FAX: (909) 792-8897

Attorney for Plaintiffs,
JACK BANKS and NEKOL BANKS,
Individually and as Guardian Ad Litem
for the minor child, CIENNA BANKS

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

OCT **1 6** 2015

BY _Josephine Esparza_
JOSEPHINE ESPARZA, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN BERNARDINO

| | |
|---|---|
| JACK BANKS and NEKOL BANKS, Individually and as Guardian Ad Litem for the minor child, CIENNA BANKS<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY WILHITE,<br><br>SILVER LAKES ASSOCIATION,<br><br>and DOES 1 thru 50<br><br>Defendants. | CIVDS 1515213<br><br>CASE NO:<br><br>**COMPLAINT FOR PERSONAL INJURIES** |

Plaintiffs, JACK BANKS and NEKOL BANKS, and their minor child, CIENNA

BANKS allege for a cause of action against the defendants, and each of them as follows:

1. The true name or capacities, whether individual, corporate, associate, or otherwise, of

defendants named herein as Does 1-50, Inclusive, are unknown to plaintiffs who

therefore sue said defendants by such fictitious names, and plaintiffs will amend this

1

complaint to show their true names and capacities when the same has been ascertained.

2.   Plaintiffs are informed and believe, and thereon allege, that each of the defendants designated as doe is negligently responsible in some form for the events and happenings herein referred to, and negligently caused injury and damages approximately thereby to the plaintiffs as herein alleged.

3.   The ongoing injuries to the plaintiff as herein alleged continue to occur in the County of San Bernardino.

4.   The alleged incident occurred in the city of Helendale, State of California.

5.   At all times mentioned, defendants, TIMOTHY WILHITE, and Does 1-50, inclusive, and each of them, were the owners and/or agents of the motor boat referred to in this complaint and generally described as a 2003 white ski boat, bearing the California vehicle license number CF78035P.

6.   At all times herein mentioned, plaintiffs' minor child, CIENNA BANKS,  was the passenger in the ski boat generally described as a 2003 white ski boat, bearing the California vehicle license number CF78035P.

7.   At all times herein mentioned, defendants, TIMOTHY WILHITE, and  Does 1-50, inclusive, and each of them were driving  and operating the afore described motor boat with the consent, permission and knowledge of their co-defendants.

8.   At all times herein mentioned, each of the defendants was the agent and/or employee of each of the remaining defendants and was at all times herein mentioned acting within the scope and course of such agency and employment.

9.   On or about October 3, 2014, the plaintiffs' minor child was the passenger in the above described boat in the city of Helendale.

2

Law Office of Richard I.
Gonzalez
1425 W. Lugonia Ave.
Suite 203
Redlands, CA 92374

10. At said time and place, the defendants, and each of them, so negligently constructed, monitored and maintained the premises. Specifically, defendants negligently maintained and operated said motor boat which caused serious injuries to CIENNA BANKS. Defendant had previously operated said motor boat with minors on board without the consent of the minor's parents.

11. Defendant SILVER LAKES ASSOCIATION knew or should have known that co-defendant improperly placed the motor boat on the lake. Also defendant, SILVER LAKES ASSOCIATION knew or should have known that said motor boat was not properly insured. Defendant, SILVER LAKES ASSOCIATION's policies and procedures precluded the motor boat from being placed on the lake; nevertheless defendant, SILVER LAKES ASSOCIATION, allowed said motor boat to be placed on the lake.

12. Defendant, SILVER LAKES ASSOCIATION, acted negligent by failing to properly police and monitor the lake to insure that the five (5) mile per hour speed limit was observed and complied with all boats using and having access to the lake.

13. Alternatively, SILVER LAKES ASSOCIATION, negligently failed to have proper Policies and Procedures, whether written or otherwise, in place and in effect to insure that only proper boats would be on the lake and that proper insurance was in place for all boats allowed on the lake.

14. As the proximate cause of the said conduct of the defendants, and each of them, the minor plaintiff was hurt and injured in her health, strength and activity, sustained injury to her body, shock, and injury to her nervous system in person, all of which said injuries have caused and continue to cause minor plaintiff mental, physical and nervous

3

Law Office of Richard I.
Gonzalez
1425 W. Lugonia Ave.
Suite 203
Redlands, CA 92374

pain and suffering. Plaintiffs are informed and believe, and thereon allege that said injuries will result in some permanent disabilities to the minor plaintiff, and to her general damage within the jurisdiction of this court.

15. As a further proximate result of the said conduct of the defendants, and each of them, the plaintiffs were required to and did employ physicians/health care providers to examine, treat and care for, and did incur medical and incidental expenses. The exact amount of such expenses is unknown to plaintiffs at this time, but will be shown according to proof at the time of trial.

16. Plaintiffs are informed and believe, and on such information and belief alleges that by reason of the said conduct of said defendants, plaintiffs have incurred other damages and will incur further medical and incidental expenses for the care and treatment of said injuries, the exact amount of which is unknown at the present time, but will be shown according to proof at the time of trial.

/////

/////

/////

4

Law Office of Richard I. Gonzalez
1425 W. Lugonia Ave.
Suite 203
Redlands, CA 92374

17. Wherefore, plaintiffs pray for judgment against the defendants, and each of them as follows:

1.   General damage within the jurisdiction of this court;

2.   Past and future medical and incidental expenses according to proof;

3.   Past and future loss of earnings according to proof;

4.   Prejudgment interest;

5.   Cost of suit herein;

6.   Such other and further relief as this court deems just and proper.

DATED: _10 - 16 - 15_____

                                    LAW OFFICE OF RICHARD I. GONZALEZ

                                    By:_____
                                        RICHARD I. GONZALEZ,
                                        Attorney for Plaintiffs,
                                        JACK BANKS and NEKOL BANKS,
                                        Individually and as Guardian Ad Litem
                                        for the minor child, CIENNA BANKS

5

**COMPLAINT FOR PERSONAL INJURIES**

Law Office of Richard I.
Gonzalez
1425 W. Lugonia Ave.
Suite 203
Redlands, CA 92374

**EXHIBIT B**

# COMMUNITY PATROL AGREEMENT

I. **WHEREAS,** Silver Lakes is a community development located in Helendale in the County of San Bernardino, State of California, which community consists of improved and unimproved residential and commercial lots, together with lakes, parks, a golf course, an equestrian center, a lodge and other amenities;

WHEREAS, Silver Lakes in a common interest development governed by the nonprofit mutual benefit corporation known as the Silver Lakes Association ("Association"); and

WHEREAS, the Association and Allied Barton Security Services ("Company") desire to enter into a contract for the provision of uniformed community patrol services.

NOW, THEREFORE, IT IS HEREBY AGREED that commencing on July 1, 2008 at 7:00 A.M., the Company will provide the Association with uniformed community patrol services pursuant to the terms and provisions set forth below.

II. **SERVICES**

The company shall provide community patrol services within the properties and amenities of the Silver Lakes Association, including, but not limited to, reporting to appropriate authorities (or to the Association if not a threat to health, safety or property) suspicious or dangerous activity or conditions, and the monitoring and enforcing of the Association's restrictions, rules and regulations through the use of patrol units and issuance of citations, if necessary.

A. **Service Rates/Hours**

1. **Service Rates**

The Company has carefully identified the tasks to be performed, and the personnel profile necessary to ensure quality coverage. With these elements in mind, the Company submits the following rates (including overtime and holiday billing):

1

See Addendum A

2. **Service Hours**

The number of authorized hours per week is 504. The Association's General Manager may authorize additional hours.

3. **The Pipe System**
Company shall supply its "Tour Watch System" tag/reader system, is furnished by Company at no additional charge to the Association.

B. **Selection/Screening**

The Company shall provide training, in at least the minimum amounts specified in Addendum "B" hereto, to all its employees who will provide services under this contract. All such employees must be security guards licensed by the State of California and have current certification from the Red Cross in CPR and basic first aid and receive appropriate animal control training prior to working on-site at the Association.

C. **Equipment/Uniforms**

1. Equipment supplied and serviced by Association.

    (8 ) Each Motorola radios
    (3) Each handheld Motorola radio (telephone)
    (4) Each Digital Camera
    (3) Bullhorn – one for each vehicle
    (1) Computer and printer
    (1) Copier

    At the end or termination of this agreement, Company shall return all equipment provided by Association. Company will pay damage or loss due to negligence or abuse to the Association for the repair or replacement costs of any equipment.

2. Equipment to be supplied by Company: All equipment (with the exception of the equipment to be provided by the Association) necessary for Company to fulfill its obligations under this Agreement and provide high-quality, first-class community patrol services, including, but not limited to, a guard control system and no less than three patrol vehicles, which vehicles must be clearly designated as Company

2

vehicles and be on-site at the Association at all times. All vehicles provided by Company must be no more than two-years old. Of the three required vehicles, all three will be a pickup truck, white in color. All vehicles and other equipment (including equipment provided by the Association) must be maintained by Company in good working order and in a clean and attractive condition at all times, and be repaired and/or replaced by Company or Association (as noted) when necessary.

3. Company employees shall wear uniforms while on duty at the Association, and the uniforms shall be clean and neat and composed of quality material. No ripped, or patched uniforms may be worn.

4. Every activity taken by Company employees while on patrol duty shall be written on a "Daily Log." Such log shall contain items such as, but not restricted to: Name, Shift hours; Vehicle unit number, Beginning and ending mileage; Gallons of gasoline, if needed; Citation numbers, Violations cited, and last name of violator, their lot and tract numbers, and location violation occurred; Animals impounded and location of pickup; all calls for services, and officer initiated incidents during work shift. Logs shall be turned into supervisor at end of watch. Supervisors shall check logs for accuracy and compile a typewritten log with all details listed above for the preceding 24-hour period. Such log shall be turned into Association's General Manager each morning for the previous day (exceptions are serious matters and (2) weekends).

**D.    Gasoline**

Company may gas the patrol vehicles used on site at the Association's facilities upon condition that Company will comply with the Association's gasoline record keeping requirements. Company shall pay Association (on a monthly basis) for any such gas at the Association's cost, invoiced to Company no later than the 10th of the month. Should Company not make payment in full within 60 days of receipt Association may charge a late fee of 1-1/2% per month on such overdue amount, including prior late charges, until paid in full. The Association may, at its sole option, offset any gasoline charges to amounts owed to Company.

E.    <u>Staffing</u>

Company shall provide ONE (1) community patrol officers for the day shift, ONE (1) community patrol officers for the swing shift; and ONE (1) community patrol officers for the graveyard shift. Association reserves the right to adjust the staffing requirements from time to time as may be required. The dispatch office shall be staffed with one (1) Company Dispatcher employee at all times. While on-duty, community patrol officers shall be actively patrolling all Silver Lakes area by vehicle. There shall be a supervisor on duty for each shift who shall also be patrolling. There shall be a Manager on duty 8 hours a day, who shall also be patrolling.

F.    **Specific duties and post orders**

      **See Samples**

G.    <u>Quality Assurance Program</u>

The Company shall institute a quality assurance program, which shall, at a minimum, consist of <u>a monthly written questionnaire (developed by the company) delivered to the Association's General Manager</u>. Upon completion and return of the written questionnaire, the Company shall make itself available to meet with the Association's General Manager to review and discuss the Company's performance.

H.    <u>Association Facilities</u>

Company shall have the use of the dispatch office and attached supply/break room, all located within the Association clubhouse, during the period of contract performance. In addition, Company employees may use the Association's phone(s) located within the dispatch office. Company shall reimburse Association (for double the amount) of any long-distance phone charges, toll charges or charges for personal use by Company employees of the Association's phones. The Association may, at its sole option, offset any telephone charges by the Company with any sums owed by Association to Company for the provision of community patrol services.

I.    <u>Payments</u>

Association agrees to pay all invoices within 30 days of receipt. Invoices shall be paid in full amount (except as noted above) without offset of any kind or nature unless there is a good faith dispute concerning the rate or quantity of charges in which event Association agrees to pay the

4

undisputed amount and to notify Company as to the reason for the dispute and the value thereof.

Should Association not make payment in full within the time stated above, Company may charge a late fee of 1-1/2% per month on such overdue amount, including prior late charges, until paid in full. Late charges will not be applied to unpaid amounts in dispute in good faith.

III.    **INSURANCE**

The Company shall, at all times during the term of the Agreement, or any extension thereof, and at its own cost and expense, procure and maintain from insurance company (ies) acceptable to the Association, insurance policies of the amount and types set forth below (but, in no event, with levels below those required by any applicable law, ordinance or regulation) and, with the exception of worker's compensation coverage, furnish the Association with certificates of insurance naming the Association, its directors, officers, agents and employees as additional insured under said policies, and additional insured under said policies. The "additional insured" designation shall be expressly limited to liability arising out of Company's operations pursuant to this Agreement. The Association shall not receive indemnification for any negligence (joint, concurrent, independent or individual), acts errors or omissions of the Association or its directors, officers, agents or employees. The indemnity provided shall be limited to the extent of the Company's liabilities arising out of Company's operations, the Indemnification provision contained in Section 7 hereof, and any vicarious liability that is imposed upon the Association as a result of the negligence, acts, errors or omissions of Company or its employees in the performance of the services provided for herein. Notwithstanding any other provision herein, the Association, its directors, officers, agents and employees shall be entitled to a defense by Company's insurer against any and all claims or lawsuits which include allegations that Company and/or its employee(s) were negligent in performance of its/their services at or for the Association. Irrespective of the policy limits of the Company's insurance policy, the coverage afforded the Association, as an additional insured is limited to the contractually required policy limits under this Agreement. Each certificate of insurance must state: "This policy will not be modified, canceled or terminated until at least thirty (30) days following delivery of written notice of the same to Association." Each insurance company must also issue the Association an ACORD 27 explicitly stating that the certificate of insurance conveys all rights and privileges afforded under the policy (ies) to the Association.

| LIMITS OF LIABILITY | | |
|---|---|---|
| COVERAGES | EACH OCCURRENCE | AGGREGATE |
| Comprehensive General Liability | $5,000,000.00 | $10,000,000.00 |
| Crime: Employee Dishonesty, Forgery or Alteration and Computer Fraud | $  150,000.00 | $   150,000.00 |
| Comprehensive Automobile Liability | $5,000,000.00 | $5,000,000.00 |
| Workers' Compensation/ Employers' Liability | Statutory/$1,000,000.00 | Statutory/ $1,000,000.00 |

Coverage's shall apply to all locations where the named insured is performing services and/or activities in connection with or arising out of this Agreement.

The policy of insurance, which affords comprehensive general liability, shall contain as a minimum:

- A provision or endorsement stating that such insurance, subject to all of its terms and conditions, applies to the liability assumed by the Company under this Agreement, including, but not limited to, the liability assumed under the indemnification and hold harmless provisions hereof (blanket contractual coverage).
- Premise operations, products/completed operations hazard, contractual liability, broad form property damage, and independent contractors coverage;
- Personal injury (including false arrest, detention or imprisonment, malicious prosecution, libel, slander, defamation, or violation of right of privacy, wrongful entry or eviction, or other invasion of right of private occupancy, bodily injury and assault and battery) coverage; and
- Legal liability coverage for dishonest acts of insurer's employees.

The comprehensive automobile liability must include bodily injury and property damage liability and must cover all owned, non-owned or hired vehicles.

The foregoing requirements as to types, limits and approval of insurance coverage to be maintained by the Company are not intended to, and shall not in any manner, limit or qualify the liabilities and obligations assumed by the Company under this Agreement.

IV.    **TERM OF AGREEMENT**

This Agreement shall expire, July 01, 2011 at 7:00 A.M., unless both parties have agreed, in writing, to a renewal or extension thereof. Should Company continue to provide services to Association after that date with the Association's consent, it

6

shall be presumed, absent a new written contract signed by both parties, that the
terms and conditions set forth herein shall still apply, upon a month-to-month
basis, terminable upon 30 days' notice.

V.    **TERMINATION OF AGREEMENT**

    A.    **For Cause**

        Upon the default of this Agreement by one party, the other party may
terminate this Agreement by written notice to the defaulting party, with
the termination date and time to be as specified in the written notice.  A
party shall be in default of this Agreement upon the event of poor or
nonperformance of its obligations or duties under this Agreement or if the
party becomes insolvent, makes a general assignment for the benefit of
creditors, files a voluntary petition of bankruptcy, suffers or permits the
appointment of a receiver for its business or assets, or becomes subject to
any proceeding under any bankruptcy, suffers or permits the appointment
of a receiver for its business or assets, or becomes subject to any
proceeding under any bankruptcy or insolvency law, whether domestic or
foreign, or has wound up or liquidated, voluntarily or otherwise.  In the
event that any of the above events occurs, that party shall immediately
notify the other party of its occurrence.

    B.    **Without Cause**

        Either party may terminate this Agreement, without cause, by providing
the other party with 30 days' notice of its intent to terminate.

VI.    **INVOICING PROCEDURES**

The Company shall forward to the Association's General Manager a bi-monthly
invoice summary supported by the following:

- Hours on-site, with time sheets signed by Company employee and supervisor
- Certification of all time by an officer of the Company
- Copies of Association's written authority for any overtime

Personnel and staff supplied by the Company are the Company's employees and
are not the employees of the Association.  The Company is solely responsible for
social security, unemployment and all other payroll and similar taxes applicable to
its employees plus any Company benefits (i.e. medical insurance, vacations,
additional holiday pay) not included as part of those specified in the contract.

## VII.    REPLACING EMPLOYEES

When requested, in writing, by the Association's General Manager, the Company shall immediately remove any person from duty at the Association.

## VIII.    INDEMNIFICATION

Company shall **DEFEND, INDEMNIFY** and **HOLD HARMLESS** the Association, its members, directors, officers, representatives, administrators, agents, partners, employees, attorneys, insurers, successors and assigns, **FROM ANY AND ALL CLAIMS, DAMAGES, ACTIONS, CAUSES OF ACTION, LIABILITIES, LOSS, COSTS, RESONABLE ATTORNEYS' FEES AND ANY OTHER EXPENSES** based upon or arising out of damages or injuries caused by the negligence of Company or its employee(s) while carrying out its/their duties of providing services under this Agreement, excepting from the duty to indemnify such damages, injuries or losses as are based upon, caused by or arising out of the negligence of the Association or its members, directors, officers, representatives, administrators, agents, partners, employees, attorneys, insurers, successors and assigns. Notwithstanding any other provision herein, Company's duty to defend, at its or its insurer's expense, the Association shall extend to any and all claims or lawsuits which include allegations that Company and/or its employee(s) were negligent in performing services at or for the Association. Further, Company's aforesaid duty to defend the Association shall extend to its directors, officers, employees and agents.

It is further agreed that the Company is not obligated to indemnify the Association or its members, directors, officers, representatives, administrators, agents, partners, employees, attorneys, insurers, successors and assigns for claims stemming from, or as a result of, insufficiency in patrol coverage, inadequate number and placement of patrol personnel, or the hours for which patrol services are provided, which are determined and specified solely by the Association and Association-directed post procedures. If any claims arising out of the foregoing are asserted against the Association, the Association agrees to accept sole responsibility for indemnifying itself against such claims.

## IX.    COMPLIANCE WITH LAW

Company is obligated to comply with all applicable laws, statutes, ordinances and regulations, including, but not limited to, complying with all licensing requirements   for private patrol operators and their employees.

## X.   MISCELLANEOUS

### A.   Attorneys' Fees

The prevailing party in any action to enforce or interpret this Agreement shall be entitled to recover from the other its reasonable attorneys' fees and costs.

### B.   Venue

Venue for any legal action to enforce or interpret the terms of this Agreement shall be in the San Bernardino County Consolidated Trial Courts, Victorville, California. This Agreement shall be governed by and interpreted in accordance with the laws of the State of California.

### C.   No Continuing Waiver.   No waiver of any term or condition of this Agreement shall be a continuing waiver thereof.

### D.   Entire Agreement.   This constitutes the entire agreement between the parties, and all prior agreements are merged into this Agreement.

### E.   Amendment.   Any amendment, change or addition shall be in writing and signed by both parties.

### F.   Counterparts.   This Agreement may be executed in one or more counterparts, all of which shall be deemed originals.

### G.   Effective Date.   Upon execution by all parties, this Agreement will become effective on July 1, 2008.

### H.   Notice.   Any notice to be served by either party upon the other shall be addressed to the respective party as follows:

To the Association:      Silver Lakes Association
                         15273 Orchard Hill Lane
                         P.O. Box 179
                         Helendale, CA  92342-0179

                         Attention:  Sandra Wojecki, General Manager

To the Company:          AlliedBarton Security Services

                         10280 Indiana Avenue

                         Riverside  CA 92503
                         Attention: Contracts Management

9

Addendum A

| Account Manager (Day Shift) | HPW | Pay Rate | Bill Rate | OT/Holiday Bill Rate |
|---|---|---|---|---|
| Starting Rate | 40 | 21.65 | 37.45 | Salaried |
| Merit Increase I | | 21.90 | 37.89 | Salaried |
| Merit Increase II | | 22.15 | 38.21 | Salaried |
| Merit Increase III | | 22.40 | 38.75 | Salaried |

| Shift Supervisor (Swing & Graveyard Shift) | HPW | Pay Rate | Bill Rate | OT/Holiday Bill Rate |
|---|---|---|---|---|
| Starting Rate | 128 | 12.00 | 20.76 | 31.14 |
| Merit Increase I | | 12.25 | 21.19 | 31.79 |
| Merit Increase II | | 12.50 | 21.63 | 32.45 |
| Merit Increase III | | 12.75 | 22.06 | 33.09 |

| Community Patrol Officer | HPW | Pay Rate | Bill Rate | OT/Holiday Bill Rate |
|---|---|---|---|---|
| Starting Rate | | 10.00 | 17.30 | 25.95 |
| Merit Increase I | | 10.25 | 17.73 | 26.60 |
| Merit Increase II | 168 | 10.50 | 18.17 | 27.26 |
| Merit Increase III | | 10.75 | 18.60 | 27.90 |

| Dispatcher | HPW | Pay Rate | Bill Rate | OT/Holiday Bill Rate |
|---|---|---|---|---|
| Starting Rate | 168 | 11.00 | 19.03 | 28.55 |
| Merit Increase I | | 11.25 | 19.46 | 29.19 |
| Merit Increase II | | 11.50 | 19.90 | 29.85 |
| Merit Increase III | | 11.75 | 20.33 | 30.50 |

**TOTAL ANNUAL COST WITH 8 PROPOSED HOLIDAY PAY AND** Account Manager fill in: $ 547,281.34, which includes Tour Watch System ($3700 value), and three 2008 brand new vehicles.

## ADDENDUM "B"
## TRAINING PROGRAM

### Pre-Selection Orientation

All assignees will complete a program detailing Security Officer General Orientation
Program before being considered for a security position. This program is to ensure that
the applicant understands the general requirements of being a contract security team
member and, indeed, wishes to apply for the position. After application and hiring
the new employee completes a test on its contents to ensure understanding of
requirements. Subjects covered in this initial program are:

- General duties and responsibilities of Security Officers
- Demeanor and hygiene
- Customer relations
- Introduction to patrol
- Introduction to field note-taking and report writing
- Legal authority of Security Officers — and its limitations
- Safety (occupational hazards)
- Fire protection and response
- Effective assertiveness
- Water Craft Training

### Security Officer Handbook Familiarization & Testing

A Security Officer Handbook is to be issued to each newly hired individual and the
employee is instructed to read and become familiar with the Handbook's contents.
Employees are advised that a test will be administered on the contents by a supervisor.
The answer sheet is placed in the employee's personnel file and the examination results
are entered on the Training Report for Security Officers.

### State-Required Training

The State of California requires training for contract security personnel. All security
assignees will successfully complete this training prior to consideration for placement at
Silver Lakes Association. Where state training requirements duplicate the topics
covered in our proposed training program, the training may be combined. (There are no
Federal requirements for training of Security Officers.)

### Pre-Assignment Training

The Company will prepare training and instruction manuals for the project and ensure
that all Security Officers assigned to Silver Lakes Association complete a pre-assignment
training program prior to placement as listed in the attached Programs list.
All Security officers will have completed all the courses listed in the Basic Training
Programs list before being assigned to duty in Silver Lakes. In addition each Security

12

officer shall have completed and passed Verbal Judo course and a PC 832 course. They
shall also have read and understood the Rules and regulations of Silver Lakes
Association.

All Company employees assigned to Silver Lakes Association shall have delivered to the
Association's General Manager a copy of their completed training prior to being assigned
to Silver Lakes.

### On-the-Job Training

Site-specific on-the-job training will be provided under the purview of a designated trainer
or a shift supervisor. All individuals conducting this training shall have been certified as
a training officer approved by the Association.

### Annual In-Service Refresher Training

Annual refresher training will be developed and presented by a designated instructor
using materials approved by the Association.

### Value Added Training:

Value-added training is training added to the contract at no additional labor costs. This
training is intended to be done on-the-job on a not-to-interfere basis with security duties.
The concurrence of Silver Lakes Association is necessary before implementation.

The Association shall have the right to audit records and instruction of value added
training of Company employees assigned to Silver Lakes.


SEE BASIC TRAINING PROGRAMS  - NEXT PAGE

| SUBJECT | HOURS OF INSTRUCTION | | | | |
|---|---|---|---|---|---|
| | 8 | 16 | 24 | 36 | 40 |
| General Duties and Responsibilities | | | | | |
| Human, Public & Media Relations | | | | | |
| Legal Authority and its Limitations | | | | | |
| Evidence and Crime Scene Preservation | | | | | |
| Patrol | | | | | |
| Report Writing | | | | | |
| Bomb Threats | | | | | |
| Crowd Control | | | | | |
| Traffic control | | | | | |
| Telephone Procedures and Etiquette | | | | | |
| Two-Way Radio Operations | | | | | |
| Interpersonal Communication | | | | | |
| Access and Key control | | | | | |
| Field Note-Taking | | | | | |
| On-the-job Training Techniques | | | | | |
| Fire Detection, Suppression and Life Safety | | | | | |
| Stress Management | | | | | |
| Driving Safely | | | | | |
| Accident Prevention | | | | | |
| Shift Work and Sleep Adjustment | | | | | |
| Dealing with Abnormal Behavior | | | | | |
| Controlled Substances | | | | | |
| OSHA First Responder-Awareness Level | | | | | |
| Personal Security | | | | | |
| Violence in the workplace | | | | | |
| Cultural Diversity | | | | | |
| Security Interviewing Techniques | | | | | |
| Security Surveys | | | | | |
| Private Security & Police Relations | | | | | |
| Sexual Harassment | | | | | |
| Serving the Security Customer | | | | | |
| Surveillance Camera Monitoring | | | | | |
| Effective Assertiveness | | | | | |
| Ethics | | | | | |
| Dog Handling | TBD | | | | |

14

# General Operating Procedure

---

Post Orders                                      Section 4

**Duties and responsibilities of Community Resource Officers**

- The Board of Directors has prioritized the responsibilities of the Department. Within the guidelines of the manual, you must:

  1. Provide Security patrols of all Silver Lakes areas as follows: Dayshift two (2) patrol units; Swing shift three (3) patrol units; Graveyard shift two (2) patrol units plus a supervisor patrolling on each shift.

  2. Respond to medical assistance, fire, police, and accident calls, as dispatched and provide assistance to appropriate authorities as requested.

  3. Provide security for all Association properties and employees and Silver Lakes property as indicated below.

  4. Check identification cards at all association facilities as required.

  5. Provide Lake Patrols at the direction of the Association's General Manager.

  6. Provide Dog and Animal control services throughout Silver Lakes.

- Provide mail delivery or a distribution point for mail of members of the Board of Director and Committees at the Security office.

- Warnings and citations are to be issued in accordance with Association policy as stated in the Silver Lakes Association Rules and Regulations.

- When traffic accidents are observed security may give aid (within the scope of their training) to the party involved until relieved by the appropriate authority. When circumstances warrant, road flares shall be placed appropriately to warn approaching traffic. All accidents involving Association property, equipment, or personnel, must be reported to the shift supervisor at once. The supervisor should respond and handle the matter appropriately. Photographs should be taken to augment reports. If a vehicle is involved, the California Highway Patrol shall be notified. A vehicle Accident Report must be completed. In those cases where injuries have occurred, an Injury Report must be completed in addition to the Vehicle Accident Report, and medical assistance will be sought if needed. In the case of property or equipment damage, the Maintenance Supervisor or standby Maintenance Technician will be advised. The supervisor will notify the Association's General Manager.

15

- Maintain a working knowledge of the Silver Lakes Rules and Regulations, The Personnel Manual, the Post Orders.

- Radios and master key sets will be protected at all times. They **must** be turned into the Supervisor prior to leaving the shift. The radio's SLA's control number, will be given to the dispatcher before commencing patrol duties. Any lost or misplaced keys shall be replaced at the expense of the security company. Officers will remain on street patrol at all times except when responding to dispatches, handling routine or special duties assigned by supervisors, or on meal / coffee breaks.

- Good radio discipline must be exercised at all times. Idle chatter, venting personal feelings, and similar inappropriate conduct is not allowed.

- Confidential information crucial to Department operations must never be transmitted by radio under any circumstances.

- Security personnel will <u>not</u> stop or detain any person on a public roadway, but shall observe and report any suspicious activity. This is to include a description or picture of the suspicious individual, license of vehicle(s), time, date, location and any other information that is relevant.

- If the Security officer observes a crime being committed, they shall immediately contact the sheriff's office through Security dispatch and use all means possible to ensure the crime scene remains undisturbed while waiting.. They shall remain on site until the Sheriff's unit arrives and releases them.

- Keep detailed log of activities while on duty. All reports, forms, and other paperwork must be completed prior to completion of work shift.

- Assist Deputy Sheriffs, California Highway Patrol, Fire Department, and medical personnel when requested to do so.

- Strict observance of speed limits and all other vehicular laws is mandatory when operating Security vehicles. All employees operating Security Vehicles must have current drivers license.

- Seat belts must be worn and speed limits obeyed. Vehicles must be driven with care at all times.

- Vehicles must be locked when unattended.

- Security officers shall note anything that may present a safety or fire hazard. If any are found, document them in your log and report them to the shift supervisor so a work order can be prepared for maintenance. If the condition is serious

16

enough that it requires immediate attention, ask the shift supervisor to contact the maintenance technician on call and have him respond immediately.

- When checking identification cards of all patrons using Association common facilities, fraudulent cards shall be confiscated and the patron removed from the facility. Confiscated cards shall be turned over to the Association's General Manager for proper disposition. Patrons possessing valid, but non-current (not updated) cards, shall be denied access to any facility after a 15 day grace period. Officers should instruct the member(s) to have his or her card updated before using any Association facilities. All other unauthorized persons shall be requested to leave immediately from Association facilities / properties. A file of all persons requested to leave Association facilities / properties shall be maintained and after the second violation proper authorities shall be notified. If a person refuses to leave property after requested by an officer the sheriff shall be called immediately for a trespass violation.

- Association common properties should be randomly patrolled and logged as frequently as time permits. In between common area checks, security shall patrol all streets within their assigned areas. One (1) officer shall be patrolling at all times.

- Only those security personnel dispatched may respond to calls. All other security personnel shall remain on normal patrol in their assigned patrol areas unless the responding security personnel have called for assistance (back up). Security personnel must respond immediately to calls for assistance from other security personnel, or supervisor.

## Use and Care of Patrol Boats

- Boats shall be operated by trained security personnel **only**. Training will be provided by the security company.

- In the event of an emergency on the water, the Fire Department will be called and Security will give all assistance requested by them.

- Boats shall be operated in a safe and seaman-like manner at all times. Lake speed limits must always be observed except when responding to emergencies. When responding to emergencies, the boat must not be operated in a reckless manner or a speed, which poses danger to the occupants or other craft operating on the lake.

- Once docked, boats must be tied securely. All electrical system switches must be turned off. Turn the battery switch to off. Padlock the battery compartment, all equipment must be removed and stored in the North Marina boat equipment storage room. Boats should be refueled when the gas gauge indicates a half tank or less of fuel remains.

17

- Engine hour meter readings shall be called in to the dispatcher at the time of launch and at shutdown returning to the marina. The reading must also be recorded in the security personnel patrol log.

- The readiness of the boats to respond to emergencies must be assured by regular operational checks and physical inspections. Supervisors should prepare a roster qualified security personnel to start and inspect the boats no less frequently than every other day.

