LINDA L. SAGER, ESQ., SBN 185584
lsager@heroldsagerlaw.com
KATHLEEN A. HARRISON, ESQ., SBN 190880
kharrison@heroldsagerlaw.com
HEROLD & SAGER
550 Second Street, Suite 200
Encinitas, CA 92024
Telephone: (760) 487-1047
Facsimile: (760) 487-1067

Attorneys for Defendant LEXINGTON INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, and SILVER LAKES ASSOCIATION,<br><br>        Plaintiffs,<br><br>    v.<br><br>LEXINGTON INSURANCE COMPANY,<br><br>        Defendant. | CASE NO.: 5:22-cv-00388-JWH-SPx<br><br>**LEXINGTON INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT (FED. R. CIV. P. 12 (b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  June 24, 2022<br>Time:  9:00 a.m.<br>Dept.:  Hon. John W. Holcomb |

///

///

///

///

///

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 24, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard by the Honorable John W. Holcomb of the above-entitled Court located in the Ronald Reagan Federal Building and U.S. Courthouse, Courtroom 9D on the 9th Floor, located at 411 West 4th Street, Santa Ana, California 92701-4516, Defendant Lexington Insurance Company ("Lexington"), will and hereby does move the Court for an order dismissing Plaintiffs Philadelphia Indemnity Insurance Company ("PIIC") and Silver Lakes Association ("SLA")'s complaint against Lexington pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, staying all proceedings in connection with Plaintiffs' complaint until final adjudication of the underlying action captioned *Banks v. Wilhite, et al.*, State of California, County of San Bernardino, Case Number CIVDS 1515213.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Kathleen A. Harrison, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Counsel for Lexington certifies that they have complied with L.R. 7-3 requiring that the parties meet and confer prior to the filing of this Motion. This Motion is made following the conference of counsel which took place on May 23, 2022. (Declaration of Kathleen A. Harrison at ¶ 2.)

## TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................1

II.  FACTUAL BACKGROUND ..............................................................2

    A.   THE UNDERLYING ACTION .................................................2

    B.   INSURANCE POLICIES ..........................................................4

    C.   INSTANT ACTION ..................................................................5

III. LEGAL STANDARD .........................................................................7

IV.  POINTS AND AUTHORITIES .........................................................8

    A.   SLA'S AND PIIC'S CLAIMS AGAINST LEXINGTON
       SHOULD BE DISMISSED BECAUSE THEY VIOLATE
       THE RULE AGAINST SPLITTING A CAUSE OF ACTION
       AND IMPROPERLY SEEK DOUBLE RECOVERY ...........................8

    B.   SLA'S CAUSE OF ACTION FOR BREACH OF INSURANCE
       CONTRACT SHOULD BE DISMISSED BECAUSE SLA
       CANNOT ESTABLISH ANY DAMAGES AS IT WAS
       FULLY DEFENDED AND INDEMNIFIED BY ITS DIRECT
       INSURER, PIIC ...............................................................10

    C.   SLA'S CAUSE OF ACTION FOR BAD FAITH FAILURE
       TO DEFEND AND INDEMNIFY SHOULD BE DISMISSED
       BECAUSE SLA HAS NO CLAIM FOR BREACH OF
       CONTRACT AS IT HAS NOT SUSTAINED ANY DAMAGES
       AND WAS FULLY DEFENDED AND INDEMNIFIED
       BY PIIC ..........................................................................12

    D.   PIIC'S CAUSE OF ACTION FOR EQUITABLE
       SUBROGATION SHOULD BE DISMISSED BECAUSE
       PIIC CANNOT ESTABLISH THAT LEXINGTON'S
       POSITION IS INFERIOR TO PIIC'S POSITION. THE
       CLAIMED LOSS WAS ONE FOR WHICH PIIC WAS NOT
       PRIMARILY LIABLE OR THAT PIIC PAID FOR A LOSS
       FOR WHICH LEXINGTON WAS PRIMARILY LIABLE ...............13

    E.   PIIC'S CAUSE OF ACTION FOR EQUITABLE
       CONTRIBUTION SHOULD BE DISMISSED BECAUSE
       PIIC CANNOT ESTABLISH THAT PIIC AND LEXINGTON
       INSURE THE SAME LOSS OR RISK ....................................17

    F.   ALTERNATIVELY, LEXINGTON REQUESTS THAT THIS
       ACTION BE STAYED PENDING ADJUDICATION OR
       RESOLUTION OF SLA'S CROSS-COMPLAINT IN THE
       UNDERLYING ACTION ...................................................18

V.   CONCLUSION ................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Allstate Ins. Co. v. Mel Rapton, Inc.*
    77 Cal.4th 901, 908 (2000)..................................................................8, 9

*Ashcroft v. Iqbal*
    556 U.S. 662, 678 (2009) ....................................................................7

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 558 (2006) ....................................................................7

*Bramalea California, Inc. v. Reliable Interiors, Inc.*
    119 Cal.App.4th 468, 470, 473, 474 (2004).....................................9, 10

*Caltex Plastics, Inc. v. Lockheed Martin Corporation*
    824 F.3d 1156, 1159 (9th Cir. 2016)......................................................7

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*
    222 Cal.App. 3d 1371, 1388 (1990)......................................................10

*Ceresino v. Fire Ins. Exch.*
    215 Cal.App.3d 814, 823 (1989) ..........................................................11

*Clark v. Allstate Ins. Co.*
    106 F.Supp. 2d 1016, 1018 (S.D. Cal. 2000) ........................................8

*CMAX, Inc. v. Hall*
    300 F.2d 265, 268 (9th Cir. 1962)................................................. 18-19

*Donahue Constr. Co. v. Transport Indem. Co.*
    7 Cal.App.3d 291, 304 (1970)..............................................................13