- Open and close the North and South Marinas at designated times and ensure that all watercraft have a current SLA sticker. All boats launched must have a current year registration sticker attached to the boat. Stickers are issued at the RV Park Office. No exceptions to launching. All occupants must possess a membership card or guest pass. When a member requests to remove their boat from the water – current registration is not required, however you should inform the member their boat cannot be launched until the registration is updated.

**Animal Control**

If a dog is running through the neighborhood and is showing a calm, friendly demeanor, approach and look for tags. If the dog is non-aggressive take to the kennel, water and make every effort to contact the owner. If the dog shows aggression, contact Animal Control immediately.

- When a loose dog is picked up – check for SLA registration tag to notify owner. If no tag, check for San Bernardino County tag – call county for owner information. Take the dog to the Kennel until it can be picked up by the owner. A 24 Hour hold of the animal will be given to allow owner ample time to pick-up the animal.

- If dog doesn't have either tag, take to the Kennels and call Animal Control immediately for pick up of the dog.

- Make sure the dog is taken care of – fed and watered until released to Animal Control or owner picks it up.

- Clean Kennels regularly and after the dog is released to the owner or Animal Control.

or to such other addresses as from time to time may be designated in writing by the respective parties.

IT IS SO STIPULATED AND AGREED THIS ___5___ DAY OF ___June___, 2008.

AlliedBarton Security Services                SILVER LAKES ASSOCIATION

                                              By: _Sandra L Wojcik_
                                                  It's General Manager

By: _Debbie Bange_
    Business Development Mgr.


                                              By: _Robert Mook_
                                                  President Board of Directors

10

# ADDENDUM TO COMMUNITY PATROL AGREEMENT

### Between Silver Lakes Association
### and Allied Barton Security Services

This Addendum to Security Service Agreement ("Addendum") is attached to and made a part of the Community Patrol Agreement ("Agreement") between Allied Barton Security Services ("Company") and Silver Lakes Association ("Association"). The Agreement and this Addendum together shall constitute the "Amended Agreement." In the event any term or provision in this Addendum conflicts with any term or provision in the Agreement or its exhibits, this Addendum shall control.

For other good and valuable consideration, the parties agree as follows:

1. **Background Investigation.** Company will conduct and approve background investigations of all employees assigned to the Association account. Such investigations shall include criminal records, driving records, drug testing, and Company's best effort to ensure that all employees have the right to seek legal employment in the United States. Company shall not assign to Association any employee who may pose a risk to the residents, vendors, or employees of the Association. Company shall keep background records for employees assigned to the Association on file in such employee's personnel record for at least five years after the employee's last day of work at Association.

2. **Mandatory Drug Testing.** Company will strictly enforce a mandatory drug and alcohol testing policy that requires the immediate testing of any guard who: (i) acts in a manner that leads to a reasonable suspicion that he or she possesses, controls, or is under the influence of a drug or alcohol, (ii) acts in a manner that leads to a reasonable suspicion that he or she has been involved in the use, possession, and/or sale of drugs or alcohol while on the premises, or (iii) has been involved in a work-related accident or any violation of safety precautions or standards, whether or not an injury resulted from such accident or violation. Company will pay for the full cost of any testing. A guard shall immediately be removed from the premises and shall not be assigned to the premises for any further work, if he or she: (i) tests positive for drug or alcohol, (ii) is in possession of drugs or alcohol, (iii) or fails to cooperate fully with any request to test for drugs or alcohol.

3. **Dispute Resolution.** Any dispute arising out of this Addendum shall be resolved by final and binding arbitration before a retired superior court judge ("Arbitrator") in Los Angeles, California. If the parties cannot agree to an Arbitrator, the court shall appoint one pursuant to Section 1281.6 of the Code of Civil Procedure. The parties shall be entitled to only such discovery as is permitted by Section 1283.05 of the Code of Civil Procedure. Should any party refuse to or neglect to appear or participate in the arbitration proceedings, the Arbitrator shall decide the controversy in accordance with whatever evidence is presented. The requesting party shall remit the fees necessary to initiate the arbitration. The prevailing party shall be entitled to reasonable attorneys' fees and costs plus interest at the highest rate permitted by law as of the date of the breach. The trial shall commence, if possible, within three (3) months from the date the parties submit the matter to the Arbitrator. Judgment on the

Arbitrator's award may be entered in any court having jurisdiction. Arbitrator's award shall be subject to all post-trial procedures and appeals. In any action or proceeding arising out of this Addendum, the prevailing Party shall be entitled to reasonable attorneys' fees and costs, collection expenses, witness fees and experts' fees.

4. **Entire Agreement.** The Agreement together with this Addendum represents the entire Amended Agreement between the parties and supersedes all prior oral or written negotiations, understandings and bidding documents. Any alterations to this Amended Agreement are void and unenforceable unless done in writing and signed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date below.

| **ALLIED BARTON SECURITY SERVICES** | **SILVER LAKES ASSOCIATION** |
|---|---|
| By: Debbie Lange | By: Sandra L Wojecki |
| Name: Debbie Lange / Business Development MGR | Name: Sandra L Wojecki |
| Print Name and Title | Print Name and Title |
| Date: 6-5-2008 | Date: 6-5-2008 |

## AMENDMENT TO SERVICE AGREEMENT

This Amendment (the "Amendment") is entered into and effective as of July 1, 2014 (the "effective Date"), by and between Silver Lakes Association and AlliedBarton Security Service, LP a California Limited Partnership ("supplier") and hereby amends the security Agreement dated June 5, 2008 , by and Between Silver Lakes Association and Supplier, as amended from time to time (the "Agreement").

WHEREAS, the parties desire to amend the Agreement as set forth herein

NOW, THEREFORE, in consideration of the mutual covenants made herein, and for other good and valuable consideration, the receipt of which is acknowledged hereby, the parties agree as follows:

1.  The rates set forth in the Original contract Agreement will be extended for 12 month, with an expiration date of June 30, 2015.

Except as specifically amended hereby and without limiting the above, all other terms and conditions of the Agreement will remain in full force and effect. In the event of a conflict between terms of this Amendment and the terms of the Agreement, the terms of the Amendment shall govern. All capitalized terms not otherwise defined in this Amendment shall have the same meaning as set forth in the Agreement.

IN WITNESS WHEREOF, the parties have signed this Amendment by a duly authorize officer as of the date first written above.

SILVER LAKES ASSOCIATION

By: _Gregory S Hildreth_

Name: _GREGORY S HILDRETH_

Title: _PRESIDENT_

ALLIEDBARTON SECURITY SERVICES,LP.

By: ___Tim Albert___

Name: ___Tim Albert___

Title: ___Business Development Manager___

## Silver Lakes Pricing Addendum 2012

**Current** — **New Rates** — Effective 1 July 2012

| Officer Level | HPW | Pay | Bill | O.T. & Holiday Bill Rate | Total Pay | Total Bill | HPW | Pay | Bill | Total Pay | Total Bill | O.T. & Holiday Bill Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Community Patrol Officer** | | | | | | | | | | | | |
| 1 | 0 | | $17.30 | $25.55 | $0.00 | $0.00 | | | $17.47 | | $0.00 | $26.21 |
| 2 | | | $17.73 | $26.80 | $0.00 | $0.00 | | | $17.91 | | $0.00 | $26.87 |
| 3 | 111 | | $18.17 | $27.26 | $0.00 | $2,016.87 | 111 | | $18.35 | | $2,037.04 | $27.53 |
| 4 | 0 | | $18.60 | $27.90 | $0.00 | $0.00 | | | $18.79 | | $0.00 | $28.18 |
| | | | | | $0.00 | $0.00 | | | | | $0.00 | $0.00 |
| **Shift Supervisor** | | | | | | | | | | | | |
| 1 | 128 | | $20.76 | $31.14 | $0.00 | $2,657.28 | 128 | | $20.97 | | $2,683.86 | $31.45 |
| 2 | | | $21.19 | $31.79 | $0.00 | $0.00 | | | $21.40 | | $0.00 | $32.11 |
| 3 | | | $21.63 | $32.45 | $0.00 | $0.00 | | | $21.85 | | $0.00 | $32.77 |
| 4 | | | $22.06 | $33.09 | $0.00 | $0.00 | | | $22.28 | | $0.00 | $33.42 |
| | | | | | $0.00 | $0.00 | | | | | $0.00 | $0.00 |
| **Dispatcher** | | | | | | | | | | | | |
| 1 | 168 | | $19.03 | $28.55 | $0.00 | $3,197.04 | 168 | | $19.22 | | $2,229.01 | $28.84 |
| 2 | | | $19.46 | $29.19 | $0.00 | $0.00 | | | $19.65 | | $0.00 | $29.49 |
| 3 | | | $19.90 | $29.85 | $0.00 | $0.00 | | | $20.10 | | $0.00 | $30.14 |
| 4 | | | $20.33 | $30.50 | $0.00 | $0.00 | | | $20.53 | | $0.00 | $30.81 |
| | | | | | $0.00 | $0.00 | | | | | $0.00 | $0.00 |

Weekly Total: 407 — $0.00 — $7,371.19 | 407 — $0.00 — $7,949.90

Annual Cost: $409,301.88

Difference/Week: $78.71

Increased Cost: X52 = $413,394.90

Note: This is a one time increase request for the duration of the current contract.

---

AlliedBarton Security Services

Approval Signature: _BB Gale (signature)_

Printed name: BRAD GALE

Title: DISTRICT MANAGER

Date: 6-19-2012

---

Silver Lakes Association

Approval Signature: MDL * By directors of Board of Managers

Printed name: Michael Barnett

Title: General Manager

Date: 6/19/12

**EXHIBIT C**

## ADDENDUM TO COMMUNITY PATROL AGREEMENT

### BETWEEN SILVER LAKES ASSOCIATION

### AND ALLIEDBARTON SECURITY SERVICES LP

This Addendum to the Security Services Agreement ("Second Amendment"), effective _7/1/_ 2011 is attached to and made part of the Community Patrol Agreement ("Agreement") between AlliedBarton Security Services LP ("Company") and Silver Lakes Association ("Association"). The Agreement and this Addendum together shall constitute the "Amended Agreement". In the event any term or provision of this Addendum conflicts with any term or provision in the Agreement or its exhibits, this Addendum shall control.

For other good and valuable consideration, the sufficiency of which the parties hereby acknowledge, the parties agree as follows:

Scope of Services

AlliedBarton shall provide security officer services for Silver Lakes, Helendale, CA under the terms and conditions of the Master Service Agreement and Addendum dated June 5, 2008. The On-site Scope of Services of officer duties and responsibilities are documented in the post orders. This agreement shall expire on July 1, 2014.

Change Options:  (effective immediately)
Option to replace current Ford Pick-ups with Ford Escape (no additional cost)
1 D3 Unit – One year trial – Unit=no additional cost – Voice and Data Plan – no additional cost
1 D3 Unit – One year trial – Unit=no additional cost – Direct bill back voice and data plan $88.00 per month
(Two D3 Units Total)


1.    Article III. INSURANCE is amended as follows:

    a.    On line 9, delete the sentence starting commencing with "The additional insured designation" to the end of that sentence and insert the following:

        "The additional insured designation shall be expressly limited to, and to the extent of, liability arising out of the Company's negligence in providing services required under this Agreement."

    b.    On line 10, after the word "Agreement", add the following:

        "and to the types and limits of the insurance required under the Agreement."

    c.    On line 18, delete the sentence commencing with "Notwithstanding" to the end of that sentence and insert the following:

        "Notwithstanding any other provision herein, the Association, its directors, officers, agents and employees shall be entitled to a defense by Company's insurer against any and all claims or lawsuits which include, and only to the extent of, allegations that Company and/or its employee(s) were negligent in the performance of its/their services at or for the Association."

2.  **Article VIII. INDEMNIFICATION** is amended as follows:

    a.  On line 12, delete the sentence commencing with "Notwithstanding" to the end of that sentence.

3.  **Addendum A** of the Agreement is amended as follows:

    At the bottom of Addendum A, on page 11 of the Agreement add the following:

    a.  The Billing Rates set forth in Addendum A are valid for the first twelve (12) months the Agreement is in effect. The Billing Rates thereafter will be increased annually, effective as of the anniversary date of the Commencement date in an amount equal to the greater of (i) the percentage increase determined pursuant to the subsection below and (ii) three percent (3%) or mutually agreed upon.

    b.  In the event that Company experiences an increase in its costs resulting from any increase, whether or not anticipated, in or resulting from: (1) Federal, state or local taxes, levies, or required withholdings imposed or assessed on amounts payable to and/or by Company hereunder or by or in respect of Company to its personnel; (2) Federal, state or local minimum wage rates, mandated paid time off and/or sick leave, changes in overtime wage regulations, uniform maintenance expenses or other required employee allowances, licensing fees, or wage, medical, welfare and other benefit costs under collective bargaining agreements; (3) costs related to insurance and/or workers' compensation; and/or (4) costs related to medical, welfare and other benefits, including without limitation costs incurred by Company pursuant to applicable federal, state and/or local law, including, without limitation "Healthcare Reform Legislation Costs" (as defined below), the Billing Rates shall be increased by a percentage equal to the percentage increase in AlliedBarton's costs resulting from the items set forth in sub-clauses (1), (2), (3) and (4) of this paragraph. Company will provide Association notice of such change in the Billing Rate. Notwithstanding anything contained in this Section to the contrary, Company may pass through the costs set forth in sub-clauses (1)-(4) of this paragraph to Association as incurred or accrued and Association shall pay Company for such costs. "Healthcare Reform Legislation Costs" shall mean the cost incurred by Company in respect of the employee medical, welfare and other benefit requirements under the Patient Protection and Affordable Care Act of 2010 and the related statutes and regulations (as amended hereafter, the "Act").

4.  **Entire Agreement.**

    The Agreement together with this Second Amendment represents the entire Amended Agreement between the parties and supersedes all prior oral or written negotiations, understandings and bidding documents. Any alteration to this Amended Agreement is void and unenforceable unless done in writing and signed by both parties.

**IN WITNESS WHEREOF**, the parties have executed this Second Amendment as of the date below:

ALLIEDBARTON SECURITY SERVICES LP      SILVER LAKES ASSOCIATION

By: _____      By: _____

Name: _BRAD GALE_____      Name: _Sandra L. Wojecki_____

Print Name and Title           General manager

Date: _6/3/11_____     Print Name and Title

                                Date: _6-3-2011_____

**EXHIBIT D**



One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

# Philadelphia Indemnity Insurance Company

# Commercial
# Lines
# Policy

THIS POLICY CONSISTS OF:

– DECLARATIONS
– COMMON POLICY CONDITIONS
– ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF:
• ONE OR MORE COVERAGE FORMS
• APPLICABLE FORMS AND ENDORSEMENTS

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless signed by our authorized representative.

President & CEO

Secretary

IL N 177 09 12

# CALIFORNIA PREMIUM REFUND DISCLOSURE NOTICE

In accordance with CAL. INS. CODE § 481.(c), we are notifying you that in the event that the first Named Insured cancels the insurance policy, we shall retain 10% of the unearned premium. The premium refunded to you will therefore be calculated as 90% of the pro rata unearned premium. But if cancellation takes place during the first year of a multiyear prepaid policy, we will return 90% of the pro rata unearned premium for the first year and the full annual premium for the subsequent years.

If you have an Equipment Breakdown policy or your policy contains an Equipment Breakdown Coverage Part, then the following premium refund calculation applies instead of that provided in the preceding paragraph. For the Equipment Breakdown policy premium or for the premium attributable to the Equipment Breakdown Coverage Part, we shall retain 25% of the unearned premium. The premium refunded to you will therefore be calculated as 75% of the pro rata unearned premium. But if cancellation takes place during the first year of a multiyear prepaid policy, we will return 75% of the pro rata unearned premium for the first year and the full annual premium for the subsequent years.

However, the penalties set forth in the preceding paragraphs will not apply under the following circumstances, even if the first Named Insured cancels the policy:

1. The Insured(s) no longer has a financial or insurable interest in the property or business operation that is the subject of insurance;

2. Cancellation takes place after the first year for a prepaid policy written for a term of more than one year; or

3. The policy is rewritten in the same insuring company or company group.

PP 07 13 (07/13)

# PRIVACY POLICY NOTICE

### Philadelphia Indemnity Insurance Company

The Philadelphia Indemnity Insurance Company (or "We") value(s) your privacy and we are committed to protecting personal information that we collect during the course of our business relationship with you.

The collection, use and disclosure of certain nonpublic personal information are regulated by law.

This notice is for your information only and requires no action on your part. It will inform you about the types of information that we collect and how it may be disclosed. This does not reflect a change in the way we do business or handle your information.

**Information We Collect:**

We collect personal information about you from the following sources:
- Applications or other forms such as claims forms or underwriting questionnaires completed by you;
- Information about your transactions with us, our affiliates or others; and
- Depending on the type of transaction you are conducting with us, information may be collected from consumer reporting agencies, health care providers, employers and other third parties.

**Information We Disclose:**

We will only disclose the information described above to our affiliates and non-affiliated third parties, as permitted by law, and when necessary to conduct our normal business activities.

For example, we may make disclosures to the following types of third parties:
- Your agent or broker (producer);
- Parties who perform a business, professional or insurance functions for our company, including our reinsurance companies;
- Independent claims adjusters, investigators, attorneys, other insurers or medical care providers who need information to investigate, defend or settle a claim involving you;
- Regulatory agencies in connection with the regulation of our business; and
- Lienholders, mortgagees, lessors or other persons shown on our records as having a legal or beneficial interest in your policy.

We do not sell your information to others for marketing purposes. We do not disclose the personal information of persons who have ceased to be our customers.

**Protection of Information:**

Philadelphia Indemnity Insurance Company maintains physical, electronic and procedural safeguards that comply with state and federal regulations to protect the confidentiality of your personal information. We also limit employee access to personally identifiable information to those with a business reason for knowing such information.

**Use of Cookies:**

We may place electronic "cookies" in the browser files of your computer when you access this website. Cookies are text files placed on your computer to enable our systems to recognize your browser and to tailor the information on our website to your interests. We or our third party service providers or business partners may place cookies on your computer's hard drive to enable us to match personal information that we maintain about you so that we are able to pre-populate on-line forms with your information. We also use cookies to help us analyze use of our website to understand which areas of our site are most useful to you. You may refuse the use of cookies by selecting the appropriate settings on your browser. Please note that if you do this, you may not be able to use the full functionality of the website.

**How to Contact Us:** Philadelphia Indemnity Insurance Company, One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004
Attention: Chief Privacy Officer                                                                 07192013

Philadelphia Indemnity Insurance Company

Form Schedule – Policy

**Policy Number:** PHUB466124

Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| Recurring Payment Flyer | 1212 | Recurring Payment Flyer |
| BJP-190-1 | 1298 | Commercial Lines Policy Jacket |
| IL N 177 | 0912 | California Premium Refund Disclosure Notice |
| PP0713 | 0713 | Privacy Policy Notice |

PI-CXL-002 (04/13)

POLICY NUMBER: **PHUB466124**



One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

# COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY DECLARATIONS

| | |
|---|---|
| **Philadelphia Indemnity Insurance Company** | 113039<br>Hays of California Insurance Services<br>3800 Concours Ste 340<br>Ontario, CA 91764<br><br>(909)243-8200 |

NAMED INSURED:    **Silver Lakes Association**

MAILING ADDRESS: **PO Box 179**
                             **Helendale, CA 92342-0179**

POLICY PERIOD:  FROM ___**07/01/2014**___ TO ___**07/01/2015**___ AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE | | |
|---|---|---|
| EACH OCCURRENCE LIMIT<br>(LIABILITY COVERAGE) | $ ___**5,000,000**___ | |
| PERSONAL & ADVERTISING INJURY LIMIT | $ ___**5,000,000**___ | Any one person or organization |
| PRODUCTS COMPLETED OPERATIONS AGGREGATE LIMIT | $ ___**5,000,000**___ | |
| GENERAL AGGREGATE LIMIT (LIABILITY COVERAGE) (except with respect to Auto Liability and Products Completed Operations) | $ ___**5,000,000**___ | |

| RETAINED LIMIT |
|---|
| RETAINED LIMIT:              $_____**10,000**_____ |

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-002 (04/13)

POLICY NUMBER: **PHUB466124**

| PREMIUM | |
|---|---|
| PREMIUM SUBTOTAL | $ ▮ |
| STATE TAXES, FEES, SURCHARGES (if applicable) | $**N** ▮ |
| PREMIUM TOTAL (including Taxes, Fees, Surcharges) | $ ▮ |

| AUDIT PERIOD: | ☒ NOT APPLICABLE | ☐ ANNUALLY | ☐ SEMI-ANNUALLY | ☐ QUARTERLY | ☐ MONTHLY |
|---|---|---|---|---|---|

---

**DESCRIPTION OF BUSINESS**

FORM OF BUSINESS:    **ASSOCIATION**

BUSINESS DESCRIPTION: **Home Owners Association Umbrella**

---

**ENDORSEMENTS ATTACHED TO THIS POLICY**

SEE ATTACHED SCHEDULE

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-002 (04/13)

POLICY NUMBER: **PHUB466124**

| **SCHEDULE OF UNDERLYING INSURANCE** | | |
|---|---|---|

**Employers' Liability**

Company: _____

Policy Number: _____

Policy Period: _____

Minimum Applicable Limits

   Bodily injury by accident      $ _____ Each Accident

   Bodily injury by disease      $ _____ Each Employee

   Bodily injury by disease      $ _____ Policy Limit

---

**Commercial General Liability**    ☒ Occurrence    ☐ Claims-Made

Company:  **Philadelphia Indemnity Insurance Company**

Policy Number:  **PHPK1199768**

Policy Period:  **07/01/2014    07/01/2015**

Retroactive Date: **Not Applicable**

Minimum Applicable Limits:

   General Aggregate      $    **2,000,000**

   Products-Completed Operations Aggregate    $    **2,000,000**

   Personal And Advertising Injury    $    **1,000,000**

   Each Occurrence    $    **1,000,000**

---

**Commercial Auto Liability**

Company:  **Philadelphia Indemnity Insurance Company**

Policy Number:  **PHPK1199768**

Policy Period:  **07/01/2014    07/01/2015**

Minimum Applicable Limits

   Garage Aggregate Limit For Other Than Autos
(if applicable)    $    **Not Applicable**

   Each Accident    $    **1,000,000**

---

**Professional Liability**    ☐ Occurrence    ☐ Claims-Made

Company: _____

Policy Number: _____

Policy Period: _____

Retroactive Date: _____

Minimum Applicable Limits

_____  $ _____

_____  $ _____

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-002 (04/13)

POLICY NUMBER: **PHUB466124**

---

**Employee Benefits Liability**                    ☐ Occurrence          ☒ Claims-Made

Company: _____**Philadelphia Indemnity Insurance Company**_____

Policy Number: _**PHPK1199768**_____

Policy Period: _**07/01/2014**_____**07/01/2015**_____

Retroactive Date: **07/01/2014**_____

Minimum Applicable Limits

   **Each Claim**_____ $ _____**1,000,000**___

   **Aggregate**_____ $ _____**1,000,000**___

---

**Abuse or Molestation**                    ☐ Occurrence          ☐ Claims-Made

Company: _____

Policy Number: _____

Policy Period: _____

Retroactive Date: _____

Minimum Applicable Limits

   _____ $ _____

   _____ $ _____

---

**Directors & Officers Liability**                    ☐ Occurrence          ☐ Claims-Made

Company: _____

Policy Number: _____

Policy Period: _____

Retroactive Date: _____

Minimum Applicable Limits

   _____ $ _____

   _____ $ _____

---

**Liquor Liability**                    ☐ Occurrence          ☐ Claims-Made

Company: _____

Policy Number: _____

Policy Period: _____

Retroactive Date: _____

Minimum Applicable Limits

   _____ $ _____

   _____ $ _____

---

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-002 (04/13)

POLICY NUMBER:  **PHUB466124**

| | | | |
|---|---|---|---|
| **Watercraft Liability** | | ☐ Occurrence | ☐ Claims-Made |

Company: _____

Policy Number: _____

Policy Period: _____

Retroactive Date: _____

Minimum Applicable Limits

_____    $ _____

_____    $ _____

| | | | |
|---|---|---|---|
| **Other Coverages Not Included in Above** | | ☐ Occurrence | ☐ Claims-Made |

Company: _____

Policy Number: _____

Policy Period: _____

Retroactive Date: _____

Minimum Applicable Limits

_____    $ _____

_____    $ _____

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

President                          Secretary

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-002E (04/13)

# EMPLOYEE BENEFITS LIABILITY SUPPLEMENTAL SCHEDULE OF UNDERLYING INSURANCE

**Employee Benefits Liability**                        ☐ Occurrence        ☒ Claims-Made
Company:    **Philadelphia Indemnity Insurance Company**
Policy Number: **PHPK1199768**
Policy Period:   **07/01/2014        07/01/2015**
Retroactive Date: **07/01/2014**
Minimum Applicable Limits

| | | |
|---|---|---|
| **Each Claim** | $ | **1,000,000** |
| **Aggregate** | $ | **1,000,000** |

**Employee Benefits Liability**                        ☐ Occurrence        ☐ Claims-Made
Company:
Policy Number:
Policy Period:
Retroactive Date:
Minimum Applicable Limits
$
$

**Employee Benefits Liability**                        ☐ Occurrence        ☐ Claims-Made
Company:
Policy Number:
Policy Period:
Retroactive Date:
Minimum Applicable Limits
$
$

**Employee Benefits Liability**                        ☐ Occurrence        ☐ Claims-Made
Company:
Policy Number:
Policy Period:
Retroactive Date:
Minimum Applicable Limits
$
$

Philadelphia Indemnity Insurance Company

## Form Schedule – Umbrella Liability

**Policy Number:** PHUB466124

## Forms and Endorsements applying to this Coverage Part and made a part of this policy at time of issue:

| Form | Edition | Description |
|------|---------|-------------|
| PI-CXL-002 | 0413 | Commercial Umbrella Liability Ins Policy Declarations |
| PI-CXL-002E | 0413 | Emp Ben Liab Supplemental Schedule of Underlying Ins |
| PI-CXL-001 | 0912 | Commercial Umbrella Liability Insurance Policy |
| PI-CXL-004 | 0912 | Directors And Officers Liability Exclusion |
| PI-CXL-006 | 0912 | Employers Liability (Stop Gap) Exclusion |
| PI-CXL-007 | 0912 | Abuse Or Molestation Exclusion |
| PI-CXL-009 | 0912 | Automobile Liability Follow Form Endorsement |
| PI-CXL-014 | 0912 | Subsidence Exclusion |
| PI-CXL-015 | 0912 | Athletic Participants And Officials Exclusion |
| PI-CXL-016 | 0912 | Watercraft Exclusion Re-Stated |
| PI-CXL-025 | 0912 | Absolute Liquor Liability Exclusion |
| PI-CXL-026 | 0413 | Specified Underlying Claims Made Coverage Endorsement |
| PI-CXL-029 | 0912 | Employee Benefits Liability Follow Form Endorsement |
| PI-CXL-032 | 0912 | Fungi Or Bacteria Exclusion |
| PI-CXL-039 | 0912 | Cap On Losses From Certified Acts Of Terrorism |
| PI-CXL-CA 1 | 0912 | California Changes - Cancellation And Nonrenewal |
| PI-CXL-CA 2 | 0912 | California Changes |
| PI-UMTER-DN | 1012 | Disclosure Notice Of Terrorism Ins Cov Rejection Opt |

# COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY

This policy has been issued in reliance upon the statement in the Declarations made a part hereof and in the application submitted for this insurance.  Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II – WHO IS AN INSURED**.

Other words and phrases in this policy that appear in quotation marks have special meaning. Refer to **SECTION V – DEFINITIONS**.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit," whether or not collectible, which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.

   **Bodily Injury and Property Damage**

   a. This insurance applies to "bodily injury" or "property damage" only if:

      (1) The "bodily injury" or "property damage" arising out of an "occurrence" takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph **1.a.** of **SECTION II – WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   b. "Bodily injury" or "property damage which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of **SECTION II – WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   c. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of **SECTION II – WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence"

Includes copyrighted material of Insurance Services Office, Inc., with permission.

or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

### Personal and Advertising Injury

This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Defense of Claims or Suits and Supplementary Payments

**a.** We will have the right and duty to defend the insured against any "suit" seeking damages which are payable under **COVERAGES A** or **B** including damages wholly or partly within the "retained limit," but which are not payable by a policy of "underlying insurance," or any other available insurance because:

**(1)** Such damages are not covered; or

**(2)** The "underlying insurance" has been exhausted by the payment of claims.

Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**b.** We may investigate and settle any claim or "suit" in **a.** above at our discretion.

**c.** Our right and duty in **a.** above ends when we have used up the "applicable limit of insurance" in the payment of judgments or settlements.

**d.** We will pay, with respect to any claims or "suits" we defend in **a.** above:

**(1)** All expense we incur.

**(2)** Up to $2000 for cost of bail bonds (including bonds for related traffic violations) required because of an "occurrence" we cover. We do not have to furnish these bonds.

**(3)** The premium for appeal bonds and bonds to release attachments, but only for bond amounts within the "applicable limit of insurance." We do not have to furnish these bonds.

**(4)** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the insured in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**(6)** Prejudgment interest awarded against the insured on that part of the judgment we pay. If

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-001 (09/12)

we make an offer to pay the "applicable limit of insurance," we will not pay any prejudgment interest based on that period of time after the offer.

**(7)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have:

**(a)** Paid, or offered to pay; or

**(b)** Deposited in court;

The part of the judgment that is within the "applicable limit of insurance."

These payments will not reduce the limits of insurance.

**e.** We will have no duty to defend the insured against any claim or "suit" that any other insurer has a duty to defend.  If we elect to join in the defense of such claims or "suits," we will pay all expenses we incur, but we will not contribute to the expenses of the insured or the "underlying insurer."

**f.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

**(1)** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**(2)** This insurance applies to such liability assumed by the insured;

**(3)** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**(4)** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**(5)** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**(6)** The indemnitee:

**(a)** Agrees in writing to:

**(i)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(ii)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(iii)** Notify any other insurer whose coverage is available to the indemnitee; and

**(iv)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(b)** Provides us with written authorization to:

**(i)** Obtain records and other information related to the "suit"; and

Includes copyrighted material of Insurance Services Office, Inc., with permission.

**(ii)** Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnite, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **3. Exclusions**, **f.(2)** below, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the "applicable limit of insurance" in the payment of judgments or settlements or the conditions set forth above or the terms of the agreement described in Paragraph **f.(6)** above.

**3. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**c. Employment Related Practices**

"Bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment related practices, policies, acts or omissions such as discrimination, criticism, self-defamation, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or malicious prosecution directed at that person

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before, during or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-001 (09/12)

**(3)** To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**d.  War**

"Bodily injury," "property damage" or "personal and advertising injury" however caused arising, directly or indirectly out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Rebellion, revolution, insurrection, usurped power or action taken by governmental authority in hindering or defending against any of these.

**e.  E.R.I.S.A.**

Any obligation of the insured under the Employees' Retirement Income Security Act (E.R.I.S.A.) and any amendments thereto or any similar federal, state, or local statute.

**f.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**g.  Aircraft or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned, or operated by; or rented or loaned to any insured.  Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

This exclusion does not apply to:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

    **(1)**  Watercraft while ashore on premises you own or rent;

    **(2)**  Watercraft you do not own that is:

        **(a)**  Less than 50 feet long; and

        **(b)**  Not being used to carry persons or property for a charge.

    **(3)**  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

    **(4)**  The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage."  Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance; or

    **(5)**  Aircraft that is:

        **(a)**  Chartered by, loaned to, or hired by you with paid crew; and

        **(b)**  Not owned by any insured.

**h.  Auto Coverages**

    **(1)**  "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not an "auto" covered by "underlying insurance"; or

    **(2)**  Any loss, cost or expense payable under or resulting from any first party physical damage coverage; no-fault law; personal injury protection or auto medical payment coverage; or uninsured or underinsured motorist law.

In addition, any other auto liability exclusions contained in the applicable "underlying insurance" shown in the Schedule of Underlying shall apply.

**i.  Other Personal and Advertising Injury Exclusions**

"Personal and advertising injury":

    **(1)  Knowing Violation of Rights of Another**

    Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

    **(2)  Material Published with Knowledge of Falsity**

    Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

    **(3)  Material Published Prior to Policy Period**

    Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.  All "personal and advertising injury" arising out of publication of the same or similar material subsequent to the beginning of the policy period is also excluded.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-001 (09/12)

**(4) Criminal Acts**

Arising out of a criminal act committed by or at the direction of the insured.