*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.*
    130 Cal.App.4th 1078, 1089-1090, 1093 (2005) ...........................10, 13

*Ferraro v. Southern Cal. Gas. Co.*
    102 Cal.App.3d 33, 41 (1980)..............................................................8, 9

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*
    65 Cal.App.4th 1279, 1292, 1293, 1295, 1296 (1998). ...............11, 14, 17

*Foley v. Interactive Data Corp.*
    47 Cal.3d 654, 690 (1988)....................................................................12

*Landis v. N. Am. Co.*
    299 U.S. 248, 254 (1936) ....................................................................18

*Leyva v. Certified Grocers of Cal., Ltd.*
    593 F.2d 857, 864 (9th Cir. 1979).........................................................19

*Liberty Mut. Ins. Co. v. Tetra Tech, Inc.*
    2015 WL 13917662, *5 (C.D. Cal. Sept. 8, 2015)..................................19

# TABLE OF AUTHORITIES (continued)

**Cases**                                                                                      **Page(s)**

*Lockyer v. Mirant Corp.*
    *398* F.3d 1098, 1110 (9th Cir. 2005)................................................................18

*Love v. Fire Ins. Exch.*
    *221* Cal.App.3d 1136, 1151 (1990)................................................................12

*Novak v. U.S.*
    795 F.3d 1012, 1020 (9th Cir. 2015)................................................................7

*Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co.*
    471 F.3d 961, 973-74 (9th Cir. 2006) ............................................................11

*Plut v. Fireman's Fund Ins. Co.*
    85 Cal. App. 4th 98, 104 (2000)......................................................................8

*Ringler Assocs., Inc. v. Maryland Cas. Co.*
    80 Cal.App.4th 1165, 1187-88 ......................................................................10

*Rossmoor Sanitation, Inc. v. Pylon, Inc.*
    13 Cal.3d 622, 633-634 (1975) ........................................................................9

*Shroyer v. New Cingular Wireless Services, Inc.*
    622 F.3d 1035, 1041 (9th Cir. 2010)................................................................7

*Skilstaf, Inc. v. CVS Caremark Corp.*
    669 F.3d 1005, 1016, fn. 9 (9th Cir. 2012) ......................................................8

*Sompo Japan Ins. Co. of America v. Action Exp., LLC*
    19 F.Supp.3d 954, 958 (C.D. Cal. 2014)........................................................14

*Starr v. Baca*
    652 F.3d 1202, 1216 (9th Cir. 2011)................................................................7

*State Farm General Ins. Co. v. Wells Fargo Bank, N.A.*
    143 Cal.App.4th 1098 1107 (2006)................................................................14

*Steckman v. Hart Brewing*, Inc.
    143 F.3d 1293, 1298 (9th Cir.1998)................................................................7

*Steigerwald v. Godwin*
    144 Cal.App.2d 591, 595 (1956)......................................................................8

*Swierkiewicz v. Sorema N.A.*
    534 U.S. 506, 508 n. 1 (2002) ..........................................................................2

*U.S. v. Ritchie*
    342 F. 3d 903, 908 (9th Cir. 2003)....................................................................8

*Waller v. Truck Ins. Exch., Inc.*
    11 Cal.4th 1, 36 (1995)....................................................................................12

1

## <u>TABLE OF AUTHORITIES (continued)</u>

*Wulfjen v. Dolton*
    24 Cal.2nd 891, 894 (1944)...................................................................8

## FEDERAL RULES OF CIVIL PROCEDURES

Rule 12(b)(6)...........................................................................1, 7, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' Complaint seeks to recover from Lexington defense fees and costs and settlement amounts paid by PIIC on behalf of SLA in an underlying action captioned *Banks v. Wilhite, et al.*, Case No. CIVDS 1515213, before the Superior Court of California, County of San Bernardino (the "Underlying Action"). Plaintiffs' claims against Lexington fail as a matter of law and the Complaint should be dismissed in its entirety without leave to amend for the reasons set forth below.

Plaintiffs' Complaint violates the rule against claim-splitting and improperly seeks double recovery as Plaintiffs are pursuing this action against Lexington and a separate cross-complaint against its insured in the Underlying Action, both of which assert claims for additional insured coverage and contractual indemnity based on the same factual allegations, and both of which seek to recover the same damages, namely, defense fees and costs and settlement amounts paid by PIIC on behalf of SLA in the Underlying Action.  As such, this action, filed second in time, should be dismissed.

Further, SLA has no viable claims against Lexington for breach of insurance contract and/or bad faith failure to defend and indemnify because SLA sustained no actual damages, given it was provided with a full defense and indemnity by PIIC in the Underlying Action.  As such, SLA cannot establish the requisite element of damages and its claims for breach of contract and bad faith must be dismissed.

Finally, PIIC has no viable claim for equitable subrogation against Lexington because (i) the contract between Lexington's insured and SLA does not require the Lexington policy to be primary to SLA's policy with PIIC, (ii) the Lexington policy does not provide any additional insured coverage to SLA for its sole or separate negligence, which coverage is provided to SLA by PIIC under the PIIC policy, and (iii) PIIC owed its own independent obligation to defend and indemnify SLA in the Underlying Action.  Accordingly, PIIC cannot establish: 1) its equitable position is

superior to that of Lexington; 2) that PIIC paid for a loss for which it was not primarily liable; or 3) that PIIC paid for a loss for which Lexington was primarily liable, which are all requisite elements for equitable subrogation.  Further, PIIC has no viable claim for equitable contribution against Lexington because PIIC cannot establish that PIIC and Lexington insure the same loss or risk as PIIC provides coverage to SLA for its sole or separate negligence while Lexington does not and all defense costs and indemnity paid by PIIC were for SLA's sole and/or separate negligence.