**(5) Contractual Liability**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of a contract or agreement.

**(6) Breach of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

**(7) Quality or Performance of Goods – Failure to Conform to Statements**

Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

**(8) Wrong Description of Prices**

Arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

**(9) Infringement of Copyright, Patent, Trademark or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.  Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

However, this exclusion does not apply to infringement in your "advertisement" of copyright, trade dress or slogan.

**(10) Insureds in Media and Internet Type Businesses**

Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of websites for others; or

**(c)** An internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **16. a.**, **b.** and **c.** under **SECTION V – DEFINITIONS**.

For the purpose of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(11) Electronic Chatrooms or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns or over

Includes copyrighted material of Insurance Services Office, Inc., with permission.

which the insured exercises control.

**(12)    Unauthorized Use of Another's Name or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**j.    Damage to Property**

"Property damage" to property:

**(1)**    You own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)**    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)**    Property loaned to you;

**(4)**    Personal property in the care, custody or control of an insured;

**(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(1)**, **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.    Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.    Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Pollution**

**(1)** "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

    **(i)** "Bodily injury" if sustained within a building and caused by smoke, fume, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

    **(ii)** "Bodily injury" or "property damage" for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or

Includes copyrighted material of Insurance Services Office, Inc., with permission.

processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as a part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

**(e)** At or from any premises, site or location on which any insured or any contractor or subcontractor working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**p.   Discrimination**

Any liability arising from discrimination:

**(1)** Suffered or allegedly suffered by any person based upon, but not limited to, color, creed, gender, race, national origin, age, handicap, illness, religion or sexual preference; or

**(2)** Due to unfair trade practices.

**q.  Asbestos**

"Bodily injury," "property damage" or "personal and advertising injury" arising out of the "asbestos hazard."

We shall have no obligation under this policy:

**(1)** To investigate, settle or defend any claim or "suit" against any insured alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the "asbestos hazard"; or

**(2)** To pay, contribute to, or indemnify another for any damages, judgments, settlements, loss, costs or expenses that may be awarded or incurred by reason of any such claim or "suit" or any injury or damage, or in complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion:

"Asbestos hazard" means:

**(a)** An actual exposure or threat of exposure to the harmful properties of "asbestos"; or

**(b)** The presence of "asbestos" in any place, whether or not within a building or structure.

"Asbestos" means the mineral in any form, including but not limited to fibers or dust.

**r.  Nuclear Energy Liability**

Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under such policy but for its termination upon exhaustion of its limit of liability;

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued, would be entitled to indemnity from the United States of America, or any agency thereof, with any person or organization; or

**(3)** Resulting from the "hazardous properties" of "nuclear material", if:

**(a)** The "nuclear material"

**(i)** Is at any "nuclear facility" owned by, or operated by or on behalf of an insured; or

**(ii)** Has been discharged or dispersed therefrom;

Includes copyrighted material of Insurance Services Office, Inc., with permission.

**(b)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(c)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(c)** applies only to "property damage" to such "nuclear facility" and any property threat.

As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material," or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of "nuclear facility."

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(i)** separating the isotopes of uranium or plutonium; **(ii)** processing or utilizing "spent fuel"; or **(iii)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

**s. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing or alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**t. Trade or Economic Sanctions**

To the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

**u. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

This exclusion does not apply if valid "underlying insurance" for the electronic data risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage." Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance," unless otherwise directed by this insurance.

**v. Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of materials or information.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a

Includes copyrighted material of Insurance Services Office, Inc., with permission.

business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured.  Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insured, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Any subsidiary you wholly own, either directly or indirectly, at the inception of our policy.

**3.** Each of the following is also an insured:

**a.** With respect to the "auto hazard":

**(1)** Anyone using an "auto" you own, hire or borrow including any person or organization legally responsible for such use provided it is with your permission; and

**(2)** Any of your "executive officers," directors, partners, "employees" or stockholders, operating an "auto" you do not own, hire or borrow while it is being used in your business.

None of the following is an insured under **(1)** or **(2)** above:

**(a)** Any person employed by or engaged in the duties of an auto sales agency, repair shop, service station, storage garage or public parking place that you do not operate.

**(b)** The owner or lessee of any "auto" hired by or for you or loaned to you and any agent or employee of such lessee.

**b.** With respect to aircraft:

Anyone using an aircraft chartered with crew by you or on your behalf and anyone legally responsible for its use except:

**(1)** The owner or crew of the aircraft or any person operating such aircraft;

**(2)** Any manufacturer of the aircraft or any of its parts;

**(3)** Any sales, service or repair company;

**(4)** Any airport or hangar operator; or any "employee" of **(2)**, **(3)** or **(4)**.

**c.** Except with respect to aircraft and the "auto hazard":

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your

managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(a)** "Bodily injury" or "personal and advertising injury":

   **(i)** To you, to your partners or members (if you are a partnership or joint venture), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business unless insurance for such liability is afforded by the "underlying insurance";

   **(ii)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(a)(i)** above;

   **(iii)** For which there is any obligation to share damage with or repay someone else who must pay damages because of the injury described in Paragraphs **(a)(i)** or **(ii)** above; or

   **(iv)** Arising out of his or her providing or failing to provide professional health care services.

**(b)** "Property damage" to property:

   **(i)** Owned, occupied or used by;

   **(ii)** Rented to, in the care custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**(2)** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

   **(a)** With respect to liability arising out of the maintenance or use of that property; and

   **(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this insurance.

**d.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured. However:

**(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**(2)** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

Includes copyrighted material of Insurance Services Office, Inc., with permission.

**(3)** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**e.** Any person or organization for whom you agreed in writing to provide this insurance for operations you perform or facilities you own or use.  This insurance is subject to your "applicable underlying limits" for such operations or facilities.

**f.** Any other person or organization insured under any policy of the "underlying insurance."  This grant is subject to all the limitations upon coverage under such policy other than the limits of the "underlying insurers" liability.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The limits of insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought, or number of vehicles involved; or

**(c)** Persons or organizations making claims or bringing "suits."

**2.** The Products-Completed Operations Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

**3.** The General Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage A and Coverage B except:

**(a)** Damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard"; and

**(b)** Damages because of "bodily injury" and "property damage" included in the "auto hazard."

**4.** Subject to **3.** above, the most we will pay under Coverage B for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization shall be an amount equal to the Each Occurrence Limit.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage A because of all "bodily injury" and "property damage" arising out of any one "occurrence."

**6.** If there is "underlying insurance" with a policy period that is non-concurrent with the policy period of this Commercial Umbrella Liability policy, the "applicable underlying limit" will only be reduced or exhausted by payments for:

**a.** "Bodily injury" or "property damage" which occurs during the policy period of this policy.

**b.** "Personal and advertising injury" for offenses that are committed during the policy period of this policy.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

However, if any "underlying insurance" is written on a claims-made basis, the "applicable underlying limit" will only be reduced or exhausted by claims for that insurance that are made during the policy period, or any Extended Reporting Period, of this policy.

To determine the Limit of Insurance, all "bodily injury" and "property damage" arising out of continuous or repeated exposure to the same general conditions shall be considered one "occurrence."

The limits of insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – CONDITIONS

**1. Appeals**

If the insured or the "underlying insurer" elects not to appeal a judgment in excess of the "applicable underlying limit," we may elect to make such appeal, at our cost and expense.

If we so elect, we shall be liable in addition to the "applicable limit of insurance" for the:

**(a)** Taxable costs;

**(b)** Disbursements; and

**(c)** Additional interest incidental to such appeal;

but in no event will we be liable for damages in excess of the applicable aggregate Limit of Insurance.

If a judgment is rendered in excess of the limits of "underlying insurance" and we offer to pay our full share of such judgment, but you or your "underlying insurers" elect to appeal it, you, your "underlying insurers" or both will bear:

**(1)** The cost and duty of obtaining any appeal bond;

**(2)** The taxable costs, disbursements and additional interest incidental to such appeal; and

**(3)** Any increase in damages over the amount the matter could have been settled for after the verdict was entered and before the appeal was filed.

**2. Bankruptcy**

**a.** Bankruptcy of Insured

Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this insurance.

**b.** Bankruptcy of Underlying Insurer

Bankruptcy of the "underlying insurer" will not relieve us of our obligations under this insurance.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

However, this insurance will not replace the "underlying insurance" in the event of bankruptcy or insolvency of the "underlying insurer." This insurance will apply as if the "underlying insurance" were in full effect.

**3. Cancellation**

**a.** The first Named Insured may cancel this insurance by mailing or delivering to us in advance, written notice of cancellation.

**b.** We may cancel this insurance by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**d.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**e.** If this policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund will be pro rata, less 10% of the pro rata unearned premium. The cancellation will be effective even if we have not made or offered refund.

**f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**4. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. No change can be made in the terms of this insurance except with our consent. The terms of this insurance can be amended or waived only by endorsement issued by us and made a part of this insurance.

**5. Duties in the Event of Occurrence or Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of any "occurrence" or any offense which may result in a claim under this insurance when the occurrence or offense is known to:

**(1)** You, if you are an individual;

**(2)** Your partner, if you are a partnership;

**(3)** Your member, if you are a joint venture;

**(4)** Your member or manager, if you are a limited liability company; or

**(5)** Your officer or insurance manager, if you are an organization other than a partnership, joint venture or limited liability company.

**b.** Notice should include:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

(1)  How, when and where the "occurrence" or offense took place;

(2)  The names and addresses of any injured persons and witnesses; and

(3)  The nature and location of any injury or damage arising out of the "occurrence."

c.  If a claim or "suit" is brought against any insured which may result in a claim against this insurance, you must see to it that we receive prompt written notice of the claim or "suit."

d.  The insured must:

(1)  Cooperate with the "underlying insurers";

(2)  Comply with the terms of the "underlying insurance";

(3)  Pursue all rights of contribution or indemnity against any person or organization who may be liable to the insured because of "bodily injury," "property damage", or "personal and advertising injury" with respect to which insurance is provided under this or any policy of "underlying insurance."

(4)  When we believe that a claim may exceed the "underlying insurance," we may join with the insured and the "underlying insurer" in the investigation, settlement and defense of all claims and "suits" in connection with such "occurrence" or offense.  In such event, the insured must cooperate with us.

**6.  Examination of your Books and Records**

We may examine and audit your books and records as they relate to this insurance:

a.  At any time during the policy period;

b.  Up to three years afterward; or

c.  Within one year after final settlement of all claims under this insurance.

**7.  Inspection and Surveys**

We have the right but are not obligated to:

a.  Make inspections and surveys at any time;

b.  Give you reports on the conditions we find; and

c.  Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

(1)  Are safe or healthful; or

(2)  Comply with laws, regulations, codes or standards.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-001 (09/12)

**8.  Legal Action Against Us**

No person or organization has a right under this insurance:

**a.**  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.**  To sue us on this insurance unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial. We will not be liable for damages that:

**(1)**  Are not payable under the terms of this insurance; or

**(2)**  Are in excess of the "applicable limit of insurance."

An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**9.  Maintenance of / Changes to Underlying Insurance**

The "underlying insurance" listed in the Schedule of Underlying Insurance in the Declarations shall remain in full effect throughout the policy period except for reduction of the aggregate limit due to payment of claims, settlements or judgments.

Failure to maintain "underlying insurance" will not invalidate this insurance. However, this insurance will apply as if the "underlying insurance" were in full effect.

If there is an increase in the scope of coverage of any "underlying insurance" during the term of this policy, our liability will be no more than it would have been if there had been no such increase.

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect or if the limits or scope of coverage of any "underlying insurance" is changed.

**10.  Other Insurance**

**a.**  This insurance is excess over, and shall not contribute with any of the other insurance whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this policy.

When this insurance is excess, we will have no duty under this policy to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**b.**  When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

**(1)**  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)**  The total of all deductible and self-insured amounts under all that other insurance.

**11.  Transfer of Rights of Recovery Against Others to Us**

Includes copyrighted material of Insurance Services Office, Inc., with permission.

**a.** If any insured has rights to recover from any other person or organization all or part of any payment we have made under this policy, those rights are transferred to us.  The insured must do nothing after loss to impair those rights.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**b.** Any such recovery shall be applied as follows:

**(1)** First, any person or organization (including the insured) that has paid an amount in excess of the applicable limits of insurance of this policy will be reimbursed for the actual excess amount paid under this policy;

**(2)** Then, we will be reimbursed up to the amount we have paid; and

**(3)** Last, any insured or issuer of scheduled "underlying insurance" is entitled to claim the remainder, up to the amount that insured or issuer of scheduled "underlying insurance" has paid.

**c.** Expenses incurred in the exercise of such rights of recovery shall be apportioned among such persons or organizations, including the insured, in the same ratio as their respective recoveries are finally shared.

**12. Premium**

**a.** The first Named Insured has primary responsibility for the payment of all premiums and will be the payee for any return premiums.

**b.** If the premium is a flat charge, it is not subject to adjustment except as provided in **d.** below.

**c.** If the premium is other than a flat charge, it is an advance premium only. The earned premium will be computed at the end of each year in which this insurance is in force at the rate shown in the Declarations, subject to the Minimum Annual Premium.

**d.** Additional premium may become payable when coverage is provided for additional insureds; and Named Insureds under the provisions of **SECTION II – WHO IS AN INSURED**, Items **3. d.**, **e.**, and **f.**

**13. Premium Audit**

**a.** You must keep record of the information we need for premium computation and send us copies at such times as we may request;

**b.** At the close of each audit period we will compute the earned premium for that period; and

**c.** Audit premiums are due and payable on notice to you.

**14. Representations or Fraud**

By accepting this insurance, you agree:

**a.** The statements in the Declarations and any subsequent notice relating to "underlying insurance" are accurate and complete;

**b.** Those statements are based upon representations you made to us;

**c.** We have issued this insurance in reliance upon your representations; and

Includes copyrighted material of Insurance Services Office, Inc., with permission.

    **d.**  This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

**15.**  **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to you in this insurance, this insurance applies:

    **a.**  As if each Named Insured were the only Named Insured; and

    **b.**  Separately to each insured against whom claim is made or "suit" is brought.

**16.**  **Transfer of your Rights and Duties Under this Insurance**

Your rights and duties under this insurance may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to:

    **a.**  Your legal representative but only while acting within the scope of duties as your legal representative.

    **b.**  Anyone having your rights and duties but only with respect to that property, until your legal representative is appointed.

**17.**  **When Loss is Payable**

Coverage under this policy will not apply until the insured, or the insured's "underlying insurer" has paid or is obligated to pay the full amount of the "applicable underlying limit."

When the amount of damages is determined by an agreed settlement or on a final judgment against an insured obtained after an actual trial, we will promptly pay on behalf of the insured the amount of damages covered under the terms of this policy. The first Named Insured will promptly reimburse us for any amount within the "retained limit."

**18.**  **Transfer of Defense**

When the underlying limits of insurance have been used up in the payment of judgments or settlements, the duty to defend will be transferred to us. We will cooperate in the transfer of control to us of outstanding claims or "suits" seeking damages to which this insurance applies which would have been covered by the "underlying insurance" had the applicable limit not been used up.

**SECTION V – DEFINITIONS**

**1.**  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

    **a.**  Notices that are published include material placed on the internet or on similar electronic means of communication.

    **b.**  Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-001 (09/12)

2.  "Applicable limit of insurance" means the maximum amount we will pay as damages in accordance with **SECTION III – LIMITS OF INSURANCE**.

3.  "Applicable underlying limit" means:

    a.  If the policies of "underlying insurance" apply to the "occurrence" or offense, the greater of:

        (1)  The amount of insurance stated in the policies of "underlying insurance" in the Declarations or any other available insurance less the amount by which any aggregate limit so stated has been reduced solely due to payment of claims; or

        (2)  The "retained limit" shown in the Declarations; or

    b.  If the policies of "underlying insurance" do not apply to the "occurrence" or offense, the amount stated in the Declarations as the "retained limit."

    The limits of insurance in any policy of "underlying insurance" will apply even if:

        (a)  The "underlying insurer" claims the insured failed to comply with any condition of the policy; or

        (b)  The "underlying insurer" becomes bankrupt or insolvent.

4.  "Auto" means:

    a.  A land motor vehicle, trailer or semi-trailer designed for travel on public road, including any attached machinery or equipment; or

    b.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

    However, "auto" does not include "mobile equipment."

5.  "Auto hazard" means all "bodily injury" and "property damage" for which liability insurance is afforded under the terms of the auto policy of "underlying insurance," other than the limits of insurance of the auto policy of "underlying insurance."

6.  "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

7.  "Coverage territory" means:

    a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

    c.  All other parts of the world if the injury or damage arises out of:

        (1)  Goods or products made or sold by you in the territory described in **a.** above;

        (2)  The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-001 (09/12)

**(3)** "Personal and advertising injury" offenses that take place through the internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

8. "Employee" includes a "leased worker."  "Employee" does not include a "temporary worker."

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

10. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract agreement;

   if such property can be restored to use by:

   **(1)** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **(2)** Your fulfilling the terms of the contract or agreement.

11. "Insured contract" means:

   **a.** A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees," of any "auto."  However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees."

   **g.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraphs **f.** and **g.** do not include that part of any contract or agreement:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees," if the "auto" is loaned, leased or rented with a driver; or

**(3)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**12.** "Leased worker" mans a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

**13.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**14.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c. or d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c. or d.** above maintained primarily for purposes other than

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-001 (09/12)

the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos."

**15.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**16.** "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

**17.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**18.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**19.** "Property damage" means:

**(a)** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**(b)** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**20.** "Retained limit" is the amount stated in the Declarations as such. If the policies of "underlying insurance" do not apply to the "occurrence" or offense, the insured shall retain this amount as self-insurance with respect to:

**(a)** "Bodily injury" or "property damage" caused by each "occurrence"; or

**(b)** "Personal and advertising injury" sustained by any one person or organization.

The "retained limit" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

**21.** "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

Includes copyrighted material of Insurance Services Office, Inc., with permission.

**(a)** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

**24.** "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of Underlying Insurance and includes:

**a.** Any renewal or replacement of such policies; and

**b.** Any other insurance available to the insured.

**25.** "Underlying insurer" means any insurer which provides any policy of insurance listed in the Schedule of Underlying Insurance or any other insurance available to the insured.

**26.** "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**27.** "Your product" means:

**a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(1)** You;

**(2)** Others trading under your name; or

**(3)** A person or organization whose business or assets you have acquired; and

**b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**(a)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(b)** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**28.** "Your work" means:

**a.** Work or operations performed by you or on your behalf; and

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-001 (09/12)

**b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, or performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-004 (09/12)

<u>**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**</u>

# DIRECTORS AND OFFICERS LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**A.  SECTION I – COVERAGES, 3. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any liability, damage, loss, cost or expense arising from any "wrongful act" of any director or officer of the insured in the discharge or performance of their duties as such.

**B.  SECTION V – DEFINITIONS** is amended to include the following provision:

The definition of "wrongful act" is the same as the definition contained in the applicable "underlying insurance."

PI-CXL-006 (09/12)

## <u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>

## EMPLOYERS' LIABILITY (STOP GAP) EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any liability for "bodily injury," disability or shock, including death at any time resulting from any of these, and, if arising out of the foregoing mental anguish or mental injury sustained by:

**1.** An "employee" of the insured arising out of and in the course of employment by the insured; or

**2.** The spouse, child, parent, brother or sister of that "employee" as a consequence of **1.** above.

This exclusion applies:

  **a.** Whether the insured may be liable as an employer or in any other capacity; and

  **b.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

PI-CXL-007 (09/12)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any liability, damage, loss, cost or expense arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured;

2. The negligent:

   a. Employment;

   b. Investigation;

   c. Supervision;

   d. Reporting to proper authorities, or failure to so report; or

   e. Retention;

   of a person for whom any insured is or ever was legally responsible or for whom any insured may have assumed the liability; and whose conduct would be excluded by **1.** above; or

3. Any applicable coverage provided in the "underlying insurance."

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-009 (09/12)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AUTOMOBILE LIABILITY FOLLOW FORM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES, 1.  Insuring Agreement** is amended to include the following:

This policy is intended to include coverage for liability arising out of the ownership, operation, maintenance, use, "loading or unloading" or entrustment to others of an "auto."

The auto liability insurance provided will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance unless otherwise directed by an endorsement to this policy.

To the extent such provisions differ or conflict, the provisions of this policy will apply.  However, the coverage provided under this policy will not be broader than that provided by the applicable "underlying insurance."

PI-CXL-014 (09/12)

## <u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>

# SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any liability, damage, loss, cost or expense, whether direct or indirect, arising out of, caused by, resulting from, contributed to or aggravated by the subsidence of land, including any:  settling, expansion, sinking, slipping, falling away, tilting, caving in, shifting, eroding, mud flow, rising, or any other movement of land or earth if any of the foregoing emanate from the operations of the insured or any other person for whose acts the insured is legally liable.

PI-CXL-015 (09/12)

## <u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>

# ATHLETIC PARTICIPANTS AND OFFICIALS EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to any liability, damage, loss, cost or expense for injury sustained by:

☐ Any person while practicing for, or participating in, or officiating at, any athletic contest or exhibition; or

☐ Any person specified below:

All sponsored athletic events sponsored by the Named Insured.

PI-CXL-016 (09/12)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WATERCRAFT EXCLUSION RE-STATED

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions**, **g. Aircraft or Watercraft** is deleted in its entirety and replaced with the following:

> **g.  Aircraft or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned, or operated by; or rented or loaned to any insured.  Use includes operation and "loading or unloading."
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.
>
> This exclusion does not apply to:
>
> **(1)**  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft.
>
> **(2)**  The extent that valid "underlying insurance" for the aircraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage."  Coverage provided will follow the provision, exclusions and limitation of the "underlying insurance" unless otherwise directed by this insurance; or
>
> **(3)**  Aircraft that is:
>
> > **(a)**  Chartered by, loaned to, or hired by you with paid crew; and
> >
> > **(b)**  Not owned by any insured.

PI-CXL-025 (09/12)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ABSOLUTE LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES**, **3. Exclusions**, **s. Liquor Liability** is deleted in its entirety and replaced with the following:

This insurance does not apply to any liability, damage, loss, cost or expense for which any insured may be held liable by reason of:

**1.** Causing or contributing to the intoxication of any person;

**2.** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**3.** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

PI-CXL-026 (04/13)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIFIED UNDERLYING CLAIMS MADE COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

## COVERAGE AS PROVIDED BY THIS ENDORSEMENT IS CLAIMS MADE AND REPORTED AS PER THE TERMS OF THE UNDERLYING INSURANCE POLICY. PLEASE READ THE ENTIRE POLICY CAREFULLY.

This insurance shall follow the insuring agreement, exclusions, definitions, conditions and any limitations of the "underlying insurance" shown in the Schedule of Underlying Insurance as **Employe Benefits Liability** provided always that:

**1.** This insurance applies only if a claim is first made in writing during the policy period;

**2.** This insurance does not apply to any liability which occurs prior to **07/01/2014**, hereinafter referred to as the retroactive date;

**3.** This insurance does not apply to any prior litigation, demand, circumstance or situation which has been the subject of any written notice given under any other similar insurance or is pending as of inception of this policy; and

**4.** No coverage exists for claims first made against the insured after the end of the policy period unless an Extended Reporting Period Endorsement is added to this policy and an additional premium is paid when due and provided that:

    **a.** A claim first made during the Extended Reporting Period shall be deemed to have been made on the last day of the policy period provided that the claim is for covered liability that occurred before the end of the policy period but not before the retroactive date;

    **b.** The length of the Extended Reporting Period will be for a period of **1 year** or the time period provided by the underlying **Employee Benefits Liability** policy whichever is less and provided we issue an Extended Reporting Period Endorsement to this policy. We will issue the Extended Reporting Period Endorsement if the first Named Insured:

        **(1)** Makes a written request for it, which is received by us within 60 days after the end of the policy period;

        **(2)** Promptly pays an additional premium when due; and

        **(3)** Purchases the available Extended Reporting Period Endorsement afforded by the underlying **Employee Benefits Liability** policy.

    **c.** The Extended Reporting Period Endorsement does not reinstate or increase our limit of insurance or extend the policy period; and

    **d.** The Extended Reporting Period Endorsement will amend the **Other Insurance** policy condition to the extent that such coverage provided will be excess over any valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, whose policy begins or continues after the endorsement takes effect.

PI-CXL-029 (09/12)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY FOLLOW FORM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**SECTION I – COVERAGES, 1.  Insuring Agreement** is amended to include the following:

This policy is intended to include Employee Benefits Liability coverage.

The Employee Benefits Liability insurance provided will follow the same provisions, exclusions and limitations that are contained in the "applicable underlying insurance" shown in the Schedule of Underlying Insurance unless otherwise directed by an endorsement to this policy.

To the extent such provisions differ or conflict, the provisions of this policy will apply.  However, the coverage provided under this policy will not be broader than that provided by the applicable "underlying insurance."

Any per location or per project aggregate limit of insurance that is extended in the applicable "underlying insurance" shown in the Schedule of Underlying Insurance will not apply to the coverage provided by this endorsement.

PI-CXL-032 (09/12)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**A.  SECTION I – COVERAGES**, **3. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to:

**Fungi or Bacteria**

**1.** "Bodily injury,"  "property damage," or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi"  or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**2.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.  SECTION V – DEFINITIONS** is amended to include the following additional definition:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Includes copyrighted material of the Insurance Services Office Inc., with permission.

PI-CXL-039 (09/12)

## <u>THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.</u>

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Includes copyright material of the Insurance Services Office Inc., used with its permission.

PI-CXL-CA 1 (09/12)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

**A.** Paragraph **3. Cancellation** of **SECTION IV – CONDITIONS** is replaced by the following:

**3. Cancellation**

**a. All Policies in Effect for 60 Days or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for:

**(a)** Nonpayment of premium; or

**(b)** Discovery of fraud by:

**(i)** Any insured or his or her representative in obtaining this insurance; or

**(ii)** You or your representative in pursuing a claim under this policy.

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b. All Policies in Effect for More than 60 Days**

**(1)** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(a)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(b)** Discovery of fraud or material misrepresentation by:

**(i)** Any insured or his or her representative in obtaining this insurance; or

**(ii)** You or your representative in pursuing a claim under this policy.

**(c)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

**(d)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

**(e)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(f)** A determination by the Commissioner of Insurance that the:

**(i)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(ii)** Continuation of the policy coverage would:

**i.** Place us in violation of California law or the laws of the state where we are domiciled; or

**ii.** Threaten our solvency.

**(g)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**(2)** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(b)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **b.(1)a.**

**B.** The following is added to **SECTION IV – CONDITIONS:**

**NONRENEWAL**

**1.** Subject to the provisions of Paragraphs **B.2.** below, if we elect not to renew this policy, we will mail or deliver written notice, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**2.** We are not required to send notice of nonrenewal in the following situations:

**a.** If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **B.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-CA 1 (09/12)

**d.**  If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.**  If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.**  If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **B.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-CXL-CA 2 (09/12)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY INSURANCE POLICY**

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

Includes copyrighted material of Insurance Services Office, Inc., with permission.

PI-UMTER-DN (10/12)



One Bala Plaza, Suite 100
Bala Cynwyd, Pennsylvania 19004
610.617.7900 Fax 610.617.7940
PHLY.com

## PHILADELPHIA INSURANCE COMPANIES
## DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE REJECTION OPTION

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have the right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of Treasury—in concurrence with the Secretary of State, and the Attorney General of the United States–to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY PAYS 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. INFORMATION FOR THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS THE $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Your attached proposal (or policy) includes a charge for terrorism. We will issue (or have issued) your policy with terrorism coverage unless you decline by placing an "X" in the box below.**

**NOTE 1:** If "included" is shown on your proposal (or policy) for terrorism you WILL NOT have the option to reject the coverage.

**NOTE 2:** You will want to check with entities that have an interest in your organization as they may require that you maintain terrorism coverage (e.g. mortgagees).

**EXCEPTION:** If you have property coverage on your policy, the following Standard Fire Policy states do not permit an Insured to reject fire ensuing from terrorism:  CA, CT, GA, HI, IA, IL, ME, MA, MO, NJ, NY, NC, OR, RI, VA, WA, WV, WI. Therefore, if you are domiciled in the above states and reject terrorism coverage, you will still be charged for fire ensuing from terrorism as separately designated on your proposal.

PI-UMTER-DN (10/12)

| | **I decline to purchase terrorism coverage. I understand that I will have no coverage for losses arising from 'certified' acts of terrorism, EXCEPT as noted above.** |
|---|---|

**You, as the Insured, have 30 days after receipt of this notice to consider the selection/rejection of "terrorism" coverage.  After this 30 day period, any request for selection or rejection of terrorism coverage WILL NOT be honored.**

**REQUIRED IN GA – LIMITATION ON PAYMENT OF TERRORISM LOSSES** (applies to policies which cover terrorism losses insured under the federal program, including those which only cover fire losses)

The provisions of the Terrorism Risk Insurance Act, as amended, can limit our maximum liability for payment of losses from certified acts of terrorism.  That determination will be based on a formula set forth in the law involving the national total of federally insured terrorism losses in an annual period and individual insurer participation in payment of such losses.  If one or more certified acts of terrorism in an annual period causes the maximum liability for payment of losses from certified acts of terrorism to be reached, and we have satisfied our required level of payments under the law, then we will not pay for the portion of such losses above that maximum.  However, that is subject to possible change at that time, as Congress may, under the Act, determine that payments above the cap will be made.

NAMED INSURED:  <u>**Silver Lakes Association**</u> _____

INSURED'S SIGNATURE: _____

DATE: _____

**EXHIBIT E**

FORMS SCHEDULE

Named Insured:  **AB CAPITAL HOLDINGS LLC**

Policy No:  023058099                                      Effective Date: **11/01/2013**

| Form Number | Edition Date | Endorsement No | Title |
|---|---|---|---|
| LX8386 | 04/08 | | FF XS LIABILITY DEC |
| LX8387 | 04/08 | | FF XS LIABILITY TXT |
| LX7150 | 05/87 | 001 | RADIOACTIVE MATTER EXCLUSION |
| LX0404 | | 002 | ADD EXCL AND COV TERRITORY PROV ENDT |
| LX0404 | | 003 | DEL OF UNIMPAIRED UL LIMITS OF INS ENDT |
| LX0404 | | 004 | DEF OF UL LIMITS AMENDATORY ENDT |
| LX0404 | 01/05 | 005 | LIMITS OF INS AMDT ENDNT (Financial Loss) |
| LX9827 | 01/05 | 006 | TERRORISM PREMIUM CHARGE ENDT |
| LX0082 | 03/86 | 007 | MINIMUM EARNED PREMIUM |
| LX8009 | 12/06 | 008 | SCHEDULE OF UNDERLYING INS. |
| LX0404 | | 009 | POLLUTION AMEDATORY |
| LX0404 | | 010 | CAN. CLAUSE AMDT PRO RATA CAN. ENDT |
| LX0404 | | 011 | AMDT OF CANCELATTION CLAUSE ENDT |
| LX8704 | 05/11 | 012 | PROF LIAB CRISIS RESP COV EXT ENDT (WITH CRISIS MGMT LOSS & CRISIS RESP COSTS) |

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from the Chartis companies. Chartis insurance Companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by Chartis insurance companies to brokers and independent agents in the United States by visiting our website at www.chartisinsurance.com/producercompensation or by calling 1-800-706-3102.

*Archive Copy*

*LEXINGTON* INSURANCE COMPANY

Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110

FOLLOW FORM EXCESS LIABILITY POLICY

DECLARATIONS
(OCCURRENCE VERSION)

Policy Number: **023058099**                    Renewal Of: **023058099**

Item 1.  Named Insured:  **AB CAPITAL HOLDINGS LLC**
         Address:        **EIGHT TOWER BRIDGE**
                         **161 WASHINGTON STREET, SUITE 600**
                         **CONSHOHOCKEN, PA 19428**

Item 2.  Policy Period:
         From: **11/01/2013**           To: **11/01/2014**
                         (At 12:01 A.M. Standard Time at the address of the named insured shown above.)

Item 3.  Limits of Insurance:

| | |
|---|---|
| General Aggregate Limit | $15,000,000 |
| Products-Completed Operations Aggregate Limit | $15,000,000 |
| Each Occurrence Limit | $15,000,000 |

Item 4.  Premium:

         Total Advance Premium:              $ ▮▮▮▮
         Annual Minimum Premium:             $ ▮▮▮▮
         Minimum Earned Premium at Inception: $ ▮▮▮▮

Item 5.  Audit Period:  **NA**

Item 6.  Followed Policy: See Schedule of Underlying Insurance

Item 7.  Our defense obligations only apply in excess of the applicable limits of insurance of the applicable **Underlying Policies**.