Accordingly, Lexington respectfully requests that the Court dismiss each and every cause of action asserted in Plaintiffs' Complaint with prejudice.

## II.    FACTUAL BACKGROUND[1]

## A.    UNDERLYING ACTION

On October 16, 2015, Jack Banks and Nekol Banks, individually and as Guardian Ad Litem for the minor child Cienna Banks, filed the complaint in the Underlying Action against SLA seeking damages for bodily injuries sustained by Cienna Banks when she fell off a boat which was alleged to be driven recklessly by Timothy Wilhite on a lake owned by SLA.  (See, Dkt. 1, Complaint at ¶¶ 6-7, Ex. A "*Banks* Complaint".)  The *Banks* complaint alleged that SLA acted negligently by failing to properly police and monitor the lake to ensure that the five (5) mile per hour speed limit was observed and complied with by all boats using and having access to the lake.  (Complaint at ¶ 8, Ex. A at ¶ 12.)  The *Banks* complaint also alleged that SLA negligently failed to have proper policies and procedures in place and in effect to ensure that only proper boats would be on the lake and that proper insurance was in place for all boats allowed on the lake.  (Ex. A at ¶ 13.)

On or about September 5, 2019, SLA filed a Second Amended Cross-

---

[1] All facts stated herein citing to Plaintiffs' Complaint are taken as true for the purposes of this motion only.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).  Lexington reserves the right to dispute such factual allegations in the future.

Complaint ("SACC") in the Underlying Action against AlliedBarton Security Services, LP ("AlliedBarton"), among others, alleging claims for implied and equitable indemnity, contribution, comparative fault, declaratory relief, breach of contract, and express indemnity.  (See, Request for Judicial Notice ("RJN") at ¶ 1, Ex. 1 at ¶¶ 1-38.)

SLA alleges that SLA and AlliedBarton entered into a Community Patrol Agreement ("CPA) whereby AlliedBarton would provide security services for SLA.  (RJN at ¶ 1, Ex. 1 at ¶ 27, Ex. B.)  SLA alleges that, pursuant to Section III in the CPA, AlliedBarton agreed to add SLA as an additional insured to its commercial general liability policy but AlliedBarton failed to do so.  (RJN at ¶ 1, Ex. 1 at ¶ 30, Ex. B.)  Section III in the CPA, as alleged in the SACC and as amended, provides that the additional insured designation shall be expressly limited to, <u>and to the extent of</u>, liability arising out of AlliedBarton's negligence in providing services required under the CPA and also provides that SLA shall not receive indemnification for any negligence (joint, concurrent, independent or individual), acts errors or omissions of SLA or its directors, officers, agents or employees.  (RJN at ¶ 2, Ex. 1 at ¶ 30, Ex. B; Complaint at ¶¶ 16-17, Ex. B & C.)  (Emphasis added.)

SLA further alleges that, pursuant to Section VIII of the CPA, AlliedBarton agreed to defend and indemnify SLA for liability found against it based upon or arising out of damages or injuries caused by the negligence of AlliedBarton or its employees while carrying out its/their duties of providing services under the CPA.  (RJN at ¶ 2, Ex. 1 at ¶ 32, Ex. B.)  SLA alleges that AlliedBarton failed to comply with its duties to provide services under the CPA and was negligent in performing its duties to monitor and investigate behavior on SLA's lakes.  (RJN at ¶ 2, Ex. 1 at ¶¶ 33, 36-37.)  SLA alleges that AlliedBarton has a present duty to defend and indemnify SLA but AlliedBarton failed to accept SLA's tender of defense and refused SLA's request for indemnity.  (RJN at ¶ 2, Ex. 2 at ¶ 33.)  It further alleges it is entitled to be indemnified by AlliedBarton pursuant to the terms and conditions

1  of the CPA.  (RJN at ¶ 2, Ex. 2 at ¶ 38, Ex. B.)  SLA's SACC prays for judgment

2  against AlliedBarton declaring the respective responsibility and liability of the

3  parties for the *Banks* plaintiffs' damages; for total or comparative indemnity for any

4  sum SLA pays to the *Banks* plaintiffs; and for SLA's attorneys' fees and costs

5  incurred in defending the Underlying Action.  (RJN at ¶ 2, Ex. 2 at prayer ¶ 1-3.)

6      In sum, SLA's SACC against AlliedBarton alleges breach of contract and

7  contractual indemnity seeking to recover amounts for which SLA became liable to

8  the *Banks* plaintiffs by way of its settlement of the complaint and for its defense fees

9  and costs incurred in the Underlying Action.

10 **B.    INSURANCE POLICIES**

11     PIIC issued commercial umbrella liability policy number PHUB466124,

12 effective July 1, 2014 to July 1, 2015, to SLA (the "PIIC policy").  (Complaint, Ex.

13 D.)  The PIIC policy provides for limits of $5,000,000 each occurrence, $5,000,000

14 products-completed operations aggregate, and $5,000,000 general aggregate.

15 (Complaint, Ex. D.)  PIIC alleges it expended over $2,000,000 providing defense

16 and indemnity to SLA in the Underlying Action under the PIIC policy.  (Complaint

17 at ¶ 13.)

18     Lexington issued liability insurance policy number 023058098, effective

19 November 1, 2013 to November 1, 2014, to AB Capital Holdings, LLC (the

20 "Lexington policy"), under which AlliedBarton is an insured.  (Complaint, Ex. E,

21 Endorsement #005 at p. 175.)  The Lexington policy is subject to a $750,000 each

22 claim self-insured retention.    (Complaint, Ex. E, Declarations at p. 142,

23 Endorsement #039 at p. 223.)  Endorsement #039 to the Lexington policy provides

24 in pertinent part:

25     The Company's obligation under the coverages provided by this

26     policy to pay on behalf of the Insured apply only in excess of the Self-

27     Insured Retention as stated in the Declarations and subject to the

28     Limits of Insurance stated in the policy.  The terms of this policy with

1    respect to the Company's rights and duties relative to investigation,
2    settlement, duty to defend and selection of defense counsel apply in
3    excess of the application of the Insured's Self-Insured Retention.
4    (Complaint, Ex. E, Endorsement #039 at p. 223).