Item 8.  Endorsements:  See Attached Forms Schedule

By: _____
    **AUTHORIZED REPRESENTATIVE OR**
    **COUNTERSIGNATURE (in states where applicable)**

**Manuscript Form**

# LEXINGTON INSURANCE COMPANY

**Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103**

### FOLLOW FORM EXCESS LIABILITY POLICY
### (OCCURRENCE VERSION)

**NOTICE: LOSS AMOUNTS MAY INCLUDE DEFENSE EXPENSES, IF DEFENSE EXPENSES ARE INCLUDED WITHIN THE LIMITS OF INSURANCE OF THE FOLLOWED POLICY. IF DEFENSE EXPENSES ARE NOT INCLUDED WITHIN THE LIMITS OF INSURANCE IN THE FOLLOWED POLICY, THEN SUCH EXPENSES ARE IN ADDITION TO THE LIMITS OF INSURANCE OF THIS POLICY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words **you** and **your** refer to the Named Insured shown in Item 1. of the Declarations, and any other person or organization qualifying as a Named Insured under the **Followed Policy**.

The words **we**, **us** and **our** refer to the Company providing this insurance. Other words and phrases that appear in boldface type have special meaning. Refer to the DEFINITIONS Section.

## I. INSURING AGREEMENT

**A.** We will pay those sums that the **Insured** becomes legally obligated to pay as **Loss Amounts** in excess of the **Underlying Limits** by reason of exhaustion of such limits and to which this insurance applies, subject to:

**1.** the terms and conditions of the **Followed Policy**, and

**2.** the Limits of Insurance shown in the Declarations.

**B.** Except with regard to: (1) the premium, (2) limits of insurance, (3) our defense obligations, (4) any endorsement changing the terms or conditions of this policy, and (5) other terms or conditions of this policy inconsistent with the **Followed Policy**, the provisions of the **Followed Policy** are incorporated as part of this policy.

## II. DEFENSE OBLIGATIONS

### A. WITHIN THE UNDERLYING LIMITS

We shall have the right, at our own expense, but not the obligation to associate with the **Insured** in the defense, negotiation, and settlement of any **Claim** that might result in our obligation to pay any amount of such **Claim** under this policy. The **Insured** shall defend and contest any such **Claim**. The **Insured** shall give us full cooperation and such information as we may reasonably require.

### B. IN EXCESS OF THE UNDERLYING LIMITS

We shall have the right and duty to defend any **Claim** seeking damages to which this insurance applies upon the exhaustion of the **Underlying Limits**. We will have no duty to defend the **Insured** against any **Claim** seeking damages to which this insurance does not apply. When we assume the defense of any **Claim** against the **Insured** that seeks damages to which this insurance applies, we will, subject to the limits of insurance, pay **Defense Expenses** as defined in the **Followed Policy**. The **Insured** shall give us full cooperation and such information as we may reasonably require.

## III. LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in Item 3. of the Declarations and the rules below state the most we will pay for all **Loss Amounts** under this policy regardless of the number of:

**1.** **Insureds**;

**2.** **Claims** made or suits brought; or

    **3.** Persons or organizations making **Claims** or bringing suits.

**B.**  The General Aggregate Limit is the most we will pay for all **Loss Amounts** under this policy, except for:

    **1.** **Loss Amounts** included within the products-completed operations hazard; and

    **2.** **Loss Amounts** because of **Bodily Injury** or **Property Damage** arising out of automobile liability for which there is no Aggregate Limit of Insurance.

**C.**  The Products-Completed Operations Aggregate Limit is the most we will pay for all **Loss Amounts** included in the products-completed operations hazard.

**D.**  Subject to Paragraph **B.** or **C.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all **Loss Amounts** arising out of any one **occurrence** or offense.

**E.**  **Loss Amounts** may include **Defense Expenses**, if **Defense Expenses** are included within the limits of insurance of the **Followed Policy**. If **Defense Expenses** are not included in the **Followed Policy**, then such expenses are in addition to the limits of insurance of this policy.

## IV. EXCLUSIONS

This insurance does not apply to:

**A. Pollution**

    **1.** Any **Claim** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

    **2.** Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

    **3.** Any loss, cost or expense arising out of any **Claim** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

With respect to Paragraph **1.** above, we will apply any exception to such exclusion provided by the **Followed Policy**.

**B. Radioactive Material**

Any liability arising out of any radioactive matter, whether or not naturally occurring.

**C. Asbestos**

Any liability arising out of asbestos or asbestos-containing materials.

## V. DEFINITIONS - Any term not defined is this Section V. or in the preamble to this policy shall have the meaning assigned to such term in the **Followed Policy**.

**A.**  **Bodily Injury**, if not defined in the **Followed Policy**, means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**B.**  **Claim**, if not defined in the **Followed Policy**, means a written demand for monetary damages, including service of suit or institution of arbitration proceedings against the **Insured**. If defined in the **Followed Policy**, **Claim** has the same meaning as stated in the **Followed Policy**.

**C.**  **Defense Expenses** means **Defense Expenses** or Defense Costs as defined in the **Followed Policy**. However, if **Defense Expenses** or Defense Costs are not defined in the **Followed Policy** then **Defense Expenses** means the cost incurred in connection with the investigation and/or defense of any **Claim** including, but not limited to, legal fees and other defense expenses. Defense Expenses also include any expenses in the **Followed Policy** which are referred to as Supplementary Payments, Additional Payments, or referred to by a similar term.

D.  **Followed Policy** means the policy shown in Item 6. of the Declarations.

E.  **Insured** shall have the same meaning in this policy as is attributed to it in the **Followed Policy**.

F.  **Loss Amounts** means damages and **Defense Expenses**, if **Defense Expenses** are included within the limit of insurance of the **Followed Policy**. Otherwise, **Loss Amounts** means damages only.

G.  **Pollutants**, if not defined in the **Followed Policy**, means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

H.  **Property Damage**, if not defined in the **Followed Policy**, means:

   1.  Physical injury to tangible property, including all resulting loss of use of that property; or

   2.  Loss of use of tangible property that is not physically injured.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

I.  **Underlying Limits** means the sum of:

   1.  The Aggregate Limits of Insurance of all **Underlying Policies**,

   2.  All retentions or self-insured retentions applicable to such **Underlying Policies**, and

   3.  Other insurance (including any self-insurance retentions) applicable to any **Claim** that is covered by this policy.

J.  **Underlying Policies** means any underlying policies, including the **Followed Policy**.

## VI.  CONDITIONS

### A.  MAINTENANCE OF UNDERLYING INSURANCE

It is a condition of this policy that the **Underlying Policies** shall be maintained in full force and effect. Failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, we shall be liable only to the extent that we would have been liable had you complied with this condition.

### B.  UNIMPAIRED UNDERLYING LIMITS OF INSURANCE

You warrant that **Underlying Limits** of the **Underlying Policies** shall be unimpaired as of the inception date of this policy. In event such **Underlying Limits** are impaired as of the inception date of this policy, this policy shall apply as if such **Underlying Limits** were unimpaired. In the event of non-concurrent policy periods between this policy and **Underlying Policies**, only occurrences or **Claims** that would be covered during the policy period of this policy shall be considered in determining the extent of any reduction or exhaustion of the **Underlying Limits**, and you shall retain liability for any resulting gap in coverage.

### C.  CANCELLATION

   1.  The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   2.  We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

      i   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

ii    30 days  before the  effective date  of cancellation if we  cancel for any other  reason.

**3.**  We will  mail  or deliver  our notice to the  First  Named  Insured's last  mailing  address known  to us.

**4.**  Notice of cancellation will state the effective date  of cancellation. The  policy period will end on  that  date.

**5.**  If this policy is canceled, we will send  the  First  Named  Insured any  premium refund due. If  we  cancel,  the  refund  will  be  pro rata.  Subject to the  Minimum  Earned  Premium at Inception  shown  in Item 4. of  the  Declarations, if  the  First  Named  Insured  cancels, earned  premium will  be  calculated short-rate. The cancellation will be  effective even if we have not  made or offered a refund.

**6.**  If notice is mailed, proof of mailing will  be  sufficient proof of notice.

**D.  SERVICE OF SUIT**

It is agreed that  in the  event  of our failure  to pay any amount claimed  to be  due hereunder, we, at the  request  of the **Insured,** will  submit jurisdiction of a court  of  competent jurisdiction within the  United  States. Nothing in this  condition constitutes or should be  understood to constitute  a  waiver  of  our  rights  to  commence  an  action  in  any  court  of  competent jurisdiction  in the  United  States, to remove  an action to a United  States  District  Court  or to seek  a  transfer  of  a case  to another court  as permitted by the  laws  of the  United  States  or of any state  in the  United  States. It is further agreed that  service  of process  may be  made upon  Counsel, Legal  Department,  ,  100  Summer Street, Boston, MA  02110, or his  or her representative, and that  in any suit  instituted against us**,** upon this  policy, we will  abide by the  final  decision of such  court  or of an appellate court  in the  event  of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes  provision therefore, we  hereby  designate  the  Superintendent,  Commissioner, Director of  Insurance, or other officer  specified for  that  purpose in the  statute, or his or  her successor or successors in office as our true  and  lawful attorney upon  whom may be served any lawful process  in any action, suit  or proceeding instituted by or on behalf of the **Insured** or any  beneficiary hereunder arising  out  of this  contract  of insurance, and hereby designate  the  Counsel,  Legal  Department, Lexington Insurance Company, 100    Summer Street, Boston, MA  02110, as the  person  to  whom the  said officer is authorized to mail such  process  or a true  copy  thereof.

IN WITNESS  WHEREOF, the  Insurance Company identified on the  Declarations has caused  this  policy to  be  signed  by its President, Secretary and a duly  authorized representative of the  Insurance Company.

Secretary

President

**ENDORSEMENT # 001**

**This endorsement, effective 12:01 A.M.** 11/01/2013

**Forms a part of policy No.:** 023058099

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON  INSURANCE COMPANY

**RADIOACTIVE MATTER EXCLUSION**

In consideration of the premium charged it is hereby understood and agreed that this policy
does not apply to:

"Bodily Injury" or "Property Damage" or "Professional Liability" arising from the actual, alleged
or threatened exposure of person(s) or property to any radioactive matter.  However, this
exclusion shall not apply to liability arising out of the actual or alleged detonation of bombs or
dirty bombs.

_____
**Authorized Representative OR
Countersignature (In States where applicable)**

LX7150 (05/87)

ENDORSEMENT # 002

**This endorsement, effective 12:01 A.M.** 11/01/2013

**Forms a part of policy No.:** 023058099

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON  INSURANCE COMPANY

ADDITIONAL EXCLUSIONS AND COVERAGE TERRITORY PROVISION

This endorsement modifies insurance provided under the following:

**FOLLOW FORM EXCESS LIABILITY POLICY**

1. Exclusions **D.** through **E.** are added to Section **IV. EXCLUSIONS** as follows:
   [This insurance does not apply to:]

   **D.    Silica**
   **1.    Bodily Injury**, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, and/or any other type of injury, loss, cost, damage, or expense sustained by any person for the real or alleged emergence, contraction, aggravation or exacerbation of any form of silicosis or any other disease of the human body caused by, arising out of, or resulting from the manufacture, mining, use, sale, removal, or distribution by any person or organization of silica, silica products, silica fibers or silica dust, or the exposure to silica, silica products, silica fibers or silica dust; or

   **2.    **Any obligation of the insured to defend and/or indemnify any party because of damages arising out of such **Bodily Injury**, sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, at any time caused by, arising out of, or resulting from the manufacture of, mining of, use of, sale of, removal of, distribution of, or exposure to silica, silica products, silica fibers or silica dust.

   However, this exclusion shall not apply to liability of or any **claim** made against the **Insured** for any sickness or disease or death resulting therefrom to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured**.

   **E.    Violation Of Statutes In Connection With Sending, Transmitting Or Communicating Any Material Or Information**
   Any **Claim** or suit alleging or asserting that any act or omission violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that includes, addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.

2. Condition **E.** is added to Section **VI. CONDITIONS** as follows:

   **F.    COVERAGE TERRITORY**

This policy applies to any **Claim** or suit brought within the coverage territory of the **Followed Policy**.

Notwithstanding the foregoing, payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

All other terms and conditions of the policy remain the same.

_____
**Authorized Representative OR**
**Countersignature(In states where applicable)**

**ENDORSEMENT #** 003

**This endorsement, effective 12:01 A.M.** 11/01/2013

**Forms a part of policy No.:** 023058099

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON  INSURANCE COMPANY

**DELETION OF UNIMPAIRED UNDERLYING LIMITS OF INSURANCE**

In consideration of the premium charged it is hereby understood and agreed that Section **VI.**, **CONDITIONS**, Item **B.**, **UNIMPAIRED UNDERLYING LIMITS OF INSURANCE** is hereby deleted in it's entirety.

All other terms and conditions of the policy remain the same.

_____
**Authorized Representative OR**
**Countersignature (In States where applicable)**

LEXDOC021
LX0404

ENDORSEMENT # 004

**This endorsement, effective 12:01 A.M.** 11/01/2013

**Forms a part of policy No.:** 023058099

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON  INSURANCE COMPANY

DEFINITION OF UNDERLYING LIMITS AMENDATORY ENDORSEMENT

In consideration of the premium charged it is hereby understood and agreed that Section **V.**,
**DEFINITIONS, Item I.,** is hereby deleted in it's entirety and replaced with the following:

I.      **Underlying Limits** means the sum of:
1.      The Limits of Insurance of all applicable **Underlying Policies**,
2.      All retentions or self-insured retentions applicable to such **Underlying Policies**, and
3.      Other insurance (including any self-insurance retentions) applicable to any **Claim** that is covered by this policy.

All other terms and conditions of the policy remain the same.

_____
**Authorized Representative OR
Countersignature (In States where app**

LEXDOC021
LX0404

ENDORSEMENT # 005

**This endorsement, effective 12:01 A.M.**  11/01/2013

**Forms a part of Policy No.:**  023058099

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:**  LEXINGTON INSURANCE COMPANY

**LIMITS OF INSURANCE AMENDATORY ENDORSEMENT**
**(Financial Loss)**

In consideration of the premium charged it is hereby understood and agreed that Section **III.**, **LIMITS OF INSURANCE** is hereby deleted in it's entirety and replaced with the following:

**III.    LIMITS OF INSURANCE**

**A.**    The Limits of Insurance shown in Item 3. of the Declarations and the rules below state the most we will pay for all **Loss Amounts** under this policy regardless of the number of:

   **1.**    **Insureds**;

   **2.**    **Claims** made or suits brought; or

   **3.**    Persons or organizations making **Claims** or bringing suits.

**B.**    The General Aggregate Limit is the most we will pay for all **Loss Amounts** under this policy, except for:

   **1.**    **Loss Amounts** included within the products-completed operations hazard; and

   **2.**    **Loss Amounts** because of **Bodily Injury** or **Property Damage** arising out of automobile liability for which there is no Aggregate Limit of Insurance.

**C.**    The Products-Completed Operations Aggregate Limit is the most we will pay for all **Loss Amounts** included in the products-completed operations hazard.

**D.**    Subject to Paragraph **B.** or **C.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all **Loss Amounts** arising out of any one **occurrence** or offense.

**E.**    **Loss Amounts** may include **Defense Expenses**, if **Defense Expenses** are included within the limits of insurance of the **Followed Policy**.  If **Defense Expenses** are not included in the **Followed Policy**, then such expenses are in addition to the limits of insurance of this policy.

**F.**    Notwithstanding any of the above, solely with regard to those sums that the **Insured** shall be legally obligated to pay as **Loss Amounts**:

(1) because of "professional liability" only; and
(2) which represent financial damages only; and
(3) which do not represent damages for or arising out of "bodily injury",
    "property damage" or "personal and advertising injury";

the Limits of Insurance listed in Item 3. of the Declarations is hereby amended
to          read:

Item 3. Limits of Insurance:

| General Aggregate Limit | $ 5,000,000 |
|---|---|
| Products Completed Operations Aggregate Limit | $ 5,000,000 |
| Each Occurrence Limit | $ 5,000,000 |

For the purpose of this endorsement, the terms "professional liability", "bodily injury",
"property damage" and "personal and advertising injury" shall be defined as they are
so     defined in the following **Followed Policy**:

Guard Secure Security Guard General and Professional Liability Insurance
Occurrence Form – OC-Guard LX9600 (08/04)

All other terms and conditions of the policy remain the same.

_____
                        **Authorized Representative OR
             Countersignature(In states where applicable)**

LEXDOC021
LX0404

**ENDORSEMENT # 006**

**This endorsement effective 12:01 AM:** 11/01/2013

**Forms a part of policy no.:** 023058099

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON  INSURANCE COMPANY

**TERRORISM PREMIUM CHARGE ENDORSEMENT**

The "Terrorism" charge is  $▮▮▮▮  and is included in the Policy Premium shown on the Declarations Page of this policy.

DEFINITION - The following definition of terrorism shall apply:

"Terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

    (1) A government;
    (2) The civilian population of a country, state or community; or
    (3) To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "Terrorism" includes a certified act of terrorism defined by Section 102. Definitions, of the Act and any revisions or amendments thereto.

All other terms and conditions of the policy are the same.

_Thomas McLaughlin_

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

LX9827 (01/05)

ENDORSEMENT #  007

**This endorsement effective 12:01 AM: 11/01/2013**

**Forms a part of policy no.:  023058099**

**Issued to: AB CAPITAL HOLDINGS LLC**

**By:** LEXINGTON INSURANCE COMPANY

**MINIMUM EARNED PREMIUM**

It is understood and agreed that in the event of cancellation of this policy by or at the direction of the Insured, the Company shall retain a Minimum Earned Premium of  $█████.

It is further agreed that the provision regarding cancellation by the Insured is amended to read:

> "If the Insured cancels this policy, earned premium will be computed in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium stated herein, whichever is greater".

_____

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXCME077(03/86)
LX0082

ENDORSEMENT # 008

# SCHEDULE OF UNDERLYING INSURANCE

Forms a part of Policy No.:   023058099
Issued to:     AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

---

Insurance Company:   Lexington Insurance Company
Policy Number: 023058098
Policy Period:              **From:** 11/01/13       **To:** 11/01/14
Limits:

| | |
|---|---|
| Each Occurrence: | $10,000,000 |
| General Aggregate: | $10,000,000 |
| Per Location Aggregate Limit (subject to policy aggregate) | $10,000,000 |
| Products/Completed Operations: | $10,000,000 |
| Personal and Advertising Injury Each Occurrence: | $10,000,000 |
| Employee Benefit Liability Each Claim: | $10,000,000 |
| Employee Benefit Liability Aggregate: | $10,000,000 |
| Employed Lawyers Liability Each Claim: | $10,000,000 |
| Self Insured Retention (per occurrence or wrongful act) | $750,000 |

Defense Expenses: (Limits of Liability)                     Inside X Outside
Defense Expenses: (Retention)                               X Inside Outside

---

**Commercial Auto Liability**                       X Occurrence        Claims Made
Company:           Arch Insurance Company
Policy Number:     11CAB4962605
Policy Period:     From:  11/01/13 To: 11/01/14
Minimum Applicable Limits:
    Each Accident:                      $2,000,000
    Defense Expenses:                         Inside  **X** Outside

---

**Commercial Auto Liability**                       X Occurrence        Claims Made
Company:           State National Insurance Company
Policy Number:     PAM11174
Policy Period:     From:  11/01/13 To: 11/01/14
Minimum Applicable Limits:
    Each Accident:                      $2,000,000
    Defense Expenses:                         Inside  **X** Outside

---

**Commercial Auto Liability**                       X Occurrence        Claims Made
Company:           Arch Insurance Company
Policy Number:     11CAB4962605
Policy Period:     From:  11/01/13 To: 11/01/14
Minimum Applicable Limits:
    Each Accident:                      $2,000,000
    Defense Expenses:                         Inside  **X** Outside

---

**Employers' Liability**                            X Occurrence        Claims Made
Company:           Arch Indemnity Insurance Company
Policy Number:     14WCI4992500
Policy Period:     From:  11/01/13 To: 11/01/14
Minimum Applicable Limits:
    Bodily Injury by accident:          $1,000,000        Each Accident
    Bodily Injury by disease            $1,000,000        Each Employee
    Bodily Injury by disease            $1,000,000        Policy Aggregate
    Defense Expenses:                         Inside  **X** Outside

---

LX8009 (12/06)                                                          Page 1 of 2

**Employers' Liability**                                        X Occurrence            Claims Made

Company:          Arch Insurance Company
Policy Number:    11WCI4962805
Policy Period:    From:  11/01/13 To: 11/01/14
Minimum Applicable Limits:

      Bodily Injury by accident:                     $1,000,000        Each Accident
      Bodily Injury by disease                       $1,000,000        Each Employee
      Bodily Injury by disease                       $1,000,000        Policy Aggregate
      Defense Expenses:                                 Inside  **X** Outside

ENDORSEMENT # 009

**This endorsement, effective 12:01 A.M.** 11/01/2013

**Forms a part of Policy No.:** 023058099

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**POLLUTION EXCLUSION AMENDATORY**

This endorsement modifies insurance provided under the following:

**FOLLOW FORM EXCESS LIABILITY POLICY**

**1.** Exclusion **A.** of Section **IV. EXCLUSIONS** is deleted in its entirety:

[This insurance does not apply to:]

**A. Pollution**

**1.** Any **Claim** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

**2.** Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

**3.** Any loss, cost or expense arising out of any **Claim** by or on behalf of an governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

With respect to Paragraph 1. above, we will not apply such exclusion if coverage is provided by the Followed Policy.

All other terms and conditions of the policy remain the same.

_____
**Authorized Representative OR
Countersignature(In states where applicable)**

LEXDOC021
LX0404

ENDORSEMENT # 010

**This endorsement, effective 12:01 A.M.**  11/01/2013

**Forms a part of policy No.:**  023058099

**Issued to:**  AB CAPITAL HOLDINGS LLC

**By:**  LEXINGTON  INSURANCE COMPANY

## CANCELLATION CLAUSE AMENDMENT
## PRO RATA CANCELLATION ENDORSEMENT

This endorsement modifies insurance provided by the policy:

The Cancellation Provision, Cancellation Condition, or Cancellation Clause, whichever is applicable, is amended by adding the following paragraph to the end thereof:

Notwithstanding any other terms or conditions of this policy to the contrary, if this policy is canceled by the **First Named Insured** for any reason, then the **Company** shall return the unearned pro rata proportion of the premium as of the effective date of cancellation and shall waive any minimum earned premium requirement specified herein.

The following definitions apply to this endorsement:

1.    **Company** means the insurer as shown in the header on the Declarations page of this policy.

2.    **First Named Insured** means the first Named Insured as shown on the Declarations page of this policy.

All other terms and conditions of the policy remain the same.

_____
**Authorized Representative OR
Countersignature(In states where applicable)**

ENDORSEMENT # 011

**This endorsement, effective 12:01 A.M.**  11/01/2013

**Forms a part of policy No.:**  023058099

**Issued to:**  AB CAPITAL HOLDINGS LLC

**By:**  LEXINGTON  INSURANCE COMPANY

**AMENDMENT OF CANCELATION CLAUSE ENDORSEMENT**

Section IV – Conditions – 12 Cancellation, is deleted in its entirety and replaced with the following:

1.    The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.    We may cancel this policy by mailing or delivering to the first Named Insured, all additional named insured's, and all certificate holders written notice of cancellation at least:

a.  10 days before the effective daet of cancellation if we cancel for nonpayment of premium; or

b.  90 days before the effective date of cancellation if we cancel for any other reason.

It is further understood that ninety (90) days will be given for material change.

3.    We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.    Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5.    If this policy is canceled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, earned premium will be calculated in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium at inception of the policy shown in of the Declarations, which ever is greater. The cancellation will be effective even if we have not made or offered a refund.

LEXDOC021
LX0404

6.      If notice is mailed, proof of mailing will be sufficient proof of notice.

7.      If we decide to non-renew this policy we will provide the first Named Insured with 90-days written notice.

8.      It is further agreed that notice of cancellation or non-renewal will be given, in writing, to the Risk Management Department.


All other terms and conditions of the policy remain the same.

_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

ENDORSEMENT # 012

**This endorsement, effective 12:01 A.M.** 11/01/2013

**Forms a part of policy No.:** 023058099

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON  INSURANCE COMPANY

**PROFESSIONAL LIABILITY
CRISIS RESPONSE COVERAGE EXTENSION ENDORSEMENT
(WITH CRISIS MANAGEMENT LOSS AND CRISIS RESPONSE COSTS)**

This endorsement modifies insurance provided by the policy:

- **CRISIS RESPONSE NOTIFICATION TELEPHONE NUMBER:  877-743-7669**

**THIS ENDORSEMENT EXTENDS COVERAGE TO PROVIDE FOR CRISIS RESPONSE COSTS AND CRISIS MANAGEMENT LOSS ARISING OUT OF A CRISIS EVENT BECAUSE OF A WRONGFUL ACT TO WHICH INSURANCE APPLIES.  THE LIMITS OF INSURANCE PROVIDED FOR SUCH COVERAGE ARE IN ADDITION TO THE LIMITS OF INSURANCE PROVIDED IN THE DECLARATIONS OF THIS POLICY.**

**SCHEDULE**

| Crisis Response Coverage Extension | Limits of Insurance | |
|---|---|---|
| Crisis Response Aggregate Limit | $300,000 | |
| Each Crisis Response Costs Limit | $250,000 | Each **Crisis Event** |
| Each Crisis Management Loss Limit | $50,000 | Each **Crisis Event** |

Notwithstanding any provisions to the contrary in the policy to which this endorsement is attached, including the attachment point of any excess professional liability policy, if applicable, subject to the Limits of Insurance as shown in the above Schedule and in accordance with the terms and conditions set forth in this endorsement, this policy is extended to provide **crisis response costs** and **crisis management loss** arising out of a **crisis event** because of a **wrongful act** to which insurance applies.

**SECTION I. – CRISIS RESPONSE COVERAGE EXTENSION**

**A.** We will reimburse you or pay on your behalf reasonable and necessary **crisis response costs** and/or **crisis management loss** arising out of a **crisis event** because of a **wrongful act** to which insurance applies.  The amount we will reimburse you or pay on your behalf for such **crisis response costs** and/or **crisis management loss** is limited as described in **SECTION III – CRISIS RESPONSE LIMITS OF INSURANCE**.  No self-insured retention or deductible shall apply to this coverage extension endorsement.

**B.** We will reimburse you or pay on your behalf **crisis response costs** and/or **crisis management loss** arising out of a **crisis event** only if all of the following conditions are met:

    **1.** The **crisis event** first occurs during the policy period or extended reporting period, if applicable;

    **2.** The **wrongful act** (or **interrelated wrongful act**, if applicable) that gives rise to the **crisis event** is covered under the policy to which this endorsement is attached;

**3.** If this endorsement is attached to and made part of a claims made policy or claims made and reported policy:

    **a.** A **claim** because of such **wrongful act** (or **interrelated wrongful act**, if applicable) must be made against the **insured** during the policy period or extended reporting period, if applicable; or

    **b.** If a **claim** has not been made, senior management must reasonably believe that a **claim** because of such **wrongful act** (or **interrelated wrongful act**, if applicable) will be made against an **insured** during the policy period or extended reporting period, if applicable; and

**4.** Such **crisis response costs** and/or **crisis management loss** are incurred within thirty (30) days after the commencement date of the **crisis event**. The end of the policy period will not cut short this thirty (30) day period.


## SECTION II. – EXCLUSIONS

All exclusions of the policy apply to this endorsement, including any exclusion which applies to workers compensation or employer's liability. The following additional exclusion applicable to this endorsement supersede any similar exclusions in the policy.

This insurance does not apply to:

    **Newly acquired or merged entities**

    **Crisis response costs** or **crisis management loss** resulting from **wrongful act** that occurred prior to the date you acquired or merged with any other entity.


## SECTION III. – CRISIS RESPONSE LIMITS OF INSURANCE

**A.** The Schedule above and the rules below establish the most we will reimburse or pay on your behalf for **crisis response costs** and **crisis management loss** regardless of the number of **insureds**, **crisis events**, or **affected persons**.

**B.** The Crisis Response Aggregate Limit is the most we will reimburse or pay on your behalf for the sum of all **crisis response costs** and **crisis management loss** under this endorsement.

**C.** Subject to Paragraph **B.** above, the Each Crisis Response Costs Limit is the most we will reimburse or pay on your behalf for all **crisis response costs** arising out of any one **crisis event**.

**D.** Subject to Paragraph **B.** above, the Crisis Management Loss Limit is the most we will reimburse or pay on your behalf for all **crisis management loss** arising out of any one **crisis event**.

**E.** All **crisis events** arising out of the same **wrongful act** or related or interrelated **wrongful acts** will be deemed one **crisis event** and shall be deemed to have occurred when the first of such **crisis events** commences to occur.


## SECTION IV. – DEFINITIONS

The definitions of the policy apply to this endorsement. However, the following additional definitions applicable to this endorsement supersede any similar definitions in the policy.

You and your refer to the Named Insured and we, us and our refer to the Company providing this insurance. Other words and phrases that appear in boldface type have special meaning as follows:

A. **Affected persons** means those individuals who suffer direct **bodily injury** or **property damage**, or directly experience **imminent injury**, including such individuals immediate family members.

B. **Bodily injury** means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

C. **Claim** means a claim as defined by the policy to which endorsement is attached.

D. **Crisis event** means:

   1. Significant adverse regional or national news media coverage because of a **wrongful act** or related or interrelated **wrongful acts**; or

   2. **Bodily injury** sustained by an **affected person(s)**, **property damage** to property of an **affected person(s)**, or the direct experience of **imminent injury** by an **affected person(s)** because of a **wrongful act** or related or interrelated **wrongful acts** which results in significant adverse regional or national news media coverage. The **crisis event** as set forth in this Definition **D.2.** will be deemed to occur when the **bodily injury**, **property damage** or **imminent injury** first commences with respect to the first **affected person**.

E. **Crisis management firm** means a public relations firm or crisis management firm, assigned or approved by us in writing, that is hired by you to perform services of the type covered under **crisis management loss** in connection with a **crisis event**.

F. **Crisis management loss** means reasonable and necessary fees and expenses charged by a **crisis management firm** or your employees in providing public relations and media management services for the purpose of maintaining and restoring public confidence in you. These expenses may include printing, advertising, or mailing of materials to manage reputational risk. This does not include the salaries of your employees. **Crisis management loss** shall not include **crisis response costs**.

G. **Crisis response costs** means:

   1. reasonable and necessary **emergency transport expenses**, **emergency psychology expenses**, funeral expenses, travel expenses, and temporary living expenses incurred by you to provide relief and/or support to **affected persons**, and

   2. expenses incurred by you to secure the scene of a **crisis event** (as defined in Definition **D.2.**).

   **Crisis response costs** shall not include **crisis management loss**.

H. **Emergency transport expenses** means reasonable and necessary emergency transport expenses, occurring within 24-hours after a **crisis event** (as defined in Definition **D.2.**), to transport an **affected person** sustaining **bodily injury** in such **crisis event** to a medical treatment facility.

I. **Emergency psychology expenses** means reasonable and necessary expenses for psychology or counseling services provided to **affected persons** and incurred within the first fourteen (14) days after a **crisis event** (as defined in Definition **D.2.**). This does not include the costs or expenses of any medications or hospitalizations. Such psychology or counseling services must be approved by the **crisis management firm**.

J. **Imminent injury** means the actual and immediate threat of **bodily injury** or **property damage**.

K. **Insured** means insured as defined by the policy to which endorsement is attached.

L. **Property damage** means:

1.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the **crisis event** (as defined in Definition **D.2.**) that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

M.  **Wrongful act** or **Interrelated wrongful act** means a wrongful act, interrelated wrongful act, breach of professional duty, media wrongful act and/or technology wrongful act, whichever is/are applicable, as defined by the policy to which endorsement is attached.


**SECTION V. – CONDITIONS**

The conditions of the policy apply to this endorsement.  However, the following conditions applicable to this endorsement supersede any similar conditions of the policy to the contrary.