5    **C.    INSTANT ACTION**

6    Plaintiffs filed their Complaint against Lexington in this action on March 2,
7    2022 alleging causes of action for: (1) Breach of Insurance Contract (by SLA), (2)
8    Bad Faith Failure to Defend and Indemnify (by SLA), (3) Equitable Subrogation (by
9    PIIC), and (4) Equitable Contribution (by PIIC) seeking the same damages SLA
10    seeks in its SACC against AlliedBarton in the Underlying Action, specifically,
11    defense fees and settlement paid by PIIC on behalf of SLA in the Underlying
12    Action.

13    Plaintiffs allege that SLA is an additional insured under the Lexington policy
14    pursuant to the CPA between AlliedBarton and SLA and the terms of the Lexington
15    policy.  (Complaint at ¶¶ 15.)  In particular, they allege that SLA is an additional
16    insured under the Lexington policy pursuant to Section III in the CPA between
17    AlliedBarton and SLA which states that AlliedBarton shall procure and maintain
18    commercial general liability insurance and furnish SLA with certificates of
19    insurance naming it as an additional insured (Complaint at ¶ 16, Ex. B.)  Section III
20    in the CPA as alleged in the Complaint and attached exhibits further states that the
21    additional insured designation is expressly limited to, <u>and to the extent of</u>, liability
22    arising out of AlliedBarton's negligence in providing services under the CPA and
23    that SLA shall not receive indemnification for any negligence (joint, concurrent,
24    independent or individual), acts errors or omissions of SLA or its directors, officers,
25    agents or employees.  (Complaint at ¶¶ 16-17, Ex. B & C.)  (Emphasis added.)

26    Plaintiffs further allege that SLA is an additional insured under the Lexington
27    policy pursuant to an additional insured endorsement which amends Section II –
28    Who Is An Insured in the Lexington policy to include as an additional insured a

person or organization who is required to be added by written contract or agreement but only if the bodily injury results from the named insured's negligence; and the bodily injury results directly from the named insured's ongoing operations; or its work completed as included in the products-completed operations hazard, performed for the additional insured, which is the subject of the written contract or written agreement.[2]  (Complaint at ¶ 18, Ex. E.)  The additional insured endorsement as alleged in the Complaint also provides that the insurance provided to the additional insured person or organization does not apply to bodily injury that results solely from the negligence of the additional insured and that Lexington will not extend any insurance coverage to any additional insured person or organization that is any broader coverage than the named insured is required to provide to the additional insured in the written contract or written agreement.  (Id.)

Plaintiffs allege that SLA was sued for injuries caused in whole or in part by AlliedBarton's negligence in performing services for SLA, including the alleged failure to properly monitor and police the lake, and, therefore, Lexington was obligated to defend and indemnify SLA in the Underlying Action.  (Complaint at ¶¶ 23, 25.)  Plaintiffs further allege that, because of Lexington's refusal to defend or indemnify SLA, PIIC paid the entirety of SLA's defense fees and settlement to resolve the Banks plaintiffs' claims in the Underlying Action expending over $2,000,000.  (Complaint at ¶¶ 13, 38.)  Additionally, Plaintiffs allege that the sum of the payments made by AlliedBarton, individually, and PIIC, on SLA's behalf, to defend and settle the Banks matter has eroded the self-insured retention under the Lexington policy.[3]  (Complaint at ¶ 20.)  Under each of their causes of action, SLA and PIIC request judgment against Lexington in an amount in excess of $2,000,000,

---

[2] The Lexington policy also contains Endorsement #001(Rev) which is substantially similar.

[3] While Plaintiffs allege they have satisfied the self-insured retention under the Lexington policy, the Lexington policy does not cover SLA's sole negligence or separate negligence and Lexington asserts that all of PIIC's defense and settlement payments were for SLA's sole or separate negligence.

---

LEXINGTON'S MOTION TO DISMISS

CASE NO. 5:22-cv-00388-JWH-SPx

plus interest, delay damages, and such other relief as the Court deems appropriate.

In sum, Plaintiffs' Complaint against Lexington asserts breach of contract and equitable claims seeking to recover SLA's defense fees and settlement amount in the Underlying Action paid by PIIC on behalf of SLA, which are the same damages requested in SLA's SACC against AlliedBarton in the Underlying Action.

### III.    LEGAL STANDARD

Dismissal of a complaint for failure to state a claim upon which relief can be granted is proper under Rule 12(b)(6) when the complaint fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories.  *Caltex Plastics, Inc. v. Lockheed Martin Corporation*, 824 F.3d 1156, 1159 (9th Cir. 2016) (citing *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)).  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The underlying factual allegations must "plausibly suggest an entitlement to relief."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Moreover, "when the allegations of the complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2006) (internal citations and quotations omitted).  The "general rule that parties are allowed to amend their pleadings ... does not extend to cases in which any amendment would be an exercise in futility or where the amended complaint would also be subject to dismissal."  *Novak v. U.S.,* 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Steckman v. Hart Brewing*, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998)).

Although a court ruling on a motion to dismiss is generally limited to the pleadings, "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," the "defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may

assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (providing example as "when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan").  A matter that is properly the subject of judicial notice may also be considered when deciding a motion to dismiss for failure to state a claim. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016, fn. 9 (9th Cir. 2012).