A.  **Insured's Duties in the Event of a Crisis Event**

1.  You must see to it that we are notified by telephone within twenty-four (24) hours of a **crisis event** which may result in **crisis response costs** or **crisis management loss**.  The call must be made to 877-743-7669.  If necessary, we will provide you with an approved **crisis management firm** unless we agree to accept a **crisis management firm** that you have selected.

2.  Thereafter, you must provide written notice, as soon as practicable.  To the extent possible, this written notice should include:

    a.  How, when and where the **crisis event** took place;

    b.  The names and addresses of any **affected persons** and witnesses; and

    c.  The nature and location of any injury or damage arising out of the **crisis event**.

3.  If reimbursement is sought directly by you, you must submit a claim for reimbursement of **crisis response costs** and **crisis management loss** within ninety (90) days after incurring such **crisis response costs** or **crisis management loss**.  Such claim(s) must include invoices and/or receipts supporting such **crisis response costs** or **crisis management loss** for each and every expense in excess of fifty (50) dollars.

4.  Written notice and claim submission as required in Paragraphs **1.** and **2.** of this section, respectively, shall be mailed or delivered to:

    Lexington Insurance Company
    Professional Liability Claim Department
    100 Summer Street
    Boston, MA  02110

B.  **Anti-Stacking Provision**

If **crisis response costs** or **crisis management loss** provided by this coverage extension endorsement are also provided by any other insurance issued to you by us or any of our affiliated

companies (whether or not such costs or loss are referred to using these same terms), the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement.  This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically intended to apply as excess insurance over this coverage extension endorsement.

All other terms and conditions of the policy remain the same.

_____
**Authorized Representative OR**
**Countersignature(In states where applicable)**

ENDORSEMENT # 013

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058099

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## INDUSTRIAL AID AIRCRAFT LIMITED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

### FOLLOW FORM EXCESS LIABILITY POLICY (OCCURRENCE VERSION)

### SCHEDULE

Industrial Aid Aircraft Retained Amount:    **$300,000,000** Each and Every Occurrence

(As respects claims and **Suits** seeking damages for **Bodily Injury** or **Property Damage** arising out of your interest in the ownership, maintenance or use of any **Industrial Aid Aircraft** owned or operated by or rented or loaned to any **Insured**.  Use includes operation and loading and unloading).

**NOTICE:  THIS INDUSTRIAL AID AIRCRAFT RETAINED AMOUNT CAN ONLY BE REDUCED BY THE PAYMENT OF DAMAGES TO WHICH THIS INSURANCE APPLIES.**

---

1.  Paragraph **A.** of Section **I. INSURING AGREEMENT** is deleted in its entirety and replaced with the following:

    **A.** We will pay those sums that the **Insured** becomes legally obligated to pay as **Loss Amounts** in excess of the **Underlying Limits** by reason of exhaustion of such limits and to which this insurance applies, subject to:

    **1.** the terms and conditions of the **Followed Policy**, and

    **2.** the Limits of Insurance shown in the Declarations,

    except with respect to coverage provided for **Industrial Aid Aircraft** in accordance with Subparagraph **C.** below.  The General Aggregate Limit and Each Occurrence Limit apply to damages for which coverage is provided under Subparagraph **C.** and are not reinstated or increased.

2.  Paragraph **C.** is added to Section **I. INSURING AGREEMENT** as follows:

    **C.** We will pay on behalf of the **Insured** those sums in excess of the **Industrial Aid Aircraft Retained Amount** that the **Insured** becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage** to which this insurance applies.  The amount we will pay is limited as described in **SECTION III - LIMITS OF INSURANCE**.

**3.** *With respect to coverage provided by this endorsement only,* Section **II. DEFENSE OBLIGATIONS** is deleted in its entirety and replaced with the following:

### II. DEFENSE OBLIGATIONS

We will have right but *not* the duty to defend any **Claim** or suit against the **Insured**. We will, however, have the right to participate in the defense of any **Claim** or suit and the investigation of any **Claim** to which this insurance may apply.  If we exercise this right, we will do so at our own expense.

**4.** *With respect to coverage provided by this endorsement only*, the following is added to **SECTION III. LIMITS OF INSURANCE**:

In the event of any **Claim** caused by or arising out of any **Industrial Aid Aircraft**, our Limits of Insurance under this policy for liability arising out of your interest in such **Industrial Aid Aircraft** shall be limited to your percentage ownership interest in the **Industrial Aid Aircraft** multiplied by the total applicable Limits of Insurance afforded you by this policy.

Such percentage shall not be increased by the insolvency or bankruptcy of others which have an interest in the Industrial Aid **Aircraft.**

**5.** *With respect to coverage provided by this endorsement only,* the following Exclusion is added to Section **IV. EXCLUSIONS** as follows:

[This insurance does not apply to:]

**Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft owned or operated by or rented, leased or loaned to any **Insured**.  Use includes operation and loading or unloading.

However, this exclusion does not apply to an **Industrial Aid Aircraft**.  However, to the extent that coverage is provided through the application of this exception, a separate **Industrial Aid Aircraft Retained Amount** applies.

**6.** *With respect to coverage provided by this endorsement only,* Paragraphs **K.**, and **L.** are added to **Section V – DEFINITIONS** as follows:

**K.  Industrial Aid Aircraft** means a Flex Jet LLC aircraft in which you have an ownership interest with a maximum passenger capacity of twenty (20) persons (including crew) used solely for business travel of your employees and your non-fee paying passenger guests.

**L.  Industrial Aid Aircraft Retained Amount** means the Industrial Aid Aircraft Retained Amount shown in the Schedule of the "Industrial Aid Aircraft Limited Coverage Endorsement" applicable to each and every occurrence.  This **Industrial Aid Aircraft Retained Amount** can only be reduced by the payment of damages to which this insurance applies.

**7.** *With respect to coverage provided by this endorsement only,* Paragraph **E.** is added to Section **VI. CONDITIONS** as follows:

**E.** You shall immediately notify us in writing of any occurrence which may result in a **Claim** which:

**1.** Involves serious **Bodily Injury**, including but not limited to, burns, spinal cord injury, amputation, brain damage, loss of eyesight or hearing, a fatality, or any **Claim** which is

likely to exceed 50% of the **Industrial Aid Aircraft Retained Amount**, or for which a reserve is set at an amount greater than 50% of the **Industrial Aid Aircraft Retained Amount**; or

**2.** You receive notice of a suit in which the damage demand exceeds the **Industrial Aid Aircraft Retained Amount** or in which we are named as a defendant.

All other terms and conditions of the policy remain the same.

_Thomas McLaughlin_
_____
Authorized Representative

**ENDORSEMENT #** 014

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058099

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**AMENDMENT TO DEFINITION OF UNDERLYING LIMITS**

This endorsement modifies insurance provided under the following:

      FOLLOW FORM EXCESS LIABILITY POLICY

Paragraph **I.** of Section **V. DEFINITIONS** is deleted in its entirety and replaced with the following:

    **I.**    **Underlying Limits** means the sum of:

        **1.**    The applicable Limits of Insurance of the applicable **Underlying Policies**,

        **2.**    All retentions or self-insured retentions applicable to such **Underlying Policies**, and

        **3.**    Other insurance (including any self-insurance retentions) applicable to any **Claim** that is covered by this policy.

All other terms and conditions of the policy remain the same.

_Thomas McLaughlin_

_____

Authorized Representative

# FORMS SCHEDULE

**Named Insured:   AB CAPITAL  HOLDINGS  LLC**

**Policy  No:   023058098**                                              **Effective Date: 10/11/2013**

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| LX9599 | 08/04 | | OCC GUARD  SECURE/PROF LIAB |
| LX96OO | 08/04 | | OCC GUARD  SECURE/PROF LIAB |
| MANUSCRIPT | | 001 | ADDITIONAL  INSURED ENDORSEMENT |
| MANUSCRIPT | | 002 | ADDITIONAL  INSURED SUN CITY |
| MANUSCRIPT | | 003 | ADDITIONAL  INSURED LOS ANGELES |
| MANUSCRIPT | | 004 | ADDITIONAL INSURED – CONTROLLING |
| MANUSCRIPT | | 005 | AMENDMENT  OF WHO  IS AN  INSURED |
| MANUSCRIPT | | 006 | AMENDMENT  OF INSURED CONTRACT |
| MANUSCRIPT | | 007 | AMENDMENT  OF OTHER INSURANCE A&B |
| MANUSCRIPT | | 008 | BODILY INJURY  AMENDATORY |
| MANUSCRIPT | | 009 | AMENDMENT  TO EXCLUSION R END |
| MANUSCRIPT | | 010 | SUPPLEMENTARY PAYMENTS  END |
| MANUSCRIPT | | 011 | NOTICE OF CANCELLATION |
| MANUSCRIPT | | 012 | CANCELATION  CLAUSE END |
| MANUSCRIPT | | 013 | CONTRACTUAL  LIABILITY END |
| MANUSCRIPT | | 014 | CROSS LIABILITY  ENDORSEMENT |
| MANUSCRIPT | | 015 | DAMAGE  TO PROPERTY END |
| MANUSCRIPT | | 016 | DEFENSE COSTS IN  ADDITION |

| MANUSCRIPT | | 017 | DELETION OF EXCLUSION K END |
| MANUSCRIPT | | 018 | JONES LANG LASALLE END |
| MANUSCRIPT | | 019 | LEGAL ACTION ENDORSEMENT |
| MANUSCRIPT | | 020 | LIBERALIZATION ENDORSEMENT |
| MANUSCRIPT | | 021 | LIQUOR LIABILITY AMENDATORY |
| MANUSCRIPT | | 022 | NOTICE OF OCCURRENCE ENDORSEMENT |
| MANUSCRIPT | | 023 | POLLUTION EXCLUSION |
| MANUSCRIPT | | 024 | REMOVAL OF CONTRACTUAL LIAB END |
| MANUSCRIPT | | 025 | UNINTENTIONAL ACTS ENDORSEMENT |
| MANUSCRIPT | | 026 | WAIVER OF TRANSFER OF RIGHTS END |
| MANUSCRIPT | | 027 | WAIVER OF TRANSFER OF RECOVERY |
| MANUSCRIPT | | 028 | WORLD WIDE TERRITORY ENDORSEMENT |
| MANUSCRIPT | | 029 | EMPLOYMENT BENEFITS ENDORSEMENT |
| LX9827 | 01/05 | 030 | TERRORISM PREMIUM CHARGE |
| LX9837 | 01/05 | 031 | WAR EXCLUSION |
| LX8202 | 10/07 | 032 | COVERGE TERRITORY LIMITATION |
| MANUSCRIPT | | 033 | PROFESSIONAL SERVICES ENDORSEMENT |
| MANUSCRIPT | | 034 | WRONGFUL ACT ENDORSEMENT |
| MANUSCRIPT | | 035 | WATERCRAFT ENDORSEMENT |
| MANUSCRIPT | | 036 | ADDITONAL INSURED COMPLETE OPS |
| MANUSCRIPT | | 037 | KNOWLEDGE OF OCCURRENCE ENDORSEME |
| MANUSCRIPT | | 038 | LEASED WORKER ENDORSEMENT |
| MANUSCRIPT | | 039 | SIR ENDORSEMENT |
| MANUSCRIPT | | 040 | REMOVAL OF IP ENDORSEMENT |
| MANUSCRIPT | | 041 | AMENDMENT OF LIQUOR LIABILITY |

| MANUSCRIPT | | 042 | FIRE/SMOKE/EXPLOSION  ENDORSEMENT |
| MANUSCRIPT | | 043 | IN REM ENDORSEMENT |
| MANUSCRIPT | | 044 | NUCLEAR EXPLOSION ENDORSEMENT |
| MANUSCRIPT | | 045 | SMOKE EXPLOSION OR WATER DAMAGE |
| MANUSCRIPT | | 046 | CUT-THROUGH  ENDORSEMENT |
| MANUSCRIPT | | 047 | LOST KEY ENDORSEMENT |
| MANUSCRIPT | | 048 | ADDITIONAL INSURED MANAGERS |
| MANUSCRIPT | | 049 | ADDITIONAL INSURED LESSOR |
| MANUSCRIPT | | 050 | CANCELLATION  CLAUSE AMEND |
| MANUSCRIPT | | 051 | ADDITIONAL  INSURED - BLANKET |
| LX87O4 | 05/11 | 052 | CRISIS RESPONSE ENDORSEMENT |
| MANUSCRIPT | | 053 | ADDITIONAL  INSURED OWNERS |
| MANUSCRIPT | | 054 | ADDITONAL  INSURED - MAGUIRE PROPER |
| MANUSCRIPT | | 055 | ADDITION  INSURED MAGUIRE PROPERTIES |
| MANUSCRIPT | | 056 | ADDITIONAL  INSURED - DETROIT EDISON |
| MANUSCRIPT | | 057 | BODILY INJURY  AMENDATORY |
| MANUSCRIPT | | 058 | REDUCED SIR ENDORSEMENT (ORLANDO |
| MANUSCRIPT | | 059 | ADDITIONAL INSURED – JONES LASALLE |
| MANUSCRIPT | | 060 | BOATS ENDORSEMENT |
| MANUSCRIPT | | 061 | PORT AUTHORITY ENDORSEMENT |
| LX9493 | 02/04 | 062 | PER LOCATION AGGREGATE ($10M) |
| MANUSCRIPT | | 063 | NOTICE OF CANCELLATION – PORT AUTHORI |
| MANUSCRIPT | | 064 | WAIVER  OF TRANSFER OF RIGHTS END |
| MANUSCRIPT | | 066 | EMPLOYED LAWYER ENDORSEMENT |
| MANUSCRIPT | | 067 | ADDITIONAL  INSURED |

MANUSCRIPT                  068            ADDITIONAL  INSURED

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.

91222 (4/13)

**LEXINGTON INSURANCE COMPANY**
Administrative Offices: 100 Summer Street, Boston, Massachusetts 02110-2103
(hereinafter called the Company)

# GUARD SECURE <sup>SM</sup>
**Security Guard General and Professional Liability Insurance**

**Declarations**

THIS IS A OCCURRENCE POLICY. PLEASE READ THIS POLICY CAREFULLY

**Policy No.: 023058098**                                    **Renewal Of: 023058098**

**ITEM 1.    Named Insured: AB CAPITAL HOLDINGS LLC**

   Address:      **EIGHT TOWER BRIDGE**
                 **161 WASHINGTON STREET, SUITE 600**
                 **CONSHOHOCKEN, PA 19428**

**ITEM 2.    Policy Period: From: 11/01/2013          To: 11/01/2014**
            at 12:01 A.M. standard time at the address of the named Insured stated above.

**ITEM 3.    Limits of Insurance:**
            (includes **Claims Expenses**)

| | |
|---|---|
| **Each Occurrence, Wrongful Act or Offense Limit:** | $10,000,000 |
| **General Aggregate Limit:** | $10,000,000 |
| **Per Location Aggregate Limits (subject to policy aggregate)** | $10,000,000 |
| **Product Completed Operations** | $10,000,000 |
| **Personal & Advertising Injury each occurrence** | $10,000,000 |
| **Fire Damage (Any one Fire)** | $10,000,000 |
| **Employee Benefits Liability Each Claim** | $10,000,000 |
| **Employee Benefits Liability Aggregate** | $10,000,000 |
| **Employed Lawyers Liability Each Occurrence** | $10,000,000 |

**ITEM 4.    Deductible/Self-Insured Retention:**   Each Claim      $750,000
            (per occurrence or wrongful act.)

**ITEM 5.    Premium:**

| Estimated Exposure | Rating Base | Rate | Audit Period |
|---|---|---|---|
| **1,418,000,000** | **PER $1000 PAYROLL** | **FLAT** | **Not Subject to Audit** |

A.   Advance Premium                        $███████
B.   Annual Minimum Premium                 $███████
C.   Minimum Earned Premium At Inception    $██████

By acceptance of the policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreement and representation and that this policy embodies all agreements between the Insured and the Company or any of its representatives relating to this insurance.

_Thomas McLaughlin_
_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

OC-GUARD
LX9599 (08/04)

## LEXINGTON INSURANCE COMPANY

**Administrative Offices: 99 Summer Street, Boston, Massachusetts 02110**

# GUARDSECURE ®

## SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY INSURANCE OCCURRENCE FORM

NOTICE: THE LIMITS OF INSURANCE AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR "CLAIM EXPENSE". FURTHER, NOTE THAT AMOUNTS INCURRED FOR "CLAIM EXPENSE" SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

The words "we," "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II). Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION IV).

### SECTION I - COVERAGES

### COVERAGE A.  BODILY INJURY, PROPERTY DAMAGE AND PROFESSIONAL LIABILITY

1.  **Insuring Agreement.**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "professional liability" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "professional liability" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" or "wrongful act" and settle any claim or "suit" that may result. But:

        **(1)** The amount we will pay is limited as described in SECTION III - LIMITS OF INSURANCE and

        **(2)** "Claim expense" is subject to the LIMITS OF INSURANCE and not in addition thereto.

        **(3)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments, settlements or "claim expense" under Coverages A or B.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    b.  This insurance applies to "bodily injury", "property damage" and "professional liability" only if:

        **(1)** The ''bodily injury", "property damage" or "professional liability" is caused by an "occurrence" or a "wrongful act" that takes place in the "coverage territory"; and

        **(2)** The "bodily injury", "property damage" or "professional liability" occurs during the policy period.

        **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence", "wrongful act" or claim, knew that the "bodily injury", 'property damage" or "professional liability" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury", "property damage" or "professional liability" occurred, then any continuation, change or resumption of such "bodily injury", "property damage" or "professional liability" during or after the policy period will be deemed to have been known prior to the policy period.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

**c.** "Bodily injury", "property damage" or "professional liability" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence", "wrongful act" or claim, includes any continuation, change or resumption of that "bodily injury", "property damage" or "professional liability" after the end of the policy period.

**d.** "Bodily injury", "property damage" or "professional liability" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of SECTION II - WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence", "wrongful act" or claim:

    **(1)** Reports all, or any part, of the "bodily injury", "property damage", or "professional liability" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury", "property damage" or "professional liability"; or

    **(3)** Becomes aware by any other means that "bodily injury", "property damage" or "professional liability" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" or "professional liability" include damages claimed by any person or organization for care, loss of services, loss of consortium or death resulting at any time from the "bodily injury" or "professional liability".

**2. Exclusions.**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury", "property damage" or "professional liability" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "professional liability" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury", "property damage" or "professional liability" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** That the insured would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury", "property damage" or "professional liability" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury", "property damage" or "professional liability" provided:

        **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" "property damage" or "professional liability" for which any insured may be held liable by reason of:

    **(1)** Causing or contributing to the intoxication of any person;

    **(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    **(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.

**d.   Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e.   Employer's Liability**

**(1)** "Bodily injury" to an "employee" of the insured arising out of and in the course of:

   **(a)** Employment by the insured; or

   **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** Any claim or "suit" brought by the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

**f.   Pollution**

**(1)** "Bodily injury", "property damage" or "professional liability" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   **(a)** At or from any premises, site or location, which is or was at any time owned or occupied by, or rented or loaned to, any insured.

     **(i)** However, this subparagraph does not apply to "bodily injury" or "professional liability" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

     **(ii)** "Bodily injury", "property damage" or "professional liability" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, sight or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

     **(iii)** "Bodily injury", "property damage" or "professional liability" arising out of heat, smoke or fumes from a "hostile fire",

   **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   **(d)** At or from any premises, site or location, on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

**(i)** "Bodily injury", "property damage" or "professional liability" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury", "property damage" or "professional liability" arising out of the intentional discharge, disposal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury", "property damage" or "professional liability" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury", "property damage" or "professional liability" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effect of "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or "suit" by or on behalf a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" not otherwise excluded that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.  Aircraft, Auto or Watercraft**

"Bodily injury", "property damage" or "professional liability" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" or "wrongful act" which caused the "bodily injury", "property damage" or "professional liability" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

**(3)** Parking an "auto" on or on the ways next to premises you own or rent, provided the "auto" is not owned by or rented or loaned to any insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury", "property damage" or "professional liability" arising out of the operation of any of the equipment listed in paragraph **f. (2)** or **f. (3)** of the definition of "mobile equipment."

### h.  Mobile Equipment

"Bodily injury", "property damage" or "professional liability" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

### i.  War

"Bodily injury", "property damage" or "professional liability", however caused, arising directly or indirectly out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

This exclusion does not apply to a certified act of terrorism defined by Section 102. Definitions, of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

### j.  Damage to Property

"Property damage" or "professional liability" to:

**(1)** Property you own, rent or occupy, including any costs or expenses  incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance or such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" or "professional liability" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured; except that this exclusion shall not apply to "property damage" or "professional liability" arising out of your "wrongful act".

### k.  Products and Completed Operations Hazard

Damages within the "products and completed operations hazard".

### l.  Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

### m.  Fungus/Mold

"Bodily injury", "property damage" or "professional liability" or any other loss, cost or expense, including, but not limited to losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

**OC-GUARD**
**LX9600 (08/04)**    Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.
5

a. Any "fungus(i)", "molds(s)", mildew or yeast, or

b. Any "spore(s)" or toxins created or produced by or emanating from such fungus(i), "mold(s)", mildew or yeast, or

c. Any substance, vapor, gas, or other emission or organic or inorganic body substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or yeast, or

d. Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that "bodily injury", "property damage" or "professional liability", loss, cost or expense.

For the purpose of this exclusion, the following definitions are added to the Policy:

"Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts, and mushrooms.

"Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter of on living organisms, and fungi that produce molds.

"Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

**n.  Employment Related Practices**

Any claim alleging or asserting in any respect loss, injury, or damage (including consequential bodily injury) in connection with Wrongful Termination of an "employee" of the insured and/or Discrimination involving an "employee" of the insured and/or Sexual Harassment of an "employee" of the insured.

The following definitions apply to this exclusion:

"wrongful termination" means termination of an employment relationship in a manner which is against the law and wrongful, or in breach of an implied agreement to continue employment.

"discrimination" means termination of an employment relationship or a demotion, or a failure or refusal to hire or promote an individual because of race, color, religion, age, sex, disability, pregnancy or natural origin.

"sexual harassment" means unwelcome sexual advances and/or requests for sexual favors and/or other verbal or physical conduct of a sexual nature that (1) are made a condition of employment and/or (2) are used as a basis for employment decisions and/or (3) create a work environment that interferes with performance.

**o.  Asbestos**

(1) "Bodily injury" or "professional liability" in any way arising out of the use by any person or organization of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

(2) "Property damage" to real property arising out of the use by any person or organization of asbestos, asbestos products, asbestos fibers, asbestos dust, including without limitation the costs incurred with respect to the removal or abatement of asbestos, asbestos products, asbestos fibers or asbestos dust from or in such real property.

(3) Any obligation of the insured to indemnify any party because of damages arising out of such "property damage", "bodily injury", or "professional liability" sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury, at any time as a result of the manufacture of, mining of, use of, sale of, removal of, distribution of, or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

**p. Nuclear**

**(1)** "Bodily Injury", "Property Damage" or "Professional Liability":

**(a)** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any such policy but for its termination upon exhaustion of its limit of liability; or

**(b)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, of (ii) the insured is or had this policy not been issued would be, entitled to indemnify from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency there of with any person or organization.

**(2)** "Bodily injury", "property damage" or "professional liability" resulting from the "hazardous properties" of "nuclear material", if:

**(a)** The "nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom:

**(b)** The "nuclear material" is contained in "spent fuel" or "waste" at anytime possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the insured; or

**(c)** The "bodily injury", "property damage" or "professional liability" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility".

**(3)** "Bodily injury", "property damage" or "professional liability" resulting from the intentional or unintentional detonation of any nuclear bomb or nuclear device.

**(4)** As used in this exclusion, the following definitions apply;

**(a)** "Hazardous properties" include radioactive, toxic or explosive properties.

**(b)** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**(c)** "Source material", "special nuclear material" and "by-product material" have the meanings given them in Atomic Energy Act of 1954 or in any law amendatory thereof;

**(d)** "Spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a "nuclear reactor";

**(e)** "Waste" means any waste material (i) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (ii) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

**(f)** "Nuclear facility" means;

**(i)** Any "nuclear reactor";

**(ii)** Any equipment or device designed or used for (a) separating the isotopes or uranium or plutonium, (b) processing or utilizing "spent fuel", or (c) handling, processing or packaging "waste"

**(iii)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more that 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(iv)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal or "waste".

And includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**q.  Securities and Financial Interest**

Any claim alleging or asserting in any respect loss, injury or damage, in connection with the purchase or sale, the offer, solicitation, or advertising for the purchase or sale, or the depreciation or decline in price or value, of any security, debt, deposit, or financial interest or instrument.

**r.  Theft or Embezzlement**

Any "property damage" or "professional liability" arising out of a theft or embezzlement in which an insured or any "employee", "temporary employee" or "volunteer worker" is compliant.

## COVERAGE B.  PERSONAL AND ADVERTISING INJURY LIABILITY

**1.  Insuring Agreement.**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages and "claim expense" is limited as described in SECTION III - LIMITS OF INSURANCE and

**(2)** "Claim expense" is subject to the LIMITS OF INSURANCE and not in addition thereto;

**(3)** Our right and duty to defend end when we have used up the applicable LIMIT OF INSURANCE in the payment of judgments, settlements, or "claim expense" under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2.  Exclusions.**

This insurance does not apply to:

**a.  Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"

**b.  Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.  Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d.  Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e.  Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f.  Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g.  Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**h.  Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**i.  Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage  migration, release or escape of "pollutants" at any time.

**j.  Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants".

**k.  War**

"Bodily injury", "property damage" or "professional liability" arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war.  War includes civil war, insurrection, act of foreign enemy, civil commotion, military or usurped power, rebellion or revolution

**l.  Fungus/Mold**

"Personal and advertising injury" or any other loss, cost or expense, including, but not limited to losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

(1) Any "fungus(i)", "molds(s)", mildew or yeast, or

(2) Any "spore(s)" or toxins created or produced by or emanating from such fungus(i), "mold(s)", mildew or yeast, or

(3) Any substance, vapor, gas, or other emission or organic or inorganic body substance produced by or arising out of any "fungus(i)", "mold(s)",  mildew or yeast, or

(4) Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)",  mildew, yeast or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that "personal and advertising injury", loss, cost or expense.

For the purpose of this exclusion, the following definitions are added to the Policy:

"Fungus(i)" includes, but is not limited to, any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts, and mushrooms.

"Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

"Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)", mildew, plants, organisms or microorganisms.

**m. Securities And Financial Interest**

Any obligation to defend or indemnify with respect to any claim or "suit" alleging or asserting in any respect loss, injury or damage in connection with the purchase or sale, the offer, solicitation, or advertising for the purchase of sale, or the depreciation or decline price or value, of any security, debt, bank deposit, or financial interest or instrument.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable LIMIT OF INSURANCE. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

   **e.** All costs taxed against the insured in the "suit."

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable LIMIT OF INSURANCE, we will not pay any prejudgment interest based on that period of time after the offer.

   **g.** Interest on that part of any judgment we pay that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable LIMIT OF INSURANCE.

   These payments are subject to the LIMITS OF INSURANCE and not in addition thereto.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

   **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   **b.** This insurance applies to such liability assumed by the insured;

   **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   **d.** The allegations in the "suit" and the information we know about the "occurrence" or "wrongful act" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

    **(1)** Agrees in writing to:

        **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

        **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

        **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

        **(d)** Cooperate with us with  respect to coordinating other applicable insurance available to the indemnitee; and

    **(2)** Provides us with written authorization to:

        **(a)** Obtain records and other information related to the "suit"; and

        **(b)** Conduct and control the defense of the indemnitee in such "suit."

"Claim expense incurred by us in the defense of any such indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request are subject to the limits of insurance and not in addition thereto.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments, settlements or "claim expenses"; or

**b.** The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured.  Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" is an insured for:

**(1)** "Bodily injury", "professional liability" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co"employee" while that co"employee" is either in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business; or to any claim or "suit" brought by the spouse, child, parent, brother or sister of that co"employee" or "volunteer worker" as a consequence of paragraph (1)(a) above;

**(b)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1) (a), above; or

**(c)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" or "professional liability" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees," or "voluntary workers"; or any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability con company). Except that this provision does not apply to loss of or damage to property arising out of a "wrongful act".

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Policy.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" or "professional liability" to a co"employee" of the person driving the equipment; or

**b.** "Property damage" or "professional liability" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A does not apply to "bodily injury", "property damage" or "professional liability" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE AMOUNT

1. The LIMITS OF INSURANCE shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits."

2. The Aggregate Limit is the most we will pay under this policy for:

   **a.** Damages and "claim expense" under Coverage A and B, for all "occurrences", offenses, and "wrongful acts"; and

3. Subject to **2.** above, the Each Occurrence/Wrongful Act Limit is the most we will pay under this policy for damages and "claim expense" arising out of any one "occurrence", offense, or "wrongful act".

4. Subject to **2.** and **3.** above, the Damage To Premises Rented To You Limit Is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

5. The Deductible stated in the Declarations applies to each "occurrence" and "wrongful act" and shall be paid by the "Insured". The Deductible shall be applied to the payment of judgments, settlements, and "claim expense".

   The Company may advance payment of part or all of the Deductible amount and upon notification of such payment made, the Insured must promptly reimburse the Company for the Deductible amounts advanced by the Company.

The Limits of Insurance of this Policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Policy.

2. **Duties In The Event Of "Occurrence", Offense, Claim Or "Suit".**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured; you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

  **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  **(2)** Authorize us to obtain records and other information;

  **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

  **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other then for first aid, without our consent.

**3. Legal Action Against Us.**

No person or organization has a right under this Policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured;  or

**b.** To sue us on this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Policy, our obligations are limited as follows:

**a. Primary Insurance**

  This insurance is primary except when **b**. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **c.** Method of Sharing below.

**b. Excess Insurance**

  This insurance is excess over:

  **(1)** any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work"; or

    **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

    **(c)** That is insurance purchased by you to your cover liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner: or

    **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of  SECTION I - COVERAGE A - BODILY INJURY, PROPERTY DAMAGE AND PROFESSIONAL LIABILITY.

  **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

  When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit."  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Policy.

**c.  Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.   Under this approach each insurer contributes an equal amount until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5.  Premium and Audit.**

**a.**  We will compute all premiums for this Policy in accordance with our rules and rates.

**b.**  If the premium for this policy is a flat premium, it is not subject to adjustment, except that additional premiums may be required for any additional exposure and/or insureds, or as provided for in Condition 12 Cancellation. The Premium shown in the declarations as Advance Premium is a deposit premium only.  If the policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, the first Named Insured will pay the difference to us due and payable upon notice. Subject to the Annual Minimum Premium shown in Item 5. B. of the Declarations, if the earned premium is less than the Advanced Premium, we will return the difference to the first Named Insured.

**c.**  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.  The first Named Insured shown on the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

**6.  Representations.**

By accepting this policy, you agree:

**a.**  The statements in the Declarations are accurate and complete;

**b.**  Those statements are based upon representations you made to us; and

**c.**  We have issued this policy in reliance upon your representations.

**7.  Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any  rights or duties specifically assigned in this Policy to the first Named Insured, this insurance applies:

**a.**  As if each Named Insured were the only Named Insured; and

**b.**  Separately to each insured against whom claim is made or "suit" is brought.

**8.  Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred  to us.  The insured must do nothing after loss to impair them.  At our request, the insured will  bring "suit" or transfer those rights to us and help us enforce them.

**9.  Examination of your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during this policy period and up to three years afterward.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

**10. Inspections and Surveys**

We have the right but are not obligated to:

**(a)** Make inspections and surveys at any time;

**(b)** Give you reports on the conditions we find; and

**(c)** Recommend changes.  Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  And we do not warrant that conditions:

**(i)** Are safe or healthful: or

**(ii)** Comply with laws, regulations, codes or standards.  This condition applies not only to us, but also to any rating advisory, rate service or similar organization which make insurance inspections, surveys, reports or recommendations.

**11. Transfer of your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.  If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative.   Until your representative is appointed, anyone having proper temporary custody of your  property will have your rights and duties but  only with respect  to that property.

**12. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of  cancellation.  The policy period will end on that date.

**5.** If this policy is canceled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, earned premium will be calculated in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium at inception of the policy shown in of the Declarations, which ever is greater. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**13. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**14. Service Of Suit**

In the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States.  Nothing in this condition constitutes or should be understood to constitute a waiver of  the Company's rights to commence an action in any court of competent jurisdiction in  the United States to remove an action to a United States District Court or to seek a transfer of a case to  another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such suit may be made upon

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

Counsel, Legal Department, Lexington Insurance Company, 100 Summer Street, Boston, Massachusetts, 02110-2103 or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this policy of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**15. Arbitration**

Notwithstanding the Service of Suit Condition above, in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators, consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) arbitrator (hereinafter "umpire") as the sole and exclusive remedy.