In diversity actions, federal courts apply the substantive law of the forum state. *Clark v. Allstate Ins. Co.*, 106 F.Supp.2d 1016, 1018 (S.D. Cal. 2000).  Accordingly, California substantive law governs the issues in this action.  Under California law, Plaintiffs' Complaint fails to state claims upon which relief may be granted and, therefore, fails for the reasons which follow.

## IV.    POINTS AND AUTHORITIES

### A.    SLA'S AND PIIC'S CLAIMS AGAINST LEXINGTON SHOULD BE DISMISSED BECAUSE THEY VIOLATE THE RULE AGAINST SPLITTING A CAUSE OF ACTION AND IMPROPERLY SEEK DOUBLE RECOVERY

Under California law, a party may not split up a cause of action and make it the basis of separate suits.  *Wulfjen v. Dolton*, 24 Cal.2d 891, 894 (1944); *Steigerwald v. Godwin*, 144 Cal.App.2d 591, 595 (1956); *Ferraro v. Southern Cal. Gas. Co.*, 102 Cal.App.3d 33, 41 (1980).  In such case, the first action may be pleaded as the basis for abatement of any subsequent suit on the same claim and the subsequent action dismissed.  *Wulfjen, supra.*  Courts have found the violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief.  *Id.* at 895-896.

When an insurer pays a claim on behalf of its insured, it is subrogated to the insured's rights against any tortfeasor who is liable to the insured for the insured's damages.  *Plut v. Fireman's Fund Ins. Co.*, 85 Cal.App.4th 98, 104 (2000); *see also, Allstate Ins. Co. v. Mel Rapton, Inc.*, 77 Cal.App.4th 901, 908 (2000) ("Pursuant to the subrogation doctrine, when an insurer has paid an insured the

amount of a loss caused by a third party, the insurer may step into the shoes of the insured and pursue the insured's rights and remedies against the third party tortfeasor."); *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 633-634 (1975) ("Generally, an insurer paying on a loss is subrogated in a corresponding amount to the insured's right of action against any person responsible for the loss.") (Citation omitted).  In such a scenario, the insured has no right itself to pursue the amounts as they belong to the insurer as the real party in interest.  *Bramalea California, Inc. v. Reliable Interiors, Inc.*, 119 Cal.App.4th 468, 470 (2004).  However, when an insured has only been partially compensated for its loss, "operation of the subrogation doctrine 'results in two or more parties having a right of action for recovery of damages based upon the same underlying cause of action'" and the rule against splitting a cause of action is violated where both the insurer and insured pursue separate actions.  *Allstate*, supra, 77 Cal.App.4th at 908 quoting *Ferraro*, supra, 102 Cal.App.3d at 41.

Here, Plaintiffs allege Lexington breached its obligation to defend and indemnify SLA in the Underlying Action under the Lexington policy and seek reimbursement for SLA's defense fees and settlement paid by PIIC.  Similarly, in the Underlying Action, SLA alleges AlliedBarton breached its obligation to defend and indemnify SLA in the Underlying Action and seeks reimbursement from AlliedBarton for its defense fees and settlement paid by PIIC on its behalf.  Although the claims in this action are based on SLA's purported status as an additional insured under the Lexington policy and the claims in the Underlying Action are based on SLA's alleged breach of its additional insured obligation and purported status as a contractual indemnitee of AlliedBarton, the primary right asserted in both actions is the same, i.e. SLA's alleged right to defense and indemnity for liability caused by AlliedBarton's negligence.  Further, the claimed damages sought in both actions is the same: the recovery of SLA's defense fees and settlement paid by PIIC.

1    Because Plaintiffs' claims against Lexington here and against AlliedBarton
2   in the Underlying Action are both based on the alleged failure to provide additional
3   insured coverage and/or contractual indemnity and both actions seek to recover the
4   same damages, Plaintiffs' Complaint is in violation of the rule against splitting a
5   cause of action and improperly seeks double recovery.

6    Accordingly, Plaintiffs' Complaint against Lexington should be dismissed
7   with prejudice.

8   **B.    SLA'S CAUSE OF ACTION FOR BREACH OF INSURANCE
9          CONTRACT SHOULD BE DISMISSED BECAUSE SLA CANNOT
           ESTABLISH ANY DAMAGES AS IT WAS FULLY DEFENDED AND
10         INDEMNIFIED BY ITS DIRECT INSURER, PIIC**

11   Under California law, a plaintiff must prove actual damage to recover for
12  breach of contract. *See, e.g., Bramalea, supra,* 119 Cal.App.4th at 473 ("A breach
13  of contract is not actionable without damage."); *Careau & Co. v. Sec. Pac. Bus.*
14  *Credit, Inc.*, 222 Cal.App.3d 1371, 1388 (1990) (elements of breach of contract
15  include resulting damage to plaintiff caused by defendant's breach). An insured
16  which has not actually paid defense fees or settlement has no standing to recover
17  them. *Bramalea* at 470. Rather, the insurer which paid the insured's defense fees
18  and/or settlement is the party entitled to recover. *Id.* at 473-474. Here, Plaintiffs
19  allege that PIIC paid all of SLA's defense fees and settlement in the Underlying
20  Action. Because SLA did not pay its defense fees and/or settlement, it has no
21  standing to recover them and, therefore, no claim against Lexington.