The party desiring arbitration of a dispute shall notify the other party, said notice including the name, address and occupation of the Arbitrator nominated by the demanding party. The other party shall within 30 days following receipt of the demand, notify in writing the demanding party of the name, address and occupation of the Arbitrator nominated by it.  The two (2) Arbitrators so selected shall, within 30 days of the appointment of the second Arbitrator, select an umpire.  If the Arbitrators are unable to agree upon an umpire, each Arbitrator shall submit to the other Arbitrator a list of three (3) proposed individuals, from which list each Arbitrator shall choose one (1) individual. The names of the two (2) individuals so chosen shall be subject to a draw, whereby the individual drawn shall serve as umpire.

The parties shall submit their cases to the panel by written and oral evidence at a hearing time and place selected by the umpire.  Said hearings shall be held within thirty (30) days of the selection of the umpire.  The panel shall be relieved of all judicial formality, shall not be obligated to adhere to the strict rules of law or of evidence, shall seek to enforce the intent of the parties hereto and may refer to, but are not limited to, relevant legal principles.  The decision of at least two (2) of the three (3) panel members shall be binding and final and not subject to appeal except for grounds of fraud or gross misconduct by the Arbitrators.  The award will be issued within 30 days of the close of the hearings.  Each party shall bear the expenses of its designated Arbitrator and shall jointly and equally share with the other the expense of the umpire and of the arbitration proceeding.

The arbitration proceeding shall take place in or in the vicinity of the Named Insured's address as shown in the Declarations or such other place as may be agreed to by the Named Insured and us. The procedural rules applicable to this arbitration, shall, except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment."

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission.  All Rights Reserved.

4.  "Claim Expense" means all reasonable fees, including attorneys fees, and all costs and expenses incurred in the investigation, adjustment, defense and appeal of any claim or "suit" covered by this Policy.  "Claim expense" shall not include the salaries of any of your "employees".

5.  "Coverage territory" means:

a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

b.  International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c.  All parts of the world if the injury or damage arises out of:

(1)  Goods or products made or sold by you in the territory described in a. above;

(2)  The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(3)  "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

6.  "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

7.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

9.  "Insured contract" means:

a.  A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b.  A sidetrack agreement;

c.  Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.  An obligation, as required by ordinance, to indemnify  a municipality, except in connection with work for a municipality;

e.  An elevator maintenance agreement;

f.   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "professional  liability" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1)  That indemnifies a railroad for "bodily injury", "property damage" or "professional liability" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a)  Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports,  surveys,  field orders,  change orders or drawings and specifications; or

(b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

**11.** "Loading or unloading" means  the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered; but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication of material that violates a person's right of privacy.

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   **a.** Includes all "bodily injury", "property damage" or "professional liability" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earlier of the following times:

   (a) When all of the work called for in your contract has been completed.

   (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **b.** Does not include "bodily injury", "property damage" or "professional liability" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Professional liability" means liability legally imposed upon an insured arising out of a "wrongful act'. "Professional liability" shall not include liability for the return or withdrawal of professional fees.

18. "Professional Services" means the rendering of security guard services pursuant to a written contract. Security guard services shall include but not be limited to watchman, patrol and checkpoint services and related consulting services.

19. "Property damage" means:

    **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    For the purposes of this insurance, electronic data is not tangible property,

    As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

    **c.**  With respect to a "wrongful act", "property damage" shall also include the loss of tangible property, including money, securities, and other valuable evidences of debt.

20. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "professional liability", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.**  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.**  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

21. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or shortterm workload conditions.

22. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

23. "Wrongful act" means the actual or alleged negligent act, error or omission of an insured arising out of the insured's rendering or failure to render "Professional Services".

24. "Your product"

    **a.**  Means:

        **(1)**  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**  You;

            **(b)**  Others trading under your name; or

            **(c)**  A person or organization whose business or assets you have acquired; and

        **(2)**  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**  Includes:

        **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)**  The providing of or failure to provide warnings or instructions.

    **c.**  Does not include vending machines or other property rented to or located for the use of others but not sold.

Includes Copyrighted Information of Insurance Services Offices, Inc. with its permission. All Rights Reserved.

**25.** "Your work"

   **a.** Means:

      **(1)** Work or operations performed by you or on your behalf; and

      **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes:

      **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **(2)** The providing of or failure to provide warnings or instructions.


IN WITNESS WHEREOF, the Company has  caused this policy to be executed  and attested, but this policy shall not be valid unless countersigned in the Declarations by a duly authorized representative of the Company.


**Secretary**               **President**

ENDORSEMENT # 001

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

**A.** **SECTION II -  WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or agreement which does not require that a specific form number be used.

**B.** The insurance provided to additional insureds applies only to "bodily injury", "property damage", "professional liability" or "personal and advertising injury" covered under Section I, Coverage A, Bodily Injury and Property Damage and Professional Liability and Coverage B, Personal and Advertising Injury Liability, but only if:

**1.** The "bodily injury", "property damage", or "professional liability" results from your negligence; and

**2.** The "bodily injury", "property damage", "personal and advertising injury" or "professional liability" results directly from:

**a.** Your ongoing operations; or

**b.** "Your work" completed as included in the "products-completed operations hazard", performed for the additional insured, which is the subject of the written contract or written agreement.

**C.** However, regardless of the provisions of paragraphs A. and B. above:

**1.** We will not extend any insurance coverage to any additional insured person or organization:

**a.** That is not provided to you in this policy; or

**b.** That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or written agreement; and

**2.** We will not provide Limits of Insurance to any additional insured person or organization that exceed the lower of:

**a.** The Limits of Insurance provided to you in this policy; or

LEXDOC021
LX0404

      **b.** The Limits of Insurance you are required to provide in the written contract or written agreement.

**D.** The insurance provided to the additional insured person or organization does not apply to:

    **1.** "Bodily injury", "property damage", "personal and advertising injury" or "professional liability" that results solely from negligence of the addition insured; or

    **2.** "Bodily injury", "property damage", Professional Liability" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

        **a.** The preparing, approving, or failing to prepare or approve maps, ship drawings, opinion, reports, surveys, filed orders, change orders or drawing and specifications; and

        **b.** Supervisory, inspection, architectural or engineering activities.

**E.** The additional insured must see to it that:

    **1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim:

    **2.** We receive written notice of a claim or "suit" as soon as practicable; and

    **3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured also has rights as an insured or additional insured.

**F.** When required by written contract this endorsement is primary insurance and we will not seek contribution from any other insurance available to any additional insured person or organization unless the other insurance is provided by a contractor other than you for the same operations and job location. Then we will share with that other insurance by the method described in paragraph 4.C. of Section IV –Conditions.

All other terms and conditions of the policy remain the same.

**Authorized Representative OR**
**Countersignature (In states where applicable**

LEXDOC021
LX0404

ENDORSEMENT # 001(REV)

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.: 023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

---

### ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

**A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) whom you are required to be add as an additional insured on this policy under a written contract or written agreement and no specific form # is required.

**B.** The insurance provided to additional insureds applies only to "bodily injury", "property damage", "professional liability" or "personal and advertising injury" covered under Section I, Coverage A, Bodily Injury and Property Damage and Professional Liability and Coverage B, Personal and Advertising Injury Liability, but only if:

    **1.** The "bodily injury", "property damage", or "professional liability" results from your negligence; and

    **2.** The "bodily injury", "property damage", "personal and advertising injury" or "professional liability" results directly from:

        **a.** Your ongoing operations; or

        **b.** "Your work" completed as included in the "products-completed operations hazard", performed for the additional insured, which is the subject of the written contract or written agreement.

**C.** However, regardless of the provisions of paragraphs A. and B. above:

    **1.** We will not extend any insurance coverage to any additional insured person or organization:

        **a.** That is not provided to you in this policy; or

        **b.** That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or written agreement; and

    **2.** We will not provide Limits of Insurance to any additional insured person or organization that exceed the lower of:

        **a.** The Limits of Insurance provided to you in this policy; or

       **b.** The Limits of Insurance you are required to provide in the written contract or written agreement.

**D.** The insurance provided to the additional insured person or organization does not apply to:

**ENDORSEMENT #   001 (REV)**
**(Continued)**

**1.** "Bodily injury", "property damage", "personal and advertising injury" or "professional liability" that results solely from negligence of the addition insured; or

**2.** "Bodily injury", "property damage", Professional Liability" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or  surveying services including:

**a.** The preparing, approving, or failing to prepare or approve maps, ship drawings, opinion, reports, surveys, filed orders, change orders or drawing and specifications; and

**b.** Supervisory, inspection, architectural or engineering activities.

**E.**   The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim:

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured also has rights as an insured or additional insured.

**F.** When required by written contract this endorsement is primary insurance and we will not seek contribution from any other insurance available to any additional insured person or organization unless the other insurance is provided by a contractor other than you for the same operations and job location. Then we will share with that other insurance by the method described in paragraph 4.C. of Section IV -Conditions.

All other terms and conditions of the policy remain the same.

_Thomas McLaughlin_

_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

**ENDORSEMENT #** 002

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## ADDITIONAL INSURED - AUTOMATIC  - OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

GUARDSECURE PROFESSIONAL LIABILITY POLICY

**SCHEDULE**

Sun City Desert Community Association
38180 Del Webb Boulevard
Palm Desert, CA 92211

A.    Section II – Who Is An Insured is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured

B.    The insurance provided to additional insureds applies only to "bodily  injury", "property damage", "professional liability" or "personal and advertising injury" covered under Section
I, Coverage A, Bodily Injury and Property Damage and Professional Liability and Coverage B, Personal and Advertising Injury Liability, but only if:

1.   The "bodily injury",  "property damage", or "professional liability" results from your negligence; and

2.   The "bodily injury",  "property damage", "personal and advertising injury" or "professional liability" results directly from:

a.    Your ongoing operations; or
b.    "Your  work" completed as included in the "products-completed operations hazard", performed for the additional insured,  which  is the subject of the written  contract  or written  agreement.

LEXDOC021
LX0404

C. However, regardless of the provisions of paragraphs A. and B. above

    1.    We will not extend any insurance coverage to any additional insured person or organization:

        a.    That is not provided to you in this policy; or
        b.    That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or written agreement; and

    2.    We will not provide Limits of Insurance to any additional insured person or organization that exceed the lower of:

        a.    The Limits of Insurance provided to you in this policy; or
        b.    The Limits of Insurance you are required to provide in the written contract or written agreement.

D.    The insurance provided to the additional insured person or organization does not apply to:

    1.    "Bodily injury", "property damage", "personal and advertising injury" or "professional liability" that results solely from negligence of the addition insured; or

    2.    "Bodily injury", "property damage", Professional Liability" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or surveying services including:

        a.  The preparing, approving, or failing to prepare or approve maps, ship drawings, opinion, reports, surveys, filed orders, change orders or drawing and specifications; and

        b.  Supervisory, inspection, architectural or engineering activities.

E.    The additional insured must see to it that:

    1.    We are notified as soon as practicable of an "occurrence" or offense that may result in a claim:

    2.    We receive written notice of a claim or "suit" as soon as practicable; and

    3.    A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured also has rights as an insured or additional insured.

F.    When required by written contract this endorsement is primary insurance and we will not seek contribution from any other insurance available to any additional insured person or organization unless the other insurance is provided by a contractor other than you for

the same operations and job location. Then we will share with that other insurance by the method described in paragraph 4.C. of Section IV – Other Insurance Conditions

All other terms and conditions remain as written.

.

_____

**Authorized Representative OR Countersignature (In states where applicable**

ENDORSEMENT # 003

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

### SCHEDULE

| LOS ANGELES WORLD AIRPORTS <br><br> **As required by written contract where CG2010 is specifically required.** | LOS ANGELES WORLD AIRPORTS <br><br> **As required by written contract where CG2010 is specifically required.** |
|---|---|
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" , "professional liability" or "personal and "advertising injury" caused, in whole or in part, by:

1.    Your acts or omissions; or
2.    The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1.    All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
2.    That portion of "your work" or of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

All other terms and conditions remain as written.

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LXO4O4

**ENDORSEMENT # 004**

ISO | Commercial General Liability Forms | 04/01/13
**POLICY NUMBER:** 023058098                                    COMMERCIAL GENERAL LIABILITY
                                                                              **CG 20 05 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s): |
|---|
| SRV Holdco LLC |
| This entity sits above  AB Capital Holdings LLC and owns 86.6%.  Once we confirm exact date of formation we may  be going back  to expired term.  We know it was formed before 11/1/13.  No change in ops or ownership -  simply set up for tax/legal reasons.  The ultimate parent remains the Blackstone Group, a private equity firm. |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

A. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:

    1. Their financial control of you; or

    2. Premises they own, maintain or control while you lease or occupy these premises.

    However:

    1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

    2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

C. With respect to the insurance afforded to these additional insureds, the following is added to Section III - Limits Of Insurance:

    If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    1. Required by the contract or agreement; or

    2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

  This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc.
©2013 Vertafore, Inc. All Rights Reserved.

**ENDORSEMENT # 004 (Rev)**

ISO | Commercial General Liability Forms   | 11/01/13

**POLICY NUMBER**: 023058098                                  COMMERCIAL GENERAL LIABILITY
                                                                                            CG 20 05 04 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name of Person(s) Or Organization(s): |
| --- |
| SRV Holdco LLC |
| |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

A. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:

    1. Their financial control of you; or

    2. Premises they own, maintain or control while you lease or occupy these premises.

    However:

    1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

    2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

C. With respect to the insurance afforded to these additional insureds, the following is added to Section III - Limits Of Insurance:

    If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    1. Required by the contract or agreement; or

    2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

    This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc.
©2013 Vertafore, Inc. All Rights Reserved.

**ENDORSEMENT # 005**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**AMENDMENT OF WHO IS AN INSURED – SECTION II**

This endorsement modifies insurance provided under the following:

SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY COVERAGE PART

**SECTION II – WHO IS AN INSURED** of this policy is deleted in its entirety and replaced with the following:

**SECTION II - WHO IS AN INSURED**

a.   AB Capital Holdings LLC, in its predecessors, and any and all of its subsidiaries, divisions, associated and/or affiliated companies in a line of corporate succession now existing or hereafter created or acquired, and their financially controlled or actively managed organizations or undertaking, if they have assumed the liabilities; and any other organization, entity or person, including partnerships and joint ventures and Limited Liability Companies which they have agreed to insure.

It is intended by the above that coverage be included for liability of the Named Insured as a result of an interest in any organization or undertaking, and any restriction of coverage pertaining to partnerships or joint ventures and Limited Liability Companies be deleted.

1.   if you are designated in the Declarations as:

a.   if you are listed in the declarations as An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b.   A partnership or joint venture, you are an insured Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.   A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e.  A trust, you are an insured Your trustees are also insureds, but only with respect to their duties as trustees.

2.  Each of the following is also an insured:

a.  Any person(s) using or legally responsible for the use of golfmobiles loaned or rented to others by you or any of your concessionaires but only for their liability arising out of the use of the golfmobiles.

b.  Your "volunteer workers" and " employees" only while acting at the direction of, and within the scope of their duties for you. This includes employees who are acting as volunteers in the community or charitable work sponsored or encouraged by you. **However, none of these "volunteer workers" or employees are insureds for:**

(1)  "bodily injury", "professional liability" or "personal and advertising injury"

(a)  Arising out of his or her providing or failure to provide professional health care services, except any "bodily injury", "professional liability" or "personal and advertising injury" arising out of:

1)  medical or paramedical services to persons performed by any physician, dentist, nurse, emergency medical technician, paramedic or other licensed medical care person employed by you to provide such services; or

(2)  emergency cardiopulmonary resuscitation (CPR) or first aid services performed by any other employee of yours who is not a licensed medical professional.

(2)  "Property damage" to property

(a)     Owned, occupied or used by,

(b)     Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company). Except that this provision does not apply to loss of our damage to property arising out of a "wrongful act".

c.  Any person (other than your "employee" or "volunteer worker') or any organization while acting as your real estate manager

    d.   Any person or organization having proper temporary custody of your property if you die, but only

       (1)  With respect to liability arising out of the maintenance or use of that property; and

       (2)  Until your legal representative has been appointed.

    e.   Your legal representative if you die, but only with respect to duties as such that representative will have all your rights and duties under this Policy.

3.   With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability However, no person or organization is an insured with respect to:

    a.   "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.   Any organization you newly acquire or form, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization; However:

    a.   Coverage under this provision is afforded only until the 12Oth day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    b.   Coverage A does not apply to "bodily injury", "property damage" or "professional liability" that occurred before you acquired or formed the organization; and

    c.   Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


**Authorized Representative OR**
**Countersignature (In states where applicable**

ENDORSEMENT # 006

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**AMENDMENT OF INSURED CONTRACT ENDORSEMENT**

This endorsement modifies insurance provide under the following:

**SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY COVERAGE PART**

Section 5, definitions, paragraph 9. is replaced by the following.

9. "Insured contract" means:

a. A contract of for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured "contract";

b. A sidetrack agreement;

c. Any easement or license agreement;

d. An obligation, as required by ordinance, to indemnify a municipality;

e. A n elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed of a municipality) under which you assume the liability of another party to pay for "bodily injury" or "property damage" or "professional liability" to a third person or organization.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or property damage" arising out of construction of demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, track, roadbeds, tunnel, underpass or crossing:

(2) That indemnifies an architect, engineering or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings,opinion, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

LEXDOC021
LXO4O4

    (3)  Under which the insured, if an architect, engineering or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.


All other terms and conditions remain as written.




**Authorized Representative OR**
**Countersignature (In states where applicable**

ENDORSEMENT # 007

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## AMENDMENT OF OTHER INSURANCE CONDITION ENDORSEMENT

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

Subparagraphs **a.** and **b.** of Paragraph **4. Other Insurance** of **SECTION IV - CONDITIONS**, are deleted in their entirety and replaced with the following:

This insurance is excess over any other valid and collectible insurance applying to the loss except for insurance bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

Notwithstanding the preceding paragraph, this insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have not agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the insured.

Other insurance payments will reduce the retention amount stated in the Declarations.

All other terms and conditions of the policy remain the same.

_____
**Authorized Representative OR
Countersignature (In states where applicable**

**ENDORSEMENT #** 008

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### EXPECTED  OR INTENDED  INJURY EXCLUSION AMENDMENT

This endorsement modifies insurance provided under the following:

**GUARDSECURE® SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY INSURANCE**

**SECTION I ● COVERAGE A. BODILY INJURY, PROPERTY DAMAGE AND PROFESSIONAL LIABILITY, Paragraph 2 EXCLUSIONS, Exclusion a.** is deleted in its entirety and replaced with the following:

a. **Expected of Intended Injury**

"Bodily injury", "property damage" or "professional liability" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" or "professional liability" resulting from the use of reasonable, physical or deadly physical force to protect persons or property.

All other terms and conditions remain as written.

_Thomas McLaughlin_

**Authorized Representative OR**
**Countersignature (In states where applicable**

**ENDORSEMENT # 009**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## AMENDMENT TO EXCLUSION R ENDORSEMENT

Section I Exclusions R, is deleted in its entirety and replaced with the following:

Any "property damage" or "professional liability" arising out of a theft or embezzlement in which an insured or any "employee", "temporary employee" or "volunteer worker" is compliant. This exclusion shall not apply to any Insured's who are not adjudicated to have committed theft or embezzlement. Criminal proceedings or investigations are not covered under this policy regardless of cause or the allegations made against an Insured;

All other terms and conditions remain as written.

**Countersignature (In states where applicable**

LEXDOC021
LX04O4

ENDORSEMENT # 010

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### AMENDMENT OF SUPPLEMENTARY PAYMENTS- COVERAGES A AND B

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

"SUPPLEMENTARY PAYMENTS- COVERAGE A AND B" is deleted in its entirety and replaced with the following:

SUPPLEMENTARY PAYMENTS- COVERAGE A AND B

1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    a.  All expenses we incur.

    b.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    c.  The cost of bonds to release attachments, but only for bond amounts within the applicable LIMIT OF INSURANCE. We do not have to furnish these bonds.

    d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

    e.  All costs taxed against the insured in the "suit."

    f.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable LIMIT OF INSURANCE, we will not pay any prejudgment interest based on that period of time after the offer.

    g.  Interest on that part of any judgment we pay that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable LIMIT OF INSURANCE.

These payments are in addition to the LIMITS OF INSURANCE

2. We will pay, with respect to any claims we investigate or settle or any suit we defend against an indemnitee of the insured, all items set forth in Supplementary Payments, and these payments will not reduce the limits of insurance, if the following conditions are met:

a.    This insurance applies to such liability assumed by the insured; the indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit", and

b.    The indemnitee: Agrees in writing to: Cooperate with us in the investigation, settlement or defense of the "suit", Send us copies of any demands, notice, summonses or legal papers received in connection with the "suit" as soon as practicable; Notify any other insurer whose coverage is available to the indemnitee; and

c.    Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

d.    Provides us with written authorization to: Obtain records and other information related to the "suit" and conduct and control the defense of the indemnitee in such action

All other terms and conditions remain as written.

Countersignature (in states where applicable

**ENDORSEMENT # 011**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### NOTICE OF CANCELLATION TO CERTIFICATE HOLDERS ENDORSEMENT

This endorsement modifies insurance provided by the policy:

SCHEDULE

Name of Certificate Holder(s) and Address:

1.   North Carolina Private Protective Services Board
     1631 Midtown Place
     Suite 104
     Raleigh, North Carolina 27609

---

Except with respect to cancellation for non-payment of premium, notice of cancellation shall be given at least (30) days advance written notice, 10- days for non-payment of premium to the Certificate Holder(s) shown in the above schedule.

Other than the right to receive notice of cancellation as set forth herein, this endorsement confers no rights under this policy to the Certificate Holder(s) including, but not limited to, additional insured status or additional Named Insured status.

All other terms and conditions of the policy remain the same.

**Authorized Representative OR**
**Countersignature (In states where applicable**

LEXDOC021
LX0404

ENDORSEMENT # 012

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY


## AMENDMENT OF CANCELATION CLAUSE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

**SECTION IV – CONDITION #12**, Cancellation, is deleted in its entirety and replaced with the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured, all additional named insured's, and all certificate holder's written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment
      of premium; or
   b. 90 days before the effective date of cancellation if we cancel for any other reason.

   It is further understood that ninety (90) will be given for material change.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, earned premium will be calculated in accordance with the customary pro-rata table and procedure, or the Minimum Earned Premium at inception of the policy shown in of the Declarations, which ever is greater. The cancellation will be effective even if we have not made or offered a refund.

LEXDOC021
LX0404

**6.**   If notice is mailed, proof of mailing will be sufficient proof of notice.

**7.**   If we decide to non-renew this policy we will provide the first Named Insured with 90-days written notice.

**8.**   It is further agreed that notice of cancellation or non-renewal will be given, in writing, to the Risk Management Department.

All other terms and conditions remain as written.

**Authorized Representative OR**
**Countersignature (In states where applicable**

ENDORSEMENT # 013

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY


**CONTRACTUAL  LIABILITY  ENDORSEMENT**


This endorsement modifies insurance provided under the following:

**GUARDSECURE  PROFESSIONAL  LIABILITY  POLICY**


**SECTION I**– **COVERAGE  A. BODILY  INJURY,  PROPERTY  DAMAGE  AND PROFESSIONAL  LIABILITY, Paragraph  2 EXCLUSION  B** is deleted in its entirety and replaced with the following.


This insurance does not apply to:


B.  "Bodily injury", "property damage" or "professional liability" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    {1)  That the insured would have in the absence of the contract or agreement; or

    (2)  Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury", "property damage" or "professional liability" occurs subsequent to the execution of the contract or agreement.


All other terms and conditions remain as written.


**Authorized Representative OR**
**Countersignature (In states where applicable**

**ENDORSEMENT # 014**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**CROSS LIABILITY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

In the event of claims being made by reason of bodily injuries suffered by any employee or employees of one Insured hereunder for which another Insured hereunder is or may be liable, then this Policy shall cover such Insured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Insured hereunder.

In the event of claims being made by reason of damage to property belonging to any Insured hereunder for which another Insured is or may be liable then this policy shall cover such Insured against whom a claim is made or may be made in the same manner as if separate policies had been issued to each Insured hereunder.

Nothing contained herein shall operate to increase the Company's Limit of Liability as set forth in the Declarations of the policy.

All other terms and conditions remain as written.

_Thomas McLaughlin_
**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX0404

ENDORSEMENT # 015

**This endorsement, effective 12:01 AM 11/01/2013**

**Forms a part of policy no.: 023058098**

**Issued to: AB CAPITAL HOLDINGS LLC**

**By: LEXINGTON INSURANCE COMPANY**


**DAMAGE TO PROPERTY AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

**SECTION I – COVERAGE A. BODILY INJURY, PROPERTY DAMAGE AND PROFESSIONAL LIABILITY, Paragraph 2, EXCLUSION J. 4** is deleted in its entirety and replaced with the following.


This insurance does not apply to:


Personal property in the care, custody or control of the Insured; except that this exclusion shall not apply to "property damage" or "professional liability" arising out of your "wrongful act".

This exclusion is not applicable to personal property in the care, custody and control of the Insured to the extent the Insured is safeguarding in connection with Professional Services.


All other terms and conditions remain as written.


*Thomas McLaughlin*
_____
**Authorized Representative OR
Countersignature (In states where applicable)**

**ENDORSEMENT # 016**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**DEFENSE COSTS IN ADDITION TO LIMIT OF
INSURANCE**

In consideration of the premium charged, it is agreed that all fees, costs and other expenses we incur in the investigation and defense of "occurrences", claims and "suits" under Coverages A and B and all payments we make pursuant to SUPPLEMENTARY PAYMENTS – COVERAGES A AND B shall be in addition to, the limits of insurance.

All other terms and conditions remain unchanged.

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX0404

ENDORSEMENT # 017

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### DELETION  OF EXCLUSION  K

This endorsement  modifies  insurance  provided  under  the  following:

**GUARDSECURE PROFESSIONAL LIABILITY  POLICY**

**SECTION I** – **COVERAGE A. BODILY INJURY,** PROPERTY **DAMAGE  AND PROFESSIONAL LIABILITY, Paragraph 2 EXCLUSIONS K**   is deleted in its  entirety.

All other  terms  and conditions remain  as written.

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX0404

**ENDORSEMENT #** 018

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**NOTICE OF CANCELLATION TO CERTIFICATE HOLDERS ENDORSEMENT**

This endorsement modifies insurance provided by the policy: SCHEDULE

Name of Certificate Holder(s) and Address:

       1.    Jones Lang LaSalle Americas, Inc.

           104 Independence Mall East

           Philadelphia, PA 19106

---

Except with respect to cancellation for non-payment of premium, notice of cancellation shall be given at least (30) days advance written notice, 10- days for non-payment of premium to the Certificate Holder(s) shown in the above schedule.

Other than the right to receive notice of cancellation as set forth herein, this endorsement confers no rights under this policy to the Certificate Holder(s) including, but not limited to, additional insured status or additional Named Insured status.

All other terms and conditions of the policy remain the same.

Authorized Representative OR
**Countersignature (In states where applicable)**

LEXDOC021
LX0404

ENDORSEMENT # 019

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### LEGAL ACTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

**SECTION VI – CONDITIONS,** Paragraph **3, Legal Action Against Us,** is deleted in its entirety and replaced with the following:

3. **Legal Action Against Us.**

No person or organization has a right under this Policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured;  or

b. To sue us on the Coverage Part, other than for declaratory relief, unless all of its terms have been fully complied with.

A person or organization  may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable  limit of insurance. An agreed settlement  means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

All other terms and conditions remain as written.

_Thomas McLaughlin_
_____
**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX0404

ENDORSEMENT # 020

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### LIBERALIZATION  ENDORSEMENT

This endorsement  modifies  insurance  provided  under  the  following:

**GUARDSECURE  PROFESSIONAL  LIABILITY  POLICY**

It is hereby  understood  that  if  we  revise  or  replace  our  standard  policy  form  to  provide  more coverage  without  an  additional  premium  charge,  your  policy  will  automatically  provide  the additional  coverage  as  of  the  day  the  revision  is  effective  in  your  state.

All other  terms  and  conditions  remain  as  written.

_Thomas McLaughlin_

**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LX0404

ENDORSEMENT # 021

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**LIQUOR LIABILITY AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

**SECTION I - COVERAGE A. BODILY INJURY, PROPERTY DAMAGE AND PROFESSIONAL LIABILITY, Paragraph 2 EXCLUSION C** is deleted in its entirety and replaced with the following:

This insurance does not apply to:

C. "Bodily injury" "property damage" or "professional liability"

**(1)** Causing or contributing to the intoxication of any person;
**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
**(3)** Any statute, ordinance or regulation relating to the sale, gift distribution or use of alcoholic beverages.

This exclusion applies only if you:

(1) Manufacture, sell or distribute alcoholic beverages;
(2) Serve or furnish alcoholic beverages for a charge whether or not such activity;
    (a) Requires a license;
    (b) Is for the purpose of financial gain or livelihood; or
(3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

However, this exclusion shall not apply to the services provided to MILLERSCOORS by the Insured pursuant to the contract dated August 1, 2008 between MILLERCOORS LLC, and the Insured.

All other terms and conditions remain as written.

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX0404

**ENDORSEMENT #** 022

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### NOTICE OF OCCURENCE ENDORSEMENT

This endorsement modifies insurance provided under the following: **GUARDSECURE**

**PROFESSIONAL LIABILITY POLICY**

**SECTION IV** – **CONDITIONS** is amended to include the following:

We shall not deny coverage as the result of an unintentional failure by you to give notice with respect to any occurrence, provided notice is given as soon as practicable after becoming aware that this policy may apply to such occurrence.

It is also agreed that if the insured reports an occurrence or offense to its workers' compensation or automobile carrier that develops into a liability claim, failure to report such occurrence or offense to this company at the time of occurrence shall not be deemed in violation of "Duties in the Event of Occurrence, Offense, Claim or Suit."

All other terms and conditions remain as written.

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX04O4

ENDORSEMENT # 023

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### GUARDSECURE PROFESSIONAL LIABILITY POLICY

**SECTION I– COVERAGE A. BODILY INJURY, PROPERTY DAMAGE AND PROFESSIONAL LIABILITY, Paragraph 2 EXCLUSION F** is deleted in its entirety and replaced with the following:

This insurance does not apply to:

**f.    Pollution**

(1)  "Bodily injury" or "Property Damage" or "Professional Liability" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site, or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatments of waste;

(c) Which are or were at any time transported, handled, stored treated, disposed of, or processed as waste by or for any insured or any person or organization or whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i)    If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii)    If the operations are to test for monitor, clean up remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (a) does not apply to "bodily injury" or "professional liability" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

"Bodily Injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by or rented or loaned to, any insured, other than that additional insured.

Subparagraph (d) (l) does not apply to "bodily injury", "professional liability" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic

or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operations fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d) (l) do not apply to "bodily injury" "property damage" or "professional liability" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

Subparagraphs (a) and (d) (l) do not apply to "bodily injury" "professional liability" or property damage arising out of "short-term pollution event" provided:

(a) The "short-term pollution event" would not have taken place but for a "named peril" having occurred; and
(b) You notified us of the "short-term pollution event" as soon as practicable but no more than fourteen (14) days after its ending.

The following are added to the **Definitions** Section:

1.    "Named Peril" means:

a. Lightning, flood, sprinkler, leakage, hail, riot or civil commotion, windstorm or earthquake;
b. Explosion, implosion, collapse, puncture, bursting, rupture, collision, or overturn of a tank, a vessel, machinery, equipment or other similar apparatus or device (other than an "auto"), including any attached piping, pumps or valves, if the explosion, implosion, collapse, puncture, bursting, rupture, collision overturn or:
c. Vandalism or malicious mischief by someone other than an insured.

2.    "Short-term pollution event" means a discharge, dispersal, release or escape of "pollutants" which:
   a. Begins during the policy period;
   b. Begins at an identified time and place;

beginning of the discharge, dispersal, release or escape of the "pollutants" and;

    d.  Does not originate from an "underground storage tank".