22   Likewise, California courts have held that an insured, who has been provided
23  with a full defense and indemnity by one insurer, has no claim for breach of contract
24  against another insurer for its alleged failure to defend or indemnify. *Emerald Bay*
25  *Community Assn. v. Golden Eagle Ins. Corp.*, 130 Cal.App.4th 1078, 1089-1090
26  (2005) (finding insured could not show it suffered any contract damages as all of its
27  defense fees and settlement were paid by insurers); *Ringler Assocs., Inc. v.*
28  *Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1187-88 (finding insurer not liable to

---

LEXINGTON'S MOTION TO DISMISS                    CASE NO. 5:22-cv-00388-JWH-SPx

insured for damages arising from breach of duty to defend as a matter of law as insured was adequately protected by other insurers.); *Ceresino v. Fire Ins. Exch.*, 215 Cal.App.3d 814, 823 (1989) (where one insurer paid for insured's defense in underlying action, court found second insurer's failure to do so was of no consequence to the insured); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1296 (1998) (where there are several insurance policies on the same risk and the insured has recovered the full amount of its loss from one or more, but not all, of the insurers, the insured has no further rights against the insurers who have not contributed to its recovery); *Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co.*, 471 F.3d 961, 973-74 (9th Cir. 2006) (finding insured could not obtain double recovery from insurer where insured was fully compensated by third party indemnification agreement and never made payments itself).

As explained by the Court of Appeal in *Fireman's Fund*:

> "The fact that several insurance policies may cover the same risk does not increase the insured's right to recover for the loss, or give the insured the right to recover more than once. Rather, the insured's right of recovery is restricted to the actual amount of the loss. Hence, where there are several policies of insurance on the same risk and the insured has recovered the full amount of its loss from one or more, but not all, of the insurance carriers, the insured has no further rights against the insurers who have not contributed to its recovery. Similarly, the liability of the remaining insurers to the insured ceases, even if they have done nothing to indemnify or defend the insured."

*Id.* at 1295.

Here, SLA's breach of contract claim alleges it is an additional insured under the Lexington policy, that Lexington was obligated to provide defense and indemnity to SLA, and, despite requests for defense and indemnity, Lexington

refused to provide SLA any such defense and/or indemnity. (Complaint at ¶¶ 25-27.) SLA requests judgment against Lexington in the amount in excess of $2,000,000, plus interest and delay damages. However, SLA does not allege that it paid any defense fees and costs or settlement with the *Banks* plaintiffs itself out-of-pocket. Instead, the allegations in the Complaint establish that PIIC paid all of SLA's defense fees and its settlement in the Underlying Action. (Complaint at ¶¶ 13, 38, 42.) Because SLA was provided with a full defense and indemnity by PIIC in the Underlying Action, SLA cannot establish that it suffered any damages from Lexington's alleged failure to defend and/or indemnify it in the Underlying Action. Accordingly, SLA's breach of contract claim fails as a matter of law and should be dismissed with prejudice.

**C. SLA'S CAUSE OF ACTION FOR BAD FAITH FAILURE TO DEFEND AND INDEMNIFY SHOULD BE DISMISSED BECAUSE SLA HAS NO CLAIM FOR BREACH OF CONTRACT AS IT HAS NOT SUSTAINED ANY DAMAGES AND WAS FULLY DEFENDED AND INDEMNIFIED BY PIIC**

Under California law, where there is no breach of contract for the failure to provide insurance coverage, there can be no bad faith as a matter of law. For an insurer to be liable for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove: (1) benefits due under the policy must have been withheld (i.e., there has been a breach of contract); and (2) the reason for withholding the contractual benefits was unreasonable or without proper cause. *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1151 (1990). If there is no breach of contract, there can be no action for breach of the implied covenant of good faith and fair dealing. *See, Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 690 (1988) ("The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes."); *see also, Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 36 (1995) ("the conclusion that a bad faith claim cannot

1  be maintained unless policy benefits are due is in accord with the policy in which

2  the duty of good faith is [firmly] rooted").  As discussed above, SLA cannot state a

3  claim for breach of contract because it sustained no damages.  Without a viable

4  breach of contract cause of action, SLA's cause of action for bad faith failure to

5  defend and indemnify also fails.

6      Further, California courts have held that an insured has no claim for bad faith

7  against an insurer when the insured was fully defended and indemnified by another

8  insurer.  *See, Emerald Bay*, 130 Cal.App.4th at 1093 ("where one insurer fully

9  protects the insured by providing a defense and full coverage for a claim, a second

10 insurer's refusal to defend generally cannot support a tort action for breach of the

11 covenant of good faith and fair dealing because the latter's conduct will not

12 enhance the insured's cost of defending itself or its exposure to liability."); *see also,*

13 *Donahue Constr. Co. v. Transport Indem. Co.*, 7 Cal.App.3d 291, 304 (1970)

14 (finding insured's contention that insurer acted in bad faith in failing to defend was

15 without merit as insured was adequately protected under another insurer's policy).

16 Here, Plaintiffs allege that PIIC paid the entirety of SLA's defense fees and

17 settlement amount in the Underlying Action.   (Complaint at ¶¶ 13, 38, 42.)

18 Because SLA was fully defended and indemnified by PIIC, it has no viable claim

19 for bad faith failure to defend and indemnify against Lexington.

20      Accordingly, SLA's claim for bad faith failure to defend and indemnify fails

21 as a matter of law and should be dismissed with prejudice.

22 **D.    PIIC'S CAUSE OF ACTION FOR EQUITABLE SUBROGATION SHOULD BE DISMISSED BECAUSE PIIC CANNOT ESTABLISH THAT LEXINGTON'S POSITION IS INFERIOR TO PIIC'S POSITION, THE CLAIMED LOSS WAS ONE FOR WHICH PIIC WAS NOT PRIMARILY LIABLE OR THAT PIIC PAID FOR A LOSS FOR WHICH LEXINGTON WAS PRIMARILY LIABLE,**

23

24

25

26      In order to state a viable cause of action for equitable subrogation, PIIC must

27 plead the following elements:

28      (1) the insured suffered a loss for which the defendant is liable, either

as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (2) the claimed loss was one *for which the insurer was not primarily liable*; (3) the insurer has compensated the insured in whole or in part for the *same loss for which the defendant is primarily liable*; (4) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (5) the insured has an existing, assignable cause of action against the defendant that the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (6) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (7) *justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer*; and (8) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1292 (1998) (emphasis added). The purpose of subrogation is to "place the burden for a loss on the party *ultimately liable or responsible for it* and by whom it should have been discharged, and to relieve *entirely* the insurer or surety who indemnified the loss and who in equity was not primarily liable therefor." *Id.* at 1296 (emphasis added.) One of the most restrictive principles of equitable subrogation is the doctrine of superior equities, which prevents an insurer from recovering against a party whose equities are equal or superior to those of the insurer. *State Farm General Ins. Co. v. Wells Fargo Bank, N.A.*, 143 Cal.App.4th 1098, 1107 (2006); *Sompo Japan Ins. Co. of America v. Action Exp., LLC*, 19 F.Supp.3d 954, 958 (C.D. Cal. 2014).