To be a "short-term pollution event", the discharge, dispersal, release or escape of "pollutants" need not be continuous.  However, if the discharge, dispersal, release or escape is not continuous, then all discharges, dispersals, releases or escapes of the same "pollutants" from essentially the same source, considered together, must satisfy Provision a. through d. of this definition to be considered a "short-term pollution event".

3.    "Underground storage tank" means any storage tank, including any attached pumps, valves or piping buried below the surface of the ground or water, or which, at any time, had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of it is below the surface of the ground water.

All other terms and conditions remain as written.



**Authorized Representative OR**
**Countersignature (In states where applicable)**

**ENDORSEMENT #** 024

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**DELETION OF CONTRACTUAL LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

**SECTION II - SECTION II - COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY,
Paragraph 2 EXCLUSION E** is deleted in its entirety.

All other terms and conditions remain as written.

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LXO4O4

**ENDORSEMENT # 025**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**UNITENTIONAL ERRORS OR OMMISSIONS ENDORSEMENT**

**Section IV – Conditions,  - Part 2. – Duties In The Event Of "Occurrence", Offense, Claim or "Suit",** is amended  to  include  the  following:

2.      Duties  In  The  Event  Of  "Occurrence",  Offense,  Claim  Or  "Suit".

e.  No  Inadvertent  error,  omission  or  failure  in  making  reports  or  providing  other  data hereunder  shall  prejudice  the  Insured's  right  of  recovery, but  shall  be  corrected  as soon  as  practical  when  brought  to  the  attention  of  the individual  responsible  for  insurance  matters.   It  is  further  understood  and  agreed that  any  error  in  name  or  description  of  locations,  disclosure  of  hazards,  or  values of  projects  covered  or  to  be  covered  by  this  policy  shall not  invalidate  or  reduce  the  policy  limit  of  liability,  or  otherwise  prejudice  any recovery  under  this  policy

All  other  terms  and  conditions  remain  as  written.

_Thomas M Laughlin_

**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LX04O4

ENDORSEMENT # 026

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of person or Organization:**

Where required by written contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV – CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard." This waiver applies only to the person or organization shown in the Schedule above.

All other terms and conditions remain as written.

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

**ENDORSEMENT # 027**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**WAIVER OF TRANSFER OF RECOVERY ENDORSEMENT**

Section IV – Paragraph 8 is deleted in its entirety and replaced with the following:

**(8) Transfer or rights of recovery against others to us**

If the insured has rights to recover all or part of any payment we have made under this policy, these rights are transferred to us. The insured may waive these rights before or after a loss. We will act in concert with the insured and all other interests in the exercise of such rights of recovery.

All other terms and conditions remain as written.

_Thomas McLaughlin_

**Authorized Representative OR**
**Countersignature (In states where applicable**

**ENDORSEMENT #** 028

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

<u>AMENDATORY  ENDORSEMENT</u>
(Occurrence  Version)

In consideration  of the premium  charged, it is hereby understood  and agreed that:

SECTION V – DEFINITIONS, part 5., "Coverage  Territory" is deleted in its  entirely  and replaced with  the  following:

SECTION V – DEFINITIONS

5.   "Coverage  territory"  means:

    a.   The United States of America (including  its  territories  and possessions),  Puerto Rico and Canada;
    b.   International waters  or airspace; and
    c.   elsewhere  in the  world.

When any Claim against the Insured for  which  coverage  is provided  under this policy is made or brought within the United States of America, its territories  or possessions, or Puerto Rico, the Company has the right to investigate such Claim, and the duty to defend any such Claim with defense counsel of the Company's choice, even if such Claim is groundless, false or fraudulent. The Company's  obligation  to defend or to continue  to defend  any Claim as provided  in this subparagraph  a. shall no longer exist after the applicable  limit of the Company's liability has been exhausted  by payment  of "Claim Expenses" or Damages, or both.

When any Claim against the Insured for  which  coverage  is provided  under this policy is made or brought outside the areas described in subparagraph  a) above, the Company shall not be obligated to assume charge of the investigation, defense or settlement  of any such Claim but the Company shall have the right and shall be given the opportunity to associate  with the Insured in the investigation and defense of any such Claim. The Insured shall, under the Company's  supervision, make or cause to be made such investigation and defense as is reasonably  necessary.  Subject to prior written  authorization by the Company, the Insured may also effect  settlement.  The Company shall reimburse  the Insured  for
Damages and the reasonable  and necessary  costs  of investigating and defending  any such Claim such as
(11 fees  charged  by any lawyer  selected  by the Insured to defend the Claim, and (21 all other fees, costs and expenses resulting  from the  investigation, including  adjustment,  defense  and appeal of  a decision regarding a Claim as authorized  by the Company.  For purposes of computing the amount  of the Limits  of Liability  and Deductible  amount  under this policy,  such reasonable costs  shall  be construed  as "Claim **Expenses".**

Any provision of the policy extending, in any way, coverage to a territory outside of the United States is amended to add the following at the end thereof:

If coverage for a claim under this policy is in violation of any United States of America economic of trade sanction, including but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), than coverage for that claim shall be null and void.

All other terms and conditions remain unchanged.

**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LXO4O4

ENDORSEMENT # 029

This endorsement, effective **12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $████████ | each employee | $████████ | each employee | $████████ |
| | $████████ | aggregate | | | |
| Retroactive Date: | Full prior acts | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. The following is added to Section **I Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Paragraph E. (Section III – Limits Of Insurance); and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   b. This insurance applies to damages only **if:**

      (1) The act, error or omission, is negligently committed in the "administration" of your "employee benefit pro**gram";**

      (2) The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

      (3) A "claim" for damages, because of an **act, error or omission, is first made** against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph G. of this endorsement.

   c. A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

      (1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

(2) When we make settlement in accordance with Paragraph 1.a. above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered o have been received within the policy period, if no subsequent policy is available to cover the claim.

d. All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2. **Exclusions**

This insurance does not apply to:

a. **Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest,fraudulent,criminal or M alicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b. **Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

c. **Failure To Perform A Contract** Damages arising out of failure of performance of contract by any insurer.

d. **Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e. **Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f. **Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g. **ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h. **Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i. **Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j. **Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

B. For the purposes of the coverage provided by this endorsement:

1. All references to Supplementary Payments – Coverages A and B are replaced by Supplementary Payments –Coverages A, B and Employee Benefits Liability.

2. Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

C. For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of Section II – Who Is An Insured are replaced by the following:

2. Each of the following is also an insured:

a. Each of your "employees" who is or was authorized to administer your "employee benefit program".

b. Any persons, organizations or"employees" having proper temporary authorization to administer your "employee benefit program" if you

die, but only until your legal repre-sentative is appointed.

c.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorse-ment.

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

a.  Coverage under this provision is

afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

b.  Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D.  For the purposes of the coverage provided by this endorsement, Paragraph 3. of Section II – Who Is An Insured does not apply.

E.  For the purposes of the coverage provided by this endorsement, Section III – Limits Of In-surance is replaced by the following:

1.  **Limits Of Insurance**

a.  The Limits of Insurance shown in the Schedule and the rules below fix the most we will pa regardless of the num-ber of:

(1) Insureds;

(2)"Claims" made or "suits" brought;

(3) Persons or organizations making **"claims" or bringing "suits";**

(4)  Acts, errors or omissions; or

(5)  Benefits included in your "employee benefit program".

b.  The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the"administration" of your "employee benefit program".

c.  Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's"

dependents and beneficiaries, as a result of:

(1)  An act, error or omission; or

(2)  A series of related acts, errors or **omissions**

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit **program".**

The Limits of Insurance of this endorse-ment apply separately to each consecutive annual period and to any remaining period of less than 1 2 months,starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

2.  **Deductible**

a.  Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

b.  The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

c.  The terms of this insurance, including those with respect to:

(1)  Our right and duty to defend any "suits" seeking those damages; and

(2)  Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

d.  We may pay any part or all of the deduc-tible amount to effect settlement of **any "claim" or "suit" and, upon notifica**tion

of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

F. For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of Section V – Conditions are replaced by the following:

2. **Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any

demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, up our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or

incur any expense without our consent.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

(a) No Retroactive Date is shown in the Schedule of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other **insurers.**

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the

Limits of Insurance shown in the Schedule of this endorsement.

c. **Method Of Sharing**

**If** all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**G.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made *Cover*age Part, replaces any similar Section in that *Coverage* Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, **if:**

a. This endorsement is canceled or not **renewed; or**

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this **endorsement; or**

(2) Does not apply to an act, error or **omission on a claims-made basis.**

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts,errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of *five* years is available, but only by an endorsement and for an extra charge.

You must *give* us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The "employee benefit programs" insured;

**b.** Previous types and amounts of insuance;

**c.** Limits of insurance available under this endorsement for future payment of damages; and

**d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement

.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**H.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1. "Administration'' means:**

a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

b. Handling records in connection with the "employee benefit program"; or

c. Effecting,continuing or terminating any "employee's" participation in any benefit included in the "employee benefit pro**gram".**

However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's"

dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

    a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

    b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

    c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

    d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

    e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

I. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

5. "Employee" means a person actively employed, formerly employed, on *leave* of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

18. "Suit" means a civil proceeding in which damages because of an act, error or **omis**sion to which this insurance applies are alleged. "Suit" includes:a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

_Thomas McLaughlin_

**Authorized Representative OR
Countersignature (In states where applicable)**

**ENDORSEMENT** # 030

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON   INSURANCE   COMPANY

## TERRORISM PREMIUM CHARGE  ENDORSEMENT

The "Terrorism" charge is $ 21,350 , and is included in the Policy Premium shown on the Declarations Page of this policy.

DEFINITION - The following definition of terrorism shall apply:

"Terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether  or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

    (1) A government;
    (2) The civilian population of a country, state or community; or
    (3) To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "Terrorism" includes a certified act of terrorism defined by Section 102. Definitions, of the Act and any revisions or amendments thereto.

All other terms and conditions of the policy are the same.

 

*Thomas McLaughlin*

**Authorized Representative OR**
**Countersignature (In states where applicable)**

**ENDORSEMENT #** 031

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## WAR EXCLUSION

This endorsement modifies insurance provided by the policy:

This insurance does not apply to any loss, cost, damage, expense, injury, claim or suit, caused by, arising out of, or resulting directly or indirectly, in whole or in part from war, including but not limited to:

a.  War, including undeclared or civil war; or

b.  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c.  Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

However, this exclusion does not apply to "terrorism".

As used in this exclusion, "terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

a.  A government;

b.  The civilian population of a country, state or community; or

c.  To disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002 (the "Act") is in effect, "terrorism" includes an act of terrorism as defined by Section 102. Definitions of the Act and any revisions or amendments thereto.

All other terms and conditions of the policy remain the same.

_Thomas McLaughlin_
_____
**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT # 032

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

---

### COVERAGE TERRITORY ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

_Thomas McLaughlin_

**Authorized Representative OR
Countersignature (In states where applicable)**

**ENDORSEMENT #** 033

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**AMENDMENT  OF PROFESSIONAL SERVICES ENDORSEMENT**

This endorsement  modifies  insurance  provide  under  the  following:

SECURITY  GUARD  GENERAL  AND  PROFESSIONAL LIABILITY  COVERAGE PART

Paragraph  18  of  **SECTION VI – DEFINITIONS**  is  deleted  in  its  entirety  and  replaced  with  the  following:

18.  "Professional Services"  means  the  rendering  of  security  guard  services  pursuant  to  a  written  contract.  Security  guard  services  shall  include  but  not  be  limited  to  watchman, patrol  and  checkpoint  services,   CPR  training,  first  aid  services  along  with  training,  first  aid training,  state  specific  training,  background  checks,  fire  services,  drug  screening  and  related consulting   services.

All  other  terms  and  conditions  remain  as  written.

**Authorized Representative OR**
**Countersignature (In states where applicable**

LEXDOC021
LX04O4

**ENDORSEMENT #** 034

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## WRONGFUL ACT AMENDMENT ENDORSEMENT

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

Section **V, DEFINITIONS,** Item **23** is deleted in its entirety and replaced with the following.

"Wrongful Act" means the actual or alleged negligent act, error or omission arising out of rendering or failure to render "Professional Services" by or on behalf of the Named Insured.

All other terms and conditions remain as written.

**Authorized Representative OR
Countersignature (In states where applicable**

LEXDOC021
LX04O4

**ENDORSEMENT # 035**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### WATERCRAFT LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

**SECTION I– COVERAGE A. BODILY INJURY, PROPERTY DAMAGE AND PROFESSIONAL LIABILITY, Paragraph 2 EXCLUSIONS, Exclusions G** is amended to include the following:

This insurance does not apply to:

G. "Bodily injury", "property damage" or "professional liability" arising out of the ownership, maintenance, us or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" or "wrongful act" which caused the "bodily Injury", "property damage" or "professional liability" involved the ownership, maintenance, use or entrustment to others of any aircraft, auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent:
(2) A watercraft you do not own that is:
   (A) Not being used to carry persons or property for charge;

(3) Parking on "auto" on or on the ways next to premises you own or rent, Provided the "auto" is not owned by or rented or loaned to any insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance Or use of aircraft or watercraft; or

(5) "Bodily injury", "property damage" or "professional liability" arising out of the operation of any of the equipment listed in paragraph f. (2) or f. (3) of the definition of "mobile equipment."

All other terms and conditions remain as written.

**Authorized Representative OR**
**Countersignature (In states where applicable**

**ENDORSEMENT # 036**

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

**SECTION II – WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or agreement which specifically requires the CG2037 07 04 edition, but only with respect to liability for "bodily injury", "professional liability" or "property damage" caused, in whole or in part, by "your work" at the location where required by written contract where CG2037 07 04 edition is specifically required, performed for that additional insured and included in the "products-completed operations hazard".

All other terms and conditions of the policy remain the same.

_____
**Authorized Representative OR
Countersignature (In states where applicable**

LEXDOC021
LXO4O4

ENDORSEMENT # 036(REV)

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.:  023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

---

### ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

**GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY POLICY**

**SECTION II - Who Is An Insured** is amended to include as an additional insured a person(s) or organization(s) who is required by written contract where CG2037 07 04 edition, is specially required,  but only with respect to liability for "bodily injury", "professional liability" or "property damage" caused,  in whole or  in part, by "your  work"  at  the  location where required by written contract where CG2037  07  04 is specifically required, performed  for that additional insured and included in the "products-completed operations hazard".

All other terms and conditions of the policy remain the same.

_Thomas M Laughlin_

**Authorized Representative OR**
**Countersignature (In states where applicable)**

**ENDORSEMENT # 037**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**KNOWLEDGE OF OCCURRENCE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

**SECTION IV– CONDITIONS** is amended to include the following:

Knowledge of an occurrence by your agent, servant, or employee shall not constitute knowledge by you unless Director of Risk Management has received such notice.

All other terms and conditions remain as written.

_Thomas J McLaughlin_

**Authorized Representative OR
Countersignature (In states where applicable**

LEXDOC021
LXO4O4

ENDORSEMENT # 038

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### COVERAGE FOR INJURY TO LEASED WORKER ENDORSEMENT

This endorsement modifies insurance provided under the following:

**GUARDSECURE® SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY INSURANCE**

**SECTION I · COVERAGE A. BODILY INJURY, PROPERTY DAMAGE AND PROFESSIONAL LIABILITY, Paragraph 2 EXCLUSIONS, Exclusion e**. is deleted in its entirety and replaced with the following:

This insurance does not apply to:

e.   Employer's Liability

(1) "Bodily injury" to an "employee" of the Insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) Any claim or "suit" brought by the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

As restated herein, solely with respect to Exclusion **e,** the definition of "employee" in the definitions section is replaced by the following:

"Employee" does not include a "leased worker" or "temporary employee"

All other terms and conditions remain as written.

_Thomas McLaughlin_
**Authorized Representative OR
Countersignature (In states where applicable**

LEXDOC021
LX0404

**ENDORSEMENT # 039**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### SELF-INSURED RETENTION ENDORSEMENT

It is hereby understood and agreed that Section III, Part 5. Deductible is replaced by this Endorsement, and whenever referenced in this policy the word Deductible shall be replaced by the term Self-Insured Retention.

The Company's obligation under the coverages provided by this policy to pay on behalf of the Insured apply only in excess of the Self-Insured Retention as stated in the Declarations and subject to the Limits of Insurance stated in the policy. The terms of this policy with respect to the Company's rights and duties relative to investigation, settlement, duty to defend and selection of defense counsel apply in excess of the application of the Insured's Self-Insured Retention.

All other terms and conditions remain as written.

**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LX04O4

**ENDORSEMENT #** 040

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### DELETION OF INTELLECTUAL PROPERTY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

**SECTION I - SECTION I - COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, Paragraph 2 EXCLUSION G** is deleted in its entirety.

All other terms and conditions remain as written.

_Thomas McLaughlin_
**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LX0404

**ENDORSEMENT #** 041

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### AMENDMENT OF LIQUOR LIABILITY ENDORSEMENT

It is hereby understood and agreed that Section I – *Coverage* A- 1 Insuring Agreement E is deleted in its entirety and replaced with the following:

Damages because of "bodily injury" or "professional liability" include damages claimed by any person or organization for care, loss of services, loss of support, loss or consortium or death resulting at any time from the "bodily injury" or "professional liability".

All other terms and conditions remain as written.

_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LX04O4

**ENDORSEMENT #** 042

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**F I R E / SMOKE I EXPLOSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

**SECTION I - COVERAGE A. BODILY INJURY, PROPERTY DAMAGE AND PROFESSIONAL LIABILITY, Paragraph 2 EXCLUSIONS C through N** do not apply to claims arising out of or related to fire, smoke, explosion or water damage to premises rented, leased or loaned to you.

All other terms and conditions remain as written.

**Authorized Representative OR
Countersignature (In states where applicable)**

**ENDORSEMENT #** 043

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### IN REM ENDORSEMENT

It is agreed and understood that with respect to such insurance as is afforded under this policy, any action "In Rem" shall in all respects be treated in the same manner as though the action resulting there from was "in Personam" against the insured.

All other terms and conditions remain as written.

_____

**Authorized Representative OR
Countersignature (In states where applicable)**

**ENDORSEMENT # 044**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### NUCLEAR EXCLUSION AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Section II., Exclusions, Item p., Nuclear is hereby deleted in it is entirety and replaced with the following:

P. Nuclear

(1) "Bodily Injury", "Property Damage" or "Professional Liability":

    a.    With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any such policy but for its termination upon exhaustion of its limit of liability; or

    b.    Resulting from the "hazardous properties" of "nuclear material" and with respect to which (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, of (ii) the insured is or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency there of with any person or organization.

(2) "Bodily injury", "property damage" or "professional liability" resulting from the "hazardous ,properties" of "nuclear material", **if:**

    a.    "The nuclear material" (i) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (ii) has been discharged or dispersed therefrom:

    b.    The "nuclear material" is contained in "spent fuel" or "waste" at anytime possessed, handled, used processed, stored, transported or disposed of by or on behalf of the insured; or

    c.    "bodily injury", "property damage" or "professional liability" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility".

(3) As used in the exclusion, the following definitions apply;

    a.    "Hazardous properties" include radioactive, toxic or explosive properties.

    b.    "Nuclear material" means "source material", "special nuclear material" or "by-product material";

c.   "Source material", "special nuclear material" and "by-product material" have the meanings given them in Atomic Energy Act of 1954 or in any law amendatory thereof;

d.   "Spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation **in** a "nuclear **reactor";**

e.   "Waste" means any waste material (i) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(ii)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f.   "Nuclear facility" means;

(i)   Any "nuclear reactor";

(ii)   Any equipment or device designed or used for (a) separating the isotopes or uranium or plutonium, (b) processing or utilizing "spent fuel", or (c) handling, processing or packaging **"waste"**

(iii)   Any equipment or devised used for the processing, fabricating or alloying or "special nuclear material" **if** at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or devise is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more that 250 grams of uranium 235;

(iv)   Any structure, basin, excavation, premises or place prepared or used for storage or disposal or "waste".

And includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY COVERAGE PART

All other terms and conditions remain as written.

**Authorized Representative OR**
**Countersignature (In states where applicable)**

ENDORSEMENT # 045

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### SMOKE, EXPLOSION OR WATER DAMAGE ENDORSEMENT

It is hereby understood and agreed that section III, paragraph 4 is deleted in its entirety and replaced with the following:

Subject to 2. and 3. above, the Damage To Premises Rented To You Limit Is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire, smoke, explosion, or water damage.

All other terms and conditions remain as written.

**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LXO4O4

ENDORSEMENT # 046

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### CUT-THROUGH ENDORSEMENT

This Endorsement is issued by New Hampshire Insurance Company of Harrisburg, PA. (hereinafter referred to as the Guarantor) to Lexington Insurance Company (hereinafter referred to as the Company) with regard to the Security Guard General and Professional Liability Policy noted *above* issued by the Company (hereinafter referred to as the Policy) and as set forth below.

Name of Insured:                    AB CAPITAL HOLDINGS, LLC

Insured's Mailing Address:       Eight Tower Bridge
                                             161 Washington Street, Suite 600
                                             Conshohocken, PA 19428

Policy Number: 023058098

Type of Policy:                       GuardSecure Security Guard General and
                                             Professional Liability Insurance

Policy Amount:                       $10,000,000 Each Occurrence,10,000,000 Aggregate

Coverage Period:                    11/01/2013      TO   11/01/2014

For value received, the Guarantor and the Company hereby agree that a Cut-Through Endorsement for the State of Wisconsin is added to the *above* noted policy as follows.

1.   In the event that the Company is declared insolvent by a court of competent jurisdiction and as a result thereof, is unable to pay any loss payable under the Policy referred to herein, the Guarantor will immediately become liable to the Insured, subject always to the terms and conditions of the Policy and this Endorsement and provided this Endorsement and the Policy were in effect at the time said loss occurred. Upon such payment, the Guarantor shall be subrogated to all rights of the Insured and the Company to the extent of such payment and the Company and the Insured agree to execute such assignments as may be required for the purpose of subrogation.

2.   It is further agreed that this Endorsement applies solely to losses from business classified by the Company as Security Guard General and Professional Liability.

3.   Upon receipt of any request for payment pursuant to this Endorsement, the Guarantor reserves the right to notify the Company's court appointed liquidator or receiver prior to making payment to the Insured. In no event shall the Guarantor be subject to duplicate liability, both to the Insured and the Company's court appointed liquidator or receiver, in the event of the Company's insolvency.

4.  This Endorsement takes precedence over any other agreements, contracts, guarantees, arrangements, or undertakings between the Company and Guarantor. The Guarantor shall be entitled to deduct and/or offset any sums it has paid pursuant to the terms of this Endorsement from any sums which may be or become due the Company, its successors or assigns, including any liquidator or receiver, by
    reason of any such agreements, contracts, guarantees, arrangements, or undertakings.

5.  This Endorsement may be canceled at any time by the Guarantor upon giving not less than ninety (90) days written notice to the Company, which notice shall specify the following:
    a.  the name of the Insured,
    b.  the number of the Policy,
    c.  the effective date of cancellation, and
    d.  the name of the Company that issued the Policy.

    The notice of cancellation shall be deemed given on the date on which it is mailed by first class mail, postage prepaid. Any additional costs of cancellation shall be borne by the Company.

6.  This Endorsement shall expire at the end of the Coverage Period noted above. Cancellation of the Policy referred to herein prior to such time shall automatically and simultaneously cancel this Endorsement. The Company shall notify the Guarantor of the cancellation.

7.  This Endorsement is a valid and binding contract, which the signatory has the right to make, and the person signing for the Guarantor below is duly authorized to do so.

    All other terms and conditions of the Policy shall remain unchanged.

_Thomas McLaughlin_

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX0404

ENDORSEMENT # 047

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### LOST KEY LIMIT OF LIABILITY

In consideration of the premium charged it is hereby understood and agreed that Item 3. of the Declaration, "Limits of Insurance and Deductible Amount" is amended to include the following: E.

Lost Key Limit    $750,000

The Limit of Liability as set forth above is a sublimit included within and not in addition to the Each Claim and the Policy Aggregate limit of liability and will not be considered as separate to such limits of liability. A $750,000 Self Insured Retention will apply as well.

Further, it is understood and agreed that the following exception is made to Section 1- Coverage A- 2. Exclusions- j. Damage to Property:

Coverage for property of others in the care, custody and control of the "Insured" is extended to add the loss of keys which are in the possession of the "Insured" or his employees subject to the following additional provisions:

A.  THE INSURANCE AFFORDED WITH RESPECT TO LOST KEY COVERAGE SHALL NOT APPLY TO "PROPERTY DAMAGE" CAUSED BY:
(1) Misappropriation;
(2) Secretion;
(3) Conversion;
(4) Infidelity; or
(5) Any dishonest act on the part of any insured or his employees or agents.

B.  OUR LIABILITY FOR ALL DAMAGES BECAUSE OF "PROPERTY DAMAGE" DUE TO LOST KEYS IS LIMITED TO THE LESSER OF:
(1) The actual cost of keys;
(2) Adjustment of locks to accept new keys; or
(3) New locks, if required, including cost of their installation

Subject to the above limitations, our total liability for all damages as the result of any one occurrence shall not exceed the Limit of Liability as stated in the policy.

All other terms and conditions shall remain the same.

Authorized Representative OR
**Countersignature (In states where applicable)**

ENDORSEMENT # 048

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

Section II, **WHO IS AN INSURED** is amended to include as an additional insured any person(s) or organization(s) as required by written contract where CG2011 is specifically required but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and where such coverage is required by written contract where CG2011 is specifically required. Coverage as stated herein is subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) referred to herein.

All other terms and conditions remain as written.

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX04O4

ENDORSEMENT # 049

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## ADDITIONAL INSURED − LESSOR OF LEASED EQUIPMENT

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

GUARDSECURE SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY INSURANCE

**A. SECTION II − WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or agreement which requires that CG 2028 be used, but only with respect to liability for "bodily injury", "property damage", "personal and advertising injury" or "professional liability" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" or "wrongful act" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **SECTION III − LIMITS OF INSURANCE AND DEDUCTIBLE AMOUNT:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of the policy remain the same.

_____

**Authorized Representative OR
Countersignature (In states where applicable**

ENDORSEMENT # 049 (REV)

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.: 023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

_____

### ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

GUARDSECURE SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY INSURANCE

**A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or written agreement which requires that CG 2028 be used, but only with respect to liability for "bodily injury", "property damage", "personal and advertising injury" or "professional liability" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" or "wrongful act" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE AMOUNT:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of the policy remain the same.

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT # 050

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## CANCELLATION CLAUSE AMENDMENT PRO RATA CANCELLATION ENDORSEMENT

The Cancellation Provision, Cancellation Condition, or Cancellation Clause, whichever is applicable, is amended by adding the following paragraph to the end thereof:

> Notwithstanding any other terms or conditions of this policy to the contrary, if this policy is canceled by the First Named Insured for any reason, then the Company shall return the unearned pro rata proportion of the premium as of the effective date of cancellation and shall waive any minimum earned premium requirement specified herein.

The following definitions apply to this endorsement:

1. Company means the insurer as shown in the header on the Declarations page of this policy.

2. First Named Insured means the first Named Insured as shown on the Declarations page of this policy.

All other terms and conditions of the policy remain the same.

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX04O4

ENDORSEMENT # 051

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or agreement which specifically requires that the CG2010 0704 be used, but only with respect to liability for "bodily injury", "property damage", "professional liability" or "personal and "advertising injury" caused, in whole or in part, by:

   **1.** Your acts or omissions; or

   **2.** The acts or omissions of those acting on your behalf;

   In the performance of your ongoing operations for the additional insured(s) at the location(s) where required by written contract where CG2010 0704 edition is specifically required.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

   This insurance does not apply to "bodily injury" or "property damage" occurring after:

   **1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   **2.** That portion of "your work" or of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

All other terms and conditions remain of the policy remain the same.

_Thomas McLaughlin_
_____
**Authorized Representative OR
Countersignature (In states where applicable**

LEXDOC021
LX0404

ENDORSEMENT # 051(REV)

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.: 023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

_____

### ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

**A. Section II - Who Is An Insured** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or written agreement which specifically requires that the CG2010 0704 be used, but only with respect to liability for "bodily injury", "property damage", "professional liability" or "personal and "advertising injury" caused, in whole or in part, by:

    **1.** Your acts or omissions; or

    **2.** The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured(s) at the location(s) where required by written contract where CG2010 0704 edition is specifically required.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" or of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

All other terms and conditions remain of the policy remain the same.

*Thomas McLaughlin*

_____

**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT  #  052

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.:  023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

**PROFESSIONAL LIABILITY**
**CRISIS RESPONSE COVERAGE EXTENSION ENDORSEMENT**
**(WITH CRISIS MANAGEMENT LOSS AND CRISIS RESPONSE COSTS)**

This endorsement modifies insurance provided by the policy:

● **CRISIS RESPONSE NOTIFICATION TELEPHONE NUMBER:  877-743-7669**

**THIS ENDORSEMENT EXTENDS COVERAGE TO PROVIDE FOR CRISIS RESPONSE COSTS AND CRISIS MANAGEMENT LOSS ARISING OUT OF A CRISIS EVENT BECAUSE OF A WRONGFUL ACT TO WHICH INSURANCE APPLIES. THE LIMITS OF INSURANCE PROVIDED FOR SUCH COVERAGE ARE IN ADDITION TO THE LIMITS OF INSURANCE PROVIDED IN THE DECLARATIONS OF THIS POLICY.**

**SCHEDULE**

| Crisis Response Coverage Extension | Limits of Insurance | |
|---|---|---|
| Crisis Response Aggregate Limit | $300,000 | |
| Each Crisis Response Costs Limit | $250,000 | Each **Crisis Event** |
| Each Crisis Management Loss Limit | $50,000 | Each **Crisis Event** |

Notwithstanding any provisions to the contrary in the policy to which this endorsement is attached, including the attachment point of any excess professional liability policy, if applicable, subject to the Limits of Insurance as shown in the above Schedule and in accordance with the terms and conditions set forth in this endorsement, this policy is extended to provide **crisis response costs** and **crisis management loss** arising out of a **crisis event** because of a **wrongful act** to which insurance applies.

**SECTION I. - CRISIS RESPONSE COVERAGE EXTENSION**

**A.**  We will reimburse you or pay on your behalf reasonable and necessary **crisis response costs** and/or **crisis management loss** arising out of a **crisis event** because of a **wrongful act** to which insurance applies. The amount we will reimburse you or pay on your behalf for such **crisis response costs** and/or **crisis management loss** is limited as described in **SECTION III - CRISIS RESPONSE LIMITS OF INSURANCE**. No self-insured retention or deductible shall apply to this coverage extension endorsement.

**B.**  We will reimburse you or pay on your behalf **crisis response costs** and/or **crisis management loss** arising out of a **crisis event** only if all of the following conditions are met:

    **1.**  The **crisis event** first occurs during the policy period or extended reporting period, if applicable;

    **2.**  The **wrongful act** (or **interrelated wrongful act**, if applicable) that gives rise to the **crisis event** is covered under the policy to which this endorsement is attached;

    **3.**  If this endorsement is attached to and made part of a claims made policy or claims made and reported policy:

        **a.**  A **claim** because of such **wrongful act** (or **interrelated wrongful act**, if applicable) must be made against the **insured** during the policy period or extended reporting period, if applicable; or

    **b.** If a **claim** has not been made, senior management must reasonably believe that a **claim** because of such **wrongful act** (or **interrelated wrongful act**, if applicable) will be made against an **insured** during the policy period or extended reporting period, if applicable; and

**4.** Such **crisis response costs** and/or **crisis management loss** are incurred within thirty (30) days after the commencement date of the **crisis event**. The end of the policy period will not cut short this thirty (30) day period.

## SECTION II. - EXCLUSIONS

All exclusions of the policy apply to this endorsement, including any exclusion which applies to workers compensation or employer's liability. The following additional exclusion applicable to this endorsement supersede any similar exclusions in the policy.

This insurance does not apply to:

    **Newly acquired or merged entities**

    **Crisis response costs** or **crisis management loss** resulting from **wrongful act** that occurred prior to the date you acquired or merged with any other entity.

## SECTION III. - CRISIS RESPONSE LIMITS OF INSURANCE

**A.** The Schedule above and the rules below establish the most we will reimburse or pay on your behalf for **crisis response costs** and **crisis management loss** regardless of the number of **insureds**, **crisis events**, or **affected persons**.

**B.** The Crisis Response Aggregate Limit is the most we will reimburse or pay on your behalf for the sum of all **crisis response costs** and **crisis management loss** under this endorsement.