PIIC has not and cannot plead the above requisite elements to establish a viable cause of action for equitable subrogation, as PIIC cannot establish (i) that it is in a superior equitable position to Lexington, (ii) that PIIC paid for a loss for which it was

1  not primarily liable, or (iii) that PIIC paid for a loss for which Lexington was

2  primarily liable.

3      PIIC alleges that, pursuant to SLA's contract with AlliedBarton and the PIIC

4  and Lexington policies, Lexington was required to defend and indemnify SLA

5  against the *Banks* plaintiff's claims in the Underlying Action and Lexington's

6  coverage was to be primary and PIIC's coverage was to be excess only, if needed at

7  all. (Complaint at ¶ 36.) However, this allegation is expressly contradicted by other

8  allegations in the Complaint and the exhibits attached to the Complaint.

9      The additional insured endorsement in the Lexington policy cited in

10  paragraph 18 of the Complaint and attached to the Lexington policy exhibit

11  provides, in pertinent part, that, "[w]hen required by written contract this

12  endorsement is primary insurance and [Lexington] will not seek contribution from

13  any other insurance available to an additional insured unless the other insurance is

14  provided by a contractor other than the named insured for the same operations and

15  job location." (Emphasis added.) (Complaint at ¶ 19, Ex. E.) Although Section III.

16  Insurance in the CPA between AlliedBarton and SLA required AlliedBarton to

17  name SLA as an additional insured on its insurance, there is no language requiring

18  AlliedBarton's insurance to be primary to SLA's insurance. (Complaint at ¶¶ 16-17,

19  Ex. B & C.) Given there is no written contract requiring AlliedBarton's insurance to

20  be primary to SLA's insurance, the primary insurance language in the additional

21  insured endorsement to the Lexington policy does not apply.

22      Further, the insurance provision in the CPA between AlliedBarton and SLA

23  expressly limits the scope of any additional insured coverage for SLA under

24  AlliedBarton's insurance "to the extent of" liability arising out of AlliedBarton's

25  negligence in providing services under the CPA and also expressly states that SLA

26  "shall not receive indemnification for any negligence (joint, concurrent, independent

27  or individual) acts errors or omissions of [SLA] or its directors, officers, agents or

28  employees." (Complaint at ¶¶ 16-17, Ex. B & C.) The scope of additional insured

---

LEXINGTON'S MOTION TO DISMISS                    CASE NO. 5:22-cv-00388-JWH-SPx

1  coverage for SLA under the Lexington policy, if any, is similarly limited to the

2  extent of AlliedBarton's negligence. (Complaint at ¶ 18, Ex. E.)

3         Specifically, pursuant to the additional insured endorsement to the Lexington

4  policy, the insurance provided to additional insureds applies only if (i) the bodily

5  injury results from the named insured's negligence, and (ii) the bodily injury results

6  directly from (a) the named insured's ongoing operations, or (b) the named insured's

7  completed work as included in the products-completed operations hazard, performed

8  for the additional insured, which is the subject of the written contract or agreement.

9  (Complaint at ¶ 18.)    The additional insured endorsement also provides the

10 Lexington policy does not provide coverage to the additional insured for bodily

11 injury that results solely from the negligence of the additional insured. (Id.)

12 Finally, the endorsement provides that Lexington will not extend any insurance

13 coverage to any additional insured that is any broader coverage than the named

14 insured is required to provide to the additional insured in the written contract or

15 written agreement. (Id.)

16        Accordingly, pursuant to the CPA and additional insured endorsement under

17 the Lexington policy, to the extent SLA is an additional insured under the Lexington

18 policy, no coverage is available to SLA for any sole negligence or separate

19 negligence by SLA, whether joint, concurrent, independent or individual.

20 (Complaint at ¶¶ 16-18, Ex. B, C & E.) Such negligence by SLA is the

21 responsibility of PIIC under the PIIC policy. In their complaint against SLA in the

22 Underlying Action, the *Banks* plaintiffs alleged that SLA was negligent in failing to

23 properly police and monitor the lake and was negligent in failing to have proper

24 policies and procedures in place to ensure that only proper boats with proper

25 insurance would be on the lake. (Complaint, Ex. A at ¶¶ 12-13.) Pursuant to the

26 CPA between AlliedBarton and SLA and, more specifically, the Post Orders

27 attached thereto, lake patrols were to be provided by AlliedBarton only at the

28 direction of SLA's General Manager. (Complaint, Ex. B at p. 33.)    These

1    allegations involve SLA's sole or separate negligence for which no coverage is
2    available to SLA under the Lexington policy.

3    SLA is the named insured under the PIIC policy. (Complaint at ¶ 13, Ex. D.)
4    Under the PIIC policy, PIIC provides coverage to SLA for SLA's liability for its
5    sole and/or separate negligence. Further, as SLA's direct insurer, PIIC owes an
6    independent obligation to defend and indemnify SLA. (Id.) Therefore, given (i) the
7    absence of any language in SLA's contract with AlliedBarton requiring
8    AlliedBarton's insurance to be primary to SLA's own insurance, (ii) the limited
9    scope of any additional insured coverage for SLA under the Lexington policy which
10   does not provide coverage for any sole or separate negligence by SLA, and (iii) the
11   fact that PIIC owes its own independent obligation to defend and indemnify SLA
12   which includes SLA's liability for its sole or separate negligence, PIIC cannot
13   establish (a) that it is in a superior equitable position to Lexington, (b) that PIIC paid
14   for a loss for which it was not primarily liable, or (c) that it paid for a loss for which
15   Lexington was primarily liable as required to state a claim for equitable subrogation.

16   Accordingly, PIIC's claim for equitable subrogation fails as a matter of law
17   and should be dismissed with prejudice.

18   **E.    PIIC'S CAUSE OF ACTION FOR EQUITABLE CONTRIBUTION
19   SHOULD BE DISMISSED BECAUSE PIIC CANNOT ESTABLISH THAT PIIC AND LEXINGTON INSURE THE SAME LOSS OR RISK**

20   Equitable contribution is the right to recover from a co-obligor who shares
21   liability for the loss with the party seeking contribution. *Fireman's Fund, supra*, 65
22   Cal.App.4th at 1293. In the insurance context, contribution is only a viable cause of
23   action when the insurers are obligated to defend or indemnify the same loss or claim.
24   *Id.*

25   Because PIIC provides coverage to SLA for its sole negligence and/or separate
26   negligence and Lexington does not, PIIC cannot (and, in fact, has not) plead the
27   requisite elements to establish a viable claim for equitable contribution. Simply put,
28   PIIC and Lexington do not share liability for the same loss or risk. As discussed

above, the *Banks* plaintiffs alleged that SLA was negligent in failing to properly police and monitor the lake and was negligent in failing to have proper policies and procedures in place to ensure that only proper boats with proper insurance would be on the lake. (Complaint, Ex. A at ¶¶ 12-13.) The Post Orders attached to the CPA specifically provide that lake patrols were only to be provided by AlliedBarton at the direction of SLA's General Manager. (Complaint, Ex. B at p. 33.) These allegations implicate SLA's sole or separate negligence for which no coverage is available to SLA under the Lexington policy.

Given PIIC provides coverage to SLA for its sole and/or separate negligence and Lexington does not, and given the *Banks* plaintiffs' claims against SLA in the Underlying Action were for its sole or separate negligence, all of SLA's defense fees and settlement paid by PIIC were for SLA's sole and/or separate negligence. As such, PIIC cannot establish that PIIC and Lexington insure the same loss or risk as required for equitable contribution.

Accordingly, PIIC's claim for equitable contribution fails as a matter of law and should be dismissed with prejudice.

**F.    ALTERNATIVELY, LEXINGTON REQUESTS THAT THIS ACTION BE STAYED PENDING ADJUDICATION OR RESOLUTION OF SLA'S CROSS-COMPLAINT IN THE UNDERLYING ACTION**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In deciding whether to stay an action, courts will balance the following factors: (1) the possible damage that may result from granting a stay; (2) the hardship or inequity the moving party may suffer by being required to go forward; and (3) the orderly course of justice measured in terms of whether the stay is expected to simplify or complicate issues, proof, and questions of law. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005); *CMAX, Inc. v. Hall*, 300 F.2d

265, 268 (9th Cir. 1962). A stay may be granted regardless of whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court. *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). The proponent of a stay bears the burden of showing it is needed. *Liberty Mut. Ins. Co. v. Tetra Tech, Inc.*, 2015 WL 13917662, *5 (C.D. Cal. Sept. 8, 2015).

Lexington will be harmed if this action is not stayed pending the outcome of the SLA's cross-complaint in the Underlying Action as there is the potential for double recovery as the damages being sought in both actions is the same and plaintiffs may only recover said damages once. Because there are overlapping factual issues between this action and the Underlying Action and the central issue to be determined in both actions is the same - namely, the amount, if any, of SLA's defense fees and settlement paid by PIIC which were allegedly caused by AlliedBarton's negligence - Plaintiffs will not be harmed by a stay of this action pending adjudication of the Underlying Action. Moreover, staying this action will simplify the issues as Lexington's obligations under the additional insured endorsement in the policy is coextensive with AlliedBarton's obligations under the CPA, with both obligations limited to defending and indemnifying SLA to the extent of AlliedBarton's negligence. Therefore, adjudication of the underlying cross-complaint will have the potential to resolve the critical legal issues in this action. Staying this case until a decision is rendered in the Underlying Action would also preclude duplicative litigation, avoids the potential for inconsistent rulings, and will conserve the resources of both the parties and the Court.

Accordingly, in the event the Court denies Lexington's motion to dismiss, the Court should stay this action pending adjudication or resolution of SLA's cross-complaint against AlliedBarton in the Underlying Action in the alternative.

///

///

LEXINGTON'S MOTION TO DISMISS

CASE NO. 5:22-cv-00388-JWH-SPx

## V.     CONCLUSION

For the foregoing reasons, each cause of action in the Complaint fails to state a claim for which relief can be granted.   Accordingly, Lexington respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice and without leave to amend.   Alternatively, Lexington requests the Court enter an order staying this case until SLA's cross-complaint against AlliedBarton in the Underlying Action is adjudicated or otherwise resolved.

DATED: May 23, 2022                    HEROLD & SAGER

By:    _/s/ Kathleen A. Harrison_____
LINDA L. SAGER, ESQ.
lsager@heroldsagerlaw.com
KATHLEEN A. HARRISON, ESQ.
kharrison@heroldsagerlaw.com
Attorneys for Defendant LEXINGTON
INSURANCE COMPANY