**C.** Subject to Paragraph **B.** above, the Each Crisis Response Costs Limit is the most we will reimburse or pay on your behalf for all **crisis response costs** arising out of any one **crisis event**.

**D.** Subject to Paragraph **B.** above, the Crisis Management Loss Limit is the most we will reimburse or pay on your behalf for all **crisis management loss** arising out of any one **crisis event**.

**E.** All **crisis events** arising out of the same **wrongful act** or related or interrelated **wrongful acts** will be deemed one **crisis event** and shall be deemed to have occurred when the first of such **crisis events** commences to occur.

## SECTION IV. - DEFINITIONS

The definitions of the policy apply to this endorsement. However, the following additional definitions applicable to this endorsement supersede any similar definitions in the policy.

You and your refer to the Named Insured and we, us and our refer to the Company providing this insurance. Other words and phrases that appear in boldface type have special meaning as follows:

**A.** **Affected persons** means those individuals who suffer direct **bodily injury** or **property damage**, or directly experience **imminent injury**, including such individuals immediate family members.

**B.** **Bodily injury** means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

**C.** **Claim** means a claim as defined by the policy to which endorsement is attached.

**D.** **Crisis event** means:

    **1.** Significant adverse regional or national news media coverage because of a **wrongful act** or related or interrelated **wrongful acts**; or

**2.** **Bodily injury** sustained by an **affected person(s)**, **property damage** to property of an **affected person(s)**, or the direct experience of **imminent injury** by an **affected person(s)** because of a **wrongful act** or related or interrelated **wrongful acts** which results in significant adverse regional or national news media coverage. The **crisis event** as set forth in this Definition **D.2.** will be deemed to occur when the **bodily injury**, **property damage** or **imminent injury** first commences with respect to the first **affected person**.

**E.** **Crisis management firm** means a public relations firm or crisis management firm, assigned or approved by us in writing, that is hired by you to perform services of the type covered under **crisis management loss** in connection with a **crisis event**.

**F.** **Crisis management loss** means reasonable and necessary fees and expenses charged by a **crisis management firm** or your employees in providing public relations and media management services for the purpose of maintaining and restoring public confidence in you. These expenses may include printing, advertising, or mailing of materials to manage reputational risk. This does not include the salaries of your employees. **Crisis management loss** shall not include **crisis response costs**.

**G.** **Crisis response costs** means:

**1.** reasonable and necessary **emergency transport expenses**, **emergency psychology expenses**, funeral expenses, travel expenses, and temporary living expenses incurred by you to provide relief and/or support to **affected persons**, and

**2.** expenses incurred by you to secure the scene of a **crisis event** (as defined in Definition **D.2.**).

**Crisis response costs** shall not include **crisis management loss**.

**H.** **Emergency transport expenses** means reasonable and necessary emergency transport expenses, occurring within 24-hours after a **crisis event** (as defined in Definition **D.2.**), to transport an **affected person** sustaining **bodily injury** in such **crisis event** to a medical treatment facility.

**I.** **Emergency psychology expenses** means reasonable and necessary expenses for psychology or counseling services provided to **affected persons** and incurred within the first fourteen (14) days after a **crisis event** (as defined in Definition **D.2.**). This does not include the costs or expenses of any medications or hospitalizations. Such psychology or counseling services must be approved by the **crisis management firm**.

**J.** **Imminent injury** means the actual and immediate threat of **bodily injury** or **property damage**.

**K.** **Insured** means insured as defined by the policy to which endorsement is attached.

**L.** **Property damage** means:

**1.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**2.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **crisis event** (as defined in Definition **D.2.**) that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**M.** **Wrongful act** or **Interrelated wrongful act** means a wrongful act, interrelated wrongful act, breach of professional duty, media wrongful act and/or technology wrongful act, whichever is/are applicable, as defined by the policy to which endorsement is attached.

**SECTION  V. - CONDITIONS**

The  conditions  of  the  policy  apply  to  this  endorsement.    However,  the  following  conditions applicable to this  endorsement supersede any similar  conditions of the policy  to the contrary.

**A.  Insured's Duties in the Event of a Crisis Event**

    **1.**  You must  see to  it that  we  are  notified  by  telephone within twenty-four (24)  hours of  a **crisis event**  which may  result in **crisis response costs** or **crisis management loss**.  The  call must  be made  to  877-743-7669. If necessary,  we  will  provide you  with an approved **crisis management firm** unless  we  agree  to  accept  a **crisis management firm** that  you  have selected.

    **2.**  Thereafter, you  must  provide written  notice, as  soon  as practicable.  To  the  extent possible, this  written notice should include:

        **a.**  How,  when  and where the  **crisis event** took  place;

        **b.**  The names  and addresses of any  **affected persons** and witnesses; and

        **c.**  The nature  and  location of any  injury  or damage arising  out of the  **crisis event**.

    **3.**  If reimbursement is sought directly by you,  you  must  submit a claim  for  reimbursement of **crisis response costs**  and  **crisis management loss**  within ninety (90) days after  incurring such **crisis response costs** or **crisis management loss**.  Such claim(s) must  include invoices and/or  receipts supporting such  **crisis response costs**  or **crisis management loss** for  each and  every  expense  in excess of fifty (50)  dollars.

    **4.**  Written notice and  claim  submission  as required in Paragraphs  **1.** and  **2.** of  this section, respectively,  shall  be mailed  or delivered to:

    Lexington Insurance Company
    Professional Liability  Claim  Department
    100  Summer Street
    Boston, MA  02110

**B.  Anti-Stacking Provision**

    If **crisis response costs**  or **crisis management loss**  provided by  this  coverage  extension endorsement  are  also  provided  by  any  other  insurance  issued  to  you  by  us  or  any  of  our affiliated companies (whether  or  not  such  costs  or loss  are  referred  to  using  these  same  terms), the  maximum limit  of  insurance  under  all  insurance  available  shall  not  exceed  the  highest applicable limit  of  insurance  available  under  any  one  policy  or endorsement.  This  condition does not  apply  to  any  other  insurance  issued  by  us  or  any  of  our  affiliated companies specifically intended to apply  as excess  insurance over  this coverage extension endorsement.

All  other  terms  and  conditions of  the policy  remain the  same.

                               **Authorized Representative OR**
                      **Countersignature (In states where applicable**

**ENDORSEMENT # 053**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### ADDITIONAL INSURED- AUTOMATIC- OWNERS, LESEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

### SCHEDULE

The City of Los Angeles, its departments, officers and employees

A.  Section II, **WHO IS AN INSURED** is amended to include as an insured any person(s) or organization(s) shown in the schedule whom you are required to add as an additional insured on this policy under a written contract or written agreement.

B.  The insurance provided to additional insureds applies only to "bodily injury", "property damage", "professional liability" or "personal and advertising injury" covered under Section I, Coverage A, Bodily Injury and Property Damage and Professional Liability and Coverage B, Personal and Advertising Injury Liability, but only if:

1.  The "bodily injury", "property damage", or "professional liability" results from your negligence; and

2.  The "bodily injury", "property damage", "personal and advertising injury" or "professional liability" results directly from:

a.  Your ongoing operations; or
b.  "Your work" completed as included in the "products-completed operations hazard", performed for the additional insured, which is the subject of the written contract or written agreement.

C.  However, regardless of the provisions of paragraphs A. and B. above

1.  We will not extend any insurance coverage to any additional insured person or organization:

a.  That is not provided to you in this policy; or
b.  That is any broader coverage than you are required to provide to the additional insured person or organization in the written contract or written agreement; and

LEXDOC021
LX0404

2.   We will not provide Limits of Insurance to any additional insured person or
organization that exceed the lower of:

  a.   The Limits of Insurance provided to you in this policy; or
  b.   The Limits of Insurance you are required to provide in the written contract or
      written agreement.

D.   The insurance provided to the additional insured person or organization does not apply to:

1.   "Bodily injury", "property damage", "personal and advertising injury" or "professional
liability" that results solely from negligence of the addition insured; or

2.   "Bodily injury", "property damage", Professional Liability" or "personal and advertising
injury" arising out of the rendering or failure to render any professional architectural,
engineering or surveying services including:

  a.   The preparing, approving, or failing to prepare or approve maps, ship drawings,
      opinion, reports, surveys, filed orders, change orders or drawing and
      specifications; and

  b.   Supervisory, inspection, architectural or engineering activities.

E.   The additional insured must see to it that:

1.   We are notifies as soon as practicable of an "occurrence" or offense that may result
in a claim:

2.   We receive written notice of a claim or "suit" as soon as practicable; and

3.   A request for defense and indemnity of the claim or "suit" will promptly be brought
against any policy issued by another insurer under which the additional insured also
has rights as an insured or additional insured.

F.  The insurance provided by this endorsement is primary insurance and we will not seek
contribution from any other insurance available to any additional insured person or
organization unless the other insurance is provided by a contractor other than you for the
same operations and job location. Then we will share with that other insurance by the
method described in paragraph 4.C. of Section IV– Commercial General Liability
Conditions.

All other terms and conditions remain as written.

**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT # 054

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY COVERAGE PART

SCHEDULE

**Name of Person or Organization**
Maguire Properties – ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

USA

**Location of Covered Operations**
As required by written contract signed by both parties prior to loss.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A.  **Section II -Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "professional liability" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard"

All other terms and conditions remain as written.

Authorized Representative OR
Countersignature (In states where applicable)

LEXDOC021
LXO4O4

**ENDORSEMENT # 055**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY COVERAGE PART

**SCHEDULE**

| Maguire Properties – ███████████ | Required by written contract |
|---|---|
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage", "professional liability" or "personal and "advertising injury" caused, in whole or in part, by:

   1.  Your acts or omissions; or
   2.  The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1.  All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2.  That portion of "your work" or of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

All other terms and conditions remain as written.

**Authorized Representative OR Countersignature (In states where applicable)**

ENDORSEMENT # 056

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY COVERAGE PART

SCHEDULE

**Name of Person or Organization**

████████████

**Location of Covered Operations**
As required by written contract signed by both parties prior to loss.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A.  **Section II -Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "professional liability" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard"

All other terms and conditions remain as written.

**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX04O4

**ENDORSEMENT # 057**

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### BODILY INJURY AMENDATORY ENDORSEMENT

Section V – Definition paragraph 3, is deleted in its entirety and replaced with the following:

> "Bodily injury" means bodily injury, mental anguish, mental injury, shock, humiliation or any other damage to the feelings or reputation, discrimination, alienation of affections, emotional distress, sickness or disease sustained by a person, including care, loss of services or death resulting from any of these at any time, whether or not accompanied by physical impact.

All other terms and conditions remain as written.

**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LXO4O4

**ENDORSEMENT #** 058

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**SPLIT SELF INSURED RETENTION ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that solely with respect to Claims arising out of Professional Services provided to

**ORLANDO AIRPORT**

Item 4. Self Insured Retention Amount, of the Declarations shall be amended to read as follows: **ITEM 4:    SELF INSURED RETENTION AMOUNT**:

Self Insured Retention Amount:              $ 100,000
                                             (per occurrence or wrongful act.)

_____
**Authorized Representative OR**
**Countersignature (In states where applicable**

LEXDOC021
LX04O4

ENDORSEMENT # 059

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**ADDITIONAL  INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED** OPERATIONS

This endorsement  modifies  insurance  provided  under the  following:

SECURITY  GUARD  GENERAL AND  PROFESSIONAL  LIABILITY  COVERAGE  PART

SCHEDULE

**Name  of Person or Organization**

████████████████████████

████████████████

████████████████

**Location  of  Covered  Operations**
As  required  by  written   contract  signed  by  both  parties  prior  to  loss.

(If no  entry  appears  above,  information  required  to  complete  this  endorsement   will  be  shown  in theDeclarations  as  applicable   to  this  endorsement.)

A.  **Section  II -Who Is An Insured**  is  amended  to  include   as  an  additional  insured  the  person(s)  or organization(s)  shown   in  the  Schedule,  but  only  with  respect  to  liability  for  "bodily  injury ", "professional  liability"  or  "property  damage"  caused,  in  whole  or  in  part,  by  "your  work"  at  the location  designated  and  described   in  the  schedule  of  this  endorsement  performed  for  that  additional insured  and  included   in  the  "products-completed  operations   hazard"

All  other  terms  and  conditions  remain   as  written.

Thomas McLaughlin

**Authorized Representative OR**
**Countersignature (In states where applicable)**

LEXDOC021
LX04O4

ENDORSEMENT # 060

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## BOATS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

Description of Watercraft(s):

**Boat #1**
Title - VA Registration: VA 6751 BU

Brand: Mako
Year: 2012
Model: 16' Skiff
Color: White
Hull ID: BUJ31406L112

**BOAT #2**
Title - VA Registration: VA 6756 BU

Boat
Brand: Mako
Year: 2012
Model: 16' Skiff
Color: White
Hull ID: BUJ31094K112

1.  Exclusion g. of COVERAGE A (Section I) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.
2.  WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

All other terms and conditions remain as written.

**Authorized Representative OR**
**Countersignature (In states where applicable**

LEXDOC021
LXO4O4

**ENDORSEMENT #** 061

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**THE PORT AUTHORITY OF NY & NJ**

This endorsement modifies insurance provided under the following:

SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY COVERAGE PART

**SCHEDULE**

Lexington Insurance Company shall not, without obtaining the express advance written permission from the General Counsel of the Port Authority, raise any defense involving in any way the jurisdiction of the Tribunal over the person of the Port Authority, the immunity of the Port Authority, its Commissioners, officers, agents or employees, the governmental nature of the Port Authority, or the provisions of any statutes respecting suits against the Port Authority.

All other terms and conditions remain as written.

**Authorized Representative OR
Countersignature (In states where applicable**

**ENDORSEMENT #** 062

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**THE PORT AUTHORITY OF NY & NJ**

This endorsement modifies insurance provided under the following:

SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY COVERAGE PART

**SCHEDULE**

Lexington Insurance Company shall not, without obtaining the express advance
written permission from the General Counsel of the Port Authority, raise any defense
involving in any way the jurisdiction of the Tribunal over the person of the Port
Authority, the immunity of the Port Authority, its Commissioners, officers, agents or
employees, the governmental nature of the Port Authority, or the provisions of any
statutes respecting suits against the Port Authority.

All other terms and conditions remain as written.

**Countersignature (In states where applicable**

ENDORSEMENT # 063

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**AGGREGATE LIMITS OF INSURANCE - PER LOCATION AMENDMENT AND OVERALL GENERAL AGGREGATE LIMIT**

This endorsement modifies insurance provided under the policy:

Subject to the Overall General Aggregate Limit stated in Item 3 of the Declarations, the General Aggregate Limit under LIMITS OF INSURANCE (Section III) applies separately to each of your "locations".

It is further understood and agreed that the following changes are made to the policy:

(1) Item 3, Limits of Insurance in the Declarations is amended by the addition thereto of the following Limit:

Overall General Aggregate Limit - $10,000,000

(2) SECTION III-LIMITS OF INSURANCE is amended by the addition thereto of the following paragraph under paragraph 6.

7. The Overall General Aggregate Limit is the most we will pay under Coverages A and B for the sum of all Limits of Insurance as provided in this SECTION III regardless of the number of your "locations"; except for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

For the purpose of this endorsement, "locations" means premises involving the same lot, or connecting lots or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

All other terms and conditions remain unchanged.

_Thomas McLaughlin_
_____
**Authorized Representative OR**
**Countersignature (In states where applicable)**

**ENDORSEMENT #** 064

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

### NOTICE OF CANCELLATION TO CERTIFICATE HOLDERS ENDORSEMENT

This endorsement modifies insurance provided by the policy:

<u>SCHEDULE</u>

Name of Certificate Holder(s) and Address:

1. The Port Authority of NY & NJ
   Procurement Department
   2 Montgomery Street, 3rd Floor
   Jersey City, NJ 07302

---

Except with respect to cancellation for non-payment of premium, notice of cancellation shall be given at least (30) days advance written notice, 10-days for non-payment of premium to the Certificate Holder(s) shown in the above schedule.

Other than the right to receive notice of cancellation as set forth herein, this endorsement confers no rights under this policy to the Certificate Holder(s) including, but not limited to, additional insured status or additional Named Insured status.

All other terms and conditions of the policy remain the same.

_Thomas McLaughlin_

**Authorized Representative OR
Countersignature (In states where applicable**

LEXDOC021
LX0404

ENDORSEMENT # 065

**This endorsement, effective 12:01 AM**  11/01/2013

**Forms part of policy no.:**  023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:**  LEXINGTON INSURANCE COMPANY

**WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

**SCHEDULE**

**Name of Person or Organization:**

City of Las Vegas, its Officers, Employees and Agents

C/O Insurance Tracking Services, Inc. (ITS)
P.O. Box 21919
Long Beach, CA 90801

We waive any right of recovery we may have against the person or organization shown in the schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard'.  This waiver applies only to the person or organization shown in the schedule.

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX0404

**ENDORSEMENT # 066**

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## EMPLOYED LAWYER ENDORSEMENT

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

**I.** The following Subparagraph is added to Paragraph **2.** of **SECTION II – WHO IS AN INSURED**:

Any person admitted to practice law who is employed as a lawyer and salaried by the first Named insured shown in Item 1 of the Declarations is an insured, but only with respect to a "wrongful act" which occurs during the term of such employment. For the purposes of this endorsement, such insured is hereinafter an "employed lawyer".

**II.** With respect to the coverage provided by this endorsement only and notwithstanding any other endorsements which modify the definition of "professional services, the following is added to Paragraph **18.** of **SECTION V – DEFINITIONS**:

"Professional Services" include legal services.

**III.** With respect to the coverage provided by this endorsement only, the following exclusions are added to Paragraph **2.** of **COVERAGE A. BODILY INJURY, PROPERTY DAMAGE AND PROFESSIONAL LIABILITY** (**SECTION I – COVERAGES**) and Paragraph **2** of **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** (**SECTION I – COVERAGES**):

This insurance does not apply to:

**a.** Any claim made by one "employed lawyer" against another, or made by or on behalf of the insured or any affiliate of the insured or the "employed lawyer", or partnership or joint ventures in which the "employed lawyer" or the insured or any affiliate of the "employed lawyer" or the insured is a partner or member, or by predecessor firms, or corporations that were merged with or acquired by the insured or any of it's affiliates or by any insurer as subrogee of any or them.

**b.** Any claim against an "employed lawyer" for a "wrongful act" occurring at a time when the employed lawyer was not an employee of the insured.

**c.** Any claim made against any insured in connection with any Claim under federal or state law:

**(1)** arising out of or relating to the filing of a Registration Statement with the United States Securities and Exchange Commission, or the offer or sale by means of a prospectus of any

security with respect to which a registration statement has been filed, including, but not limited to, any claim asserting that such registration statement or prospectus contained an untrue statement of material fact required to be stated therein or necessary to make the statement therein not misleading; or

**(2)** arising out of or related to any underwriting agreement for the offer or sale of any security.

**IV.** Notwithstanding the foregoing, the coverage provided by this endorsement is specifically excess over National Union Fire Insurance Company of Pittsburgh, Pa. policy # 01-381-01-81, any renewal thereof, and any other valid or collectible lawyers' professional insurance, legal malpractice or errors and omissions insurance and this insurance shall only provide coverage in the event of exhaustion of such other insurance due to losses paid thereunder.


All other terms and conditions of the policy remain the same.

**Authorized Representative OR
Countersignature (In states where applicable)**

**LEXDOC021
LX0404**

ENDORSEMENT # 066(REV)

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.: 023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

_____

### ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS - COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

GUARDSECURE SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY INSURANCE

**A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or written agreement which specifically requires that CG 2037 be used (with no specific edition date), but only with respect to liability for "bodily injury", "property damage" or "professional liability" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to

**SECTION III - LIMITS OF INSURANCE:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of the policy remain the same.

*Thomas McLaughlin*

_____

**Authorized Representative OR Countersignature (In states where applicable)**

ENDORSEMENT # 067

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

GUARDSECURE SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY INSURANCE

**A. SECTION II – WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or agreement which specifically requires that CG 2037 be used (with no specific edition date), but only with respect to liability for "bodily injury", "property damage" or "professional liability" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard". However:

 1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

 2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **SECTION III – LIMITS OF INSURANCE:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

 1. Required by the contract or agreement; or

 2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of the policy remain the same.

**Authorized Representative OR Countersignature (In states where applicable**

LEXDOC021
LX0404

ENDORSEMENT # 067(REV)

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.:  023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

_____

### ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

**A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or written agreement which requires that CG 2010 (with no specific edition date) be used, but only with respect to liability for "bodily injury", "property damage", "personal and advertising injury" or "professional liability" caused, in whole or in part, by:

    **1.** Your acts or omissions; or
    **2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required   by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **SECTION III - LIMITS OF INSURANCE:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**ENDORSEMENT #** 067 (REV)
**(Continued)**

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of the policy remain the same.

_Thomas M⁄Laughlin_

**Authorized Representative OR**
**Countersignature (In states where applicable)**

ENDORSEMENT # 068

**This endorsement, effective 12:01 A.M.,** 11/01/2013

**Forms a part of Policy No.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

## ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

### GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

**A.**          **SECTION II – WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or agreement which requires that CG 2010 (with no specific edition date) be used, but only with respect to liability for "bodily injury", "property damage", "personal and advertising injury" or "professional liability" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor

LEXDOC021
LX0404

engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to

**SECTION III – LIMITS OF INSURANCE:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of the policy remain the same.

**Authorized Representative OR
Countersignature (In states where applicable**

LEXDOC021
LX0404

ENDORSEMENT # 007 (Rev.)

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

---

### AMENDMENT OF OTHER INSURANCE CONDITION ENDORSEMENT

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

Subparagraphs **a.** and **b.** of Paragraph **4. Other Insurance of SECTION IV - CONDITIONS**, are deleted in their entirety and replaced with the following:

This insurance is excess over any other valid and collectible insurance applying to the loss except for insurance bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

Notwithstanding the preceding paragraph, this insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

(1) The additional insured is a Named Insured under such other insurance; and
(2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the insured.

Other insurance payments will reduce the retention amount stated in the Declarations.

All other terms and conditions of the policy remain the same.

*Thomas McLaughlin*

---

**Authorized Representative OR**
**Countersignature (In states where applicable)**

Date: **07/15/2014**                                     Policy Number: **023058098**

Underwriter Name: **BRITTANY ADISANO**

Underwriter Region: **NEW YORK**

Underwriter Branch: **NEW YORK**

Underwriter Telephone: **646-857-1289**

**HOME OFFICE COPY**

lx0185
doc015

ENDORSEMENT # REV 033

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.: 023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

---

### AMENDMENT OF PROFESSIONAL SERVICES ENDORSEMENT

This endorsement modifies insurance provide under the following:

SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY COVERAGE PART

Paragraph 18 of **SECTION VI - DEFINITIONS** is deleted in its entirety and replaced with the following:

18. "Professional Services" means the rendering of security guard services pursuant to a written contract. Security guard services shall include but not be limited to watchman, patrol and checkpoint services, CPR training and services, first aid training and services, state specific training, background checks, fire services, drug screening and related consulting services.

All other terms and conditions remain unchanged.

_Thomas McLaughlin_

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

LEXDOC021
LX0404

Date: 07/30/2014                                    Policy Number: 023058098

Underwriter Name: **BRITTANY ADISANO**

Underwriter Region: **NEW YORK**

Underwriter Branch: **NEW YORK**

Underwriter Telephone:  646-857-1289

**HOME OFFICE COPY**

**ENDORSEMENT # 004 (Rev)**

ISO | Commercial General Liability Forms  | 11/01/13
**POLICY NUMBER**: 023058098                    COMMERCIAL GENERAL LIABILITY
                                                        CG 20 05 04 13

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name of Person(s) Or Organization(s): |
| --- |
| SRV Holdco LLC |
| |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

A. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:

    1. Their financial control of you; or

    2. Premises they own, maintain or control while you lease or occupy these premises.

    However:

    1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

    2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

C. With respect to the insurance afforded to these additional insureds, the following is added to Section III - Limits Of Insurance:

    If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    1. Required by the contract or agreement; or

    2. Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

  This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc.
©2013 Vertafore, Inc. All Rights Reserved.

ENDORSEMENT # 006(Rev)

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.: 023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

---

### INSURED CONTRACT AMENDMENT ENDORSEMENT

This endorsement modifies insurance provided under the following:

**GUARDSECURE PROFESSIONAL LIABILITY POLICY**

Section V, DEFINITIONS, Item 9 is deleted in its entirety and replaced with the following.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured"contract";

b. A sidetrack agreement;

c. Any easement or license agreement;

d. An obligation, as required by ordinance, to indemnify a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed of a municipality) under which you assume the liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies an architect, engineering or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinion, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (1) above and supervisory, inspection, architectural or engineering activities.

All other terms and conditions remain as written.

_Thomas McLaughlin_

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT #  008(Rev)

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.:  023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

---

## EXPECTED OR INTENDED INJURY EXCLUSION AMENDMENT

This endorsement modifies insurance provided under the following:

### GUARDSECURE SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY INSURANCE

**SECTION I - COVERAGE A. BODILY INJURY, PROPERTY DAMAGE AND PROFESSIONAL LIABILITY, Paragraph 2 EXCLUSIONS, Exclusion a.** is deleted in its entirety and replaced with the following:

**a. Expected or Intended Injury**

"Bodily Injury", "property damage" or "professional liability" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury", "property damage" or "professional liability" resulting from the use of force to protect persons or property.

All other terms and conditions remain the same.

*Thomas McLaughlin*

_____

**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT # 007 (Rev.)

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

---

### AMENDMENT OF OTHER INSURANCE CONDITION ENDORSEMENT

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

Subparagraphs **a.** and **b.** of Paragraph **4. Other Insurance of SECTION IV - CONDITIONS**, are deleted in their entirety and replaced with the following:

This insurance is excess over any other valid and collectible insurance applying to the loss except for insurance bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this policy.

Notwithstanding the preceding paragraph, this insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

(1) The additional insured is a Named Insured under such other insurance; and
(2) You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the insured.

Other insurance payments will reduce the retention amount stated in the Declarations.

All other terms and conditions of the policy remain the same.

*Thomas McLaughlin*

---

**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT #  001(REV)

This endorsement, effective **12:01 AM** 11/01/2013

Forms a part of policy no.:  023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

---

### ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

**A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) whom you are required to be add as an additional insured on this policy under a written contract or written agreement and no specific form # is required.

**B.** The insurance provided to additional insureds applies only to "bodily injury", "property damage", "professional liability" or "personal and advertising injury" covered under Section I, Coverage A, Bodily Injury and Property Damage and Professional Liability and Coverage B, Personal and Advertising Injury Liability, but only if:

    **1.** The "bodily injury", "property damage", or "professional liability" results from your negligence; and

    **2.** The "bodily injury", "property damage", "personal and advertising injury" or "professional liability" results directly from:

        **a.** Your ongoing operations; or

        **b.** "Your work" completed as included in the "products-completed operations hazard", performed for the additional insured, which is the subject of the written contract or written  agreement.

**C.** However, regardless of the provisions of paragraphs A. and B. above:

    **1.** We will not extend any insurance coverage to any additional insured person or organization:

        **a.** That is not provided to you in this policy; or

        **b.** That is any broader coverage than you are required to provide to the additional insured  person or organization in the written contract or written agreement; and

    **2.** We will not provide Limits of Insurance to any additional insured person or organization that exceed the lower of:

        **a.** The Limits of Insurance provided to you in this policy; or

       **b.** The Limits of Insurance you are required to provide in the written contract or written agreement.

**D.** The insurance provided to the additional insured person or organization does not apply to:

ENDORSEMENT #   001 (REV)
(Continued)

**1.** "Bodily injury", "property damage", "personal and advertising injury" or "professional liability" that results solely from negligence of the addition insured; or

**2.** "Bodily injury", "property damage", Professional Liability" or "personal and advertising injury" arising out of the rendering or failure to render any professional architectural, engineering or  surveying services including:

**a.** The preparing, approving, or failing to prepare or approve maps, ship drawings, opinion, reports, surveys, filed orders, change orders or drawing and specifications; and

**b.** Supervisory, inspection, architectural or engineering activities.

**E.**   The additional insured must see to it that:

**1.** We are notified as soon as practicable of an "occurrence" or offense that may result in a claim:

**2.** We receive written notice of a claim or "suit" as soon as practicable; and

**3.** A request for defense and indemnity of the claim or "suit" will promptly be brought against any policy issued by another insurer under which the additional insured also has rights as an insured or additional insured.

**F.** When required by written contract this endorsement is primary insurance and we will not seek contribution from any other insurance available to any additional insured person or organization unless the other insurance is provided by a contractor other than you for the same operations and job location. Then we will share with that other insurance by the method described in paragraph 4.C. of Section IV -Conditions.

All other terms and conditions of the policy remain the same.

_Thomas McLaughlin_

_____

**Authorized Representative OR
Countersignature (In states where applicable)**

**ENDORSEMENT #** 036(REV)

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

---

### ADDITIONAL INSURED - OWNERS, LESSEES OR
### CONTRACTORS - COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

**GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY POLICY**

**SECTION II - Who Is An Insured** is amended to include as an additional insured a person(s) or organization(s) who is required by written contract where CG2037 07 04 edition, is specially required,  but only with respect to liability for "bodily injury", "professional liability" or "property damage" caused, in whole or in part, by "your work" at the location where required by written contract where CG2037 07 04 is specifically required, performed for that additional insured and included in the "products-completed operations hazard".

All other terms and conditions of the policy remain the same.

*Thomas McLaughlin*

**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT #  049(REV)

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.:  023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

_____

### ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

GUARDSECURE SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY INSURANCE

**A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or written agreement which requires that CG 2028 be used, but only with respect to liability for "bodily injury", "property damage", "personal   and advertising injury" or "professional liability" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" or "wrongful act" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **SECTION III - LIMITS OF INSURANCE AND DEDUCTIBLE AMOUNT:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or
**2.** Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of the policy remain the same.

_Thomas McLaughlin_

_____

**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT # 051(REV)

This endorsement, effective 12:01 AM 11/01/2013

Forms a part of policy no.: 023058098

Issued to: AB CAPITAL HOLDINGS LLC

By: LEXINGTON INSURANCE COMPANY

_____

### ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

**A. Section II - Who Is An Insured** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or written agreement which specifically requires that the CG2010 0704 be used, but only with respect to liability for "bodily injury",  "property damage", "professional liability" or "personal and "advertising injury" caused, in whole or in part, by:

    **1.** Your acts or omissions; or

    **2.** The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured(s) at the location(s) where required by written contract where CG2010 0704 edition is specifically required.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" or of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

All other terms and conditions remain of the policy remain the same.

_Thomas McLaughlin_

_____
**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT # 066(REV)

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

---

### ADDITIONAL INSURED - OWNERS, LESSEES OR
### CONTRACTORS - COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

GUARDSECURE SECURITY GUARD GENERAL AND PROFESSIONAL LIABILITY INSURANCE

**A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or written agreement which specifically requires that CG 2037 be used (with no specific edition date), but only with respect to liability for    "bodily injury", "property damage" or "professional liability" caused, in whole or in part, by "your  work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to

**SECTION III - LIMITS OF INSURANCE:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    **1.** Required by the contract or agreement; or

    **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

All other terms and conditions of the policy remain the same.

*Thomas McLaughlin*

------------------------------------------

**Authorized Representative OR
Countersignature (In states where applicable)**

ENDORSEMENT # 067(REV)

**This endorsement, effective 12:01 AM** 11/01/2013

**Forms a part of policy no.:** 023058098

**Issued to:** AB CAPITAL HOLDINGS LLC

**By:** LEXINGTON INSURANCE COMPANY

---

### ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS

This endorsement modifies insurance provided under the following:

GUARDSECURE GENERAL AND PROFESSIONAL LIABILITY COVERAGE FORM

**A. SECTION II - WHO IS AN INSURED** is amended to include as an additional insured a person(s) or organization(s) who is required to be added by written contract or written agreement which requires that CG 2010 (with no specific edition date) be used, but only with respect to liability for "bodily injury", "property damage", "personal and advertising injury" or "professional liability" caused, in whole or in part, by:

    **1.** Your acts or omissions; or
    **2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **SECTION III - LIMITS OF INSURANCE:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**ENDORSEMENT #** 067 (REV)
**(Continued)**

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


All other terms and conditions of the policy remain the same.

_Thomas M<sup>c</sup>Laughlin_

**Authorized Representative OR**
**Countersignature (In states where applicable)